IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
Tampa Division

ODYSSEY MARINE EXPLORATION, INC.

        Plaintiff,

v.

THE UNIDENTIFIED, SHIPWRECKED
VESSEL OR VESSELS, their apparel, tackle,
appurtenances and cargo located within
center point coordinates:

49° 25' N, 6° 00' W; Radius: 5 nautical miles

        *in rem*

        Defendant(s).
_____/

CIVIL ACTION

Case No.: 8:06-CV-1685-T23-TBM

**PLAINTIFF'S MOTION FOR ORDER GRANTING PRELIMINARY INJUNCTIVE
RELIEF AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

Plaintiff, Odyssey Marine Exploration, Inc. ("Odyssey"), by its undersigned counsel, hereby moves for entry of an Order granting a preliminary injunction: (1) appointing Odyssey exclusive salvor-in-possession or finder-in-possession of the Defendant Shipwrecked Vessel, its apparel, tackle, appurtenances, and cargo (hereinafter, "Defendant Shipwrecked Vessel"); (2) awarding Odyssey priority salvage status, and sole and exclusive possession of the Defendant Shipwrecked Vessel within the areas described in the Complaint; and (3) temporarily enjoining and restraining any and all interference by any third parties with Odyssey's exclusive rights to recover the Defendant Shipwrecked Vessel within the areas described in the Complaint.

The grounds supporting this motion are set forth in the accompanying memorandum of law, which is incorporated herein by reference.

## MEMORANDUM OF LAW

Plaintiff, Odyssey Marine Exploration, Inc. ("Odyssey"), by its undersigned counsel, respectfully submits this memorandum of law in support of its motion for entry of an Order granting a preliminary injunction: (1) appointing Odyssey exclusive salvor-in-possession or finder-in-possession of the Defendant Shipwrecked Vessel, its apparel, tackle, appurtenances, and cargo (hereinafter, "Defendant Shipwrecked Vessel"); (2) awarding Odyssey priority salvage status, and sole and exclusive possession of the Defendant Shipwrecked Vessel within the areas described in the Complaint; and (3) temporarily enjoining and restraining any and all interference by any third parties with Odyssey's exclusive rights to recover the Defendant Shipwrecked Vessel within the areas described in the Complaint.

## I.   BACKGROUND

In the summer of 2006, Odyssey first located the Defendant Shipwrecked Vessel using sophisticated sonar and magnetometer equipment. The Defendant Shipwrecked Vessel rests on the sea floor at a depth of approximately 100 meters beyond the territorial waters or contiguous zone of any sovereign nation approximately 40 miles from Lands End near the English Channel in the Atlantic Ocean.

Odyssey has used a surface-controlled remotely operated vehicle ("ROV") to survey the wreck site and to take photographic images. The wreck site consists of the vessel remains, metal objects and cannons. Odyssey's research has led it to believe that more valuable cargo may be located aboard the ship.

Odyssey has conducted research to determine the origin of the Defendant Shipwrecked Vessel. Based on a preliminary assessment of video and photographs taken of the wreck site by Odyssey's technicians, the Defendant Shipwrecked Vessel is believed to be a merchant vessel from the 17th Century. A shipwreck of this era would be a tremendously important historical find.

The wreck site has been thoroughly surveyed and photographed, and Odyssey is ready and able to conduct operations to recover artifacts from the Defendant Shipwrecked Vessel. Odyssey has recovered from the wreck a portion of a glass bottle which it intends to use for a symbolic arrest of the wreck. Additionally, Odyssey has located and documented several other artifacts located aboard the vessel. Odyssey is ready and able to conduct operations to recover these and other artifacts from the Defendant Shipwrecked Vessel. Certain areas of the vessel are extremely difficult to reach and will require very specialized equipment which Odyssey is prepared to obtain and operate. Odyssey believes that the recovery operations must be undertaken in accordance with strict archaeological protocols, and it is currently developing an excavation plan and conservation process to ensure that its recovery operations are consistent with these protocols. Odyssey anticipates that it will begin recovery operations immediately, once its excavation plan is completed and the weather in the area is conducive to safely engaging in recovery operations.

Upon information and belief, no other salvor is or has been working in the Salvage Area described in the Complaint for quite some time, and since its discovery, Odyssey has maintained actual, continuous, and exclusive possession or constructive occupancy of the wreck site to the extent this is possible. Due to the rarity and extrinsic value of the Defendant Shipwrecked Vessel, Odyssey anticipates that its recovery efforts may be subject to interference from rival

salvors or entities claiming an interest in the wreck or wreck site. Accordingly, Odyssey has moved for entry of an Order granting a preliminary injunction: (1) appointing Odyssey exclusive salvor-in-possession or finder-in-possession of the Defendant Shipwrecked Vessel, its apparel, tackle, appurtenances, and cargo; (2) awarding Odyssey priority salvage status, and sole and exclusive possession of the Defendant Shipwrecked Vessel within the areas described in the Complaint; and (3) temporarily enjoining and restraining any and all interference by any third parties with Odyssey's exclusive rights to recover the Defendant Shipwrecked Vessel within the areas described in the Complaint.

## II.   STANDARD FOR GRANTING INJUNCTIVE RELIEF

In this Circuit, the four requirements for awarding preliminary injunctive relief are:

(1)   a substantial likelihood that the party requesting relief will ultimately succeed on the merits;

(2)   the party requesting relief will suffer irreparable injury if the injunction is not issued;

(3)   that threatened injury to the moving party outweighs harm to the opposing party; and

(4)   the injunction, if issued, will not be adverse to the public interest.

See *Siegel v. Lepore,* 234 F.3d 1163 (11th Cir. 2000); *Haitian Refugee Center, Inc. v. Nelson,* 872 F.2d 1555, 1561-62 (11th Cir. 1989), *aff'd*, 498 U.S. 479 (1991); *United States v. Alabama,* 791 F.2d 1450, 1459 n.10 (11th Cir. 1986), *cert. denied,* 479 U.S. 1085 (1987).

As set forth below, Odyssey satisfies each of these four requirements. Therefore, an award preliminary injunctive relief is appropriate in this matter.

## III. ARGUMENT

### A. There Is A Substantial Likelihood That Odyssey Will Ultimately Succeed On The Merits Of Its Claims

This is a salvage case involving admiralty and maritime claims under the law of salvage and the law of finds.[1] Regardless of which legal theory is ultimately found to apply to the case, there is a substantial likelihood that Odyssey will ultimately succeed on the merits of either or both of its claims.

#### 1. There Is A Substantial Likelihood That Odyssey Will Ultimately Succeed On The Merits Of Its Claim Under The Law Of Finds

The maritime law of finds gives title to a person who has reduced to possession an object which has been abandoned at sea. *See Columbus-America Discovery Group v. The Unidentified, Wrecked and Abandoned Sailing Vessel*, 974 F.2d 450 (4th Cir. 1992), *cert. denied*, 507 U.S. 1000 (1993). This doctrine has been consistently recognized in admiralty, and courts have awarded title to shipwrecks to the finder when warranted by the facts. *See Treasure Salvors, Inc.*

---

[1] As a case involving an admiralty and maritime claim, this Court has jurisdiction over the subject matter pursuant to the Constitution of the United States, Article III, Section 2, Clause 1, 28 U.S.C. § 1333, and Rule 9(h) of the Federal Rules of Civil Procedure. Claims arising out of salvage operations are unquestionably within the admiralty jurisdiction of the federal courts. *See Treasure Salvors, Inc. v. Unidentified, Wrecked and Abandoned Sailing Vessel*, 640 F.2d 560, 566-67 (5th Cir. 1981) (*Treasure Salvors III*). Furthermore, U.S. admiralty courts unquestionably have jurisdiction to adjudicate salvage claims based on salvage operations that occur on the high seas. *See Treasure Salvors III*, 640 F.2d at 566-67 ("The subject matter jurisdiction thus granted is not limited to causes of action arising from acts or occurrences on the territorial waters of the United States."); *Treasure Salvors I*, 569 F.2d at 334 ("the presence of the *res* within the district is not an absolute prerequisite to the court's jurisdiction."). It is common for U.S. admiralty courts to assert *in rem* jurisdiction over shipwrecks located in international waters and even within the territorial seas of foreign nations. *See Marex v. Unidentified, Wrecked and Abandoned Vessel*, 952 F. Supp. 825, 828 (S.D. Ga. 1997); *R.M.S. Titanic, Inc. v. The Wrecked and Abandoned Vessel*, 924 F. Supp. 714 (E.D. Va. 1996); *Bemis v. R.M.S. Lusitania*, 884 F. Supp. 1042 (E.D. Va. 1995), *aff'd*, 99 F.3d 1129 (4th Cir. 1996), *cert. denied*, 118 S. Ct. 1558 (1998).

*v. The Unidentified, Wrecked and Abandoned Sailing Vessel*, 569 F.2d 330, 337 (5th Cir. 1978) (*Treasure Salvors I*); *Martha's Vineyard Scuba Headquarters, Inc. v. The Unidentified, Wrecked and Abandoned Vessel*, 833 F.2d 1059, 1065 (1st Cir. 1987); *Indian River Recovery v. The CHINA*, 645 F. Supp. 141 (D. Del. 1986).

A finding of abandonment may be inferred from all of the relevant facts and circumstances, and may be based on circumstantial evidence. *Zych v. Unidentified, Wrecked and Abandoned Vessel Believed to be the LADY ELGIN*, 755 F. Supp. 213, 214 (N.D. Ill. 1991), *aff'd*, 960 F.2d 665 (7th Cir. 1992). Under the facts of this case, there is a substantial likelihood that Odyssey will be able to prove that the Defendant Shipwrecked Vessel has been abandoned by its original owner. The vessel is believed to be a merchant vessel more than 300 years old which sunk beyond the territorial waters of any sovereign nation. To Odyssey's information and belief, no government has made an effort to recover the ship and the wreck has been abandoned altogether. Furthermore, Odyssey's researchers have concluded that the ship did not appear to be insured by any insurance carrier. Thus, the Court should find that the vessel has been abandoned and awarding title to Odyssey under the maritime law of finds.

2. **There Is A Substantial Likelihood That Odyssey Will Ultimately Succeed On The Merits Of Its Claim Under The Law Of Salvage**

The common law of salvage applies to property that is lost at sea but has not been abandoned by its original owner. The law of salvage grants a liberal reward to those who voluntarily engage in efforts to save a vessel in peril at sea, and it promotes the orderly recovery of such property. *See The BLACKWALL*, 77 U.S. 1 (1869). It is well recognized that three elements must be established in order to present a salvage claim:

>   (1)   a marine peril from which the property could not have been rescued without the assistance of the salvor;

6

(2)   service voluntarily rendered when not required as a pre-existing duty; and

(3)   success, in whole or in part, of recovery of the imperiled property.

See *The SABINE*, 101 U.S. 384 (1879); *Treasure Salvors, Inc. v. The Unidentified, Wrecked and Abandoned Sailing Vessel, "Nuestra Senora de Atocha"*, 546 F. Supp. 919, 930 (S.D. Fla. 1981) (*citing Legnos v. M/W Olga Jacob*, 498 F.2d 666, 669 (5th Cir. 1974)).

Odyssey's activities with respect to the Defendant Shipwrecked Vessel satisfy all three of these elements, and therefore is a salvage operation within the meaning of the law.

    a.   **The Defendant Shipwrecked Vessel Is In Marine Peril**

A marine peril "includes more than the threat of storm, fire or piracy to a vessel in navigation." *Treasure Salvors I*, 569 F.2d at 337. The concept of marine peril also includes a sunken vessel which is discovered after being long lost but is "still in peril of being lost through actions of the elements." *Id. See also Platoro Ltd., Inc. v. Unidentified Remains*, 614 F.2d 1051 (5th Cir. 1980); *Fort Myers Shell & Dredging Co. Barge NBC512*, 404 F.2d 137, 139 (5th Cir. 1968) (the "peril required in salvage service need not necessarily be one of imminent or absolute danger, either presently or reasonably to be apprehended."). There is evidence on the site that the shipwreck has been severely damaged by both natural deterioration and human intervention by trawl nets. Thus, the Defendant Shipwrecked Vessel satisfies the definition of marine peril because it is "still in peril of being lost through actions of the elements." *See Treasure Salvors I*, 569 F.2d at 337.

### b.   Odyssey Is Voluntarily Rendering Service When Not Required As A Pre Existing Duty

Odyssey is under no duty to recover the Defendant Shipwrecked Vessel. Instead, it is voluntarily rendering service to rescue the Defendant Shipwrecked Vessel from being lost forever through the action of the elements in the sea *and* from the possibility that the vessel or its artifacts will be further damaged by trawl nets, or hastily recovered by salvors without regard for the vessel's historic and archaeological value. Accordingly, Odyssey has satisfied the second element of a salvage claim.

### c.   Odyssey Is Substantially Likely To Succeed, In Whole Or In Part, In Recovering The Imperiled Property

Odyssey has already demonstrated that it is capable of finding, surveying and photographing a large wreck site beneath 100 meters depth or deeper. Odyssey is ready, willing and able to initiate its recovery operations, and has done so for the limited purpose of beginning the process of historic identification of this wreck site. Moreover, Odyssey has the equipment, manpower and experience required to successfully complete archaeological recovery operations.

Odyssey has recovered important identifying artifacts from the Defendant Shipwrecked Vessel, and Odyssey is actively and ably engaged in reducing the Defendant Shipwrecked Vessel to its possession. Odyssey has taken constructive possession of the wreck site to the extent its age, depth and historical significance permit. Accordingly, Odyssey is substantially likely to succeed in recovering the imperiled property, and it has satisfied the final element of a successful salvage claim.

**B.      Odyssey Will Suffer Irreparable Injury If Injunctive Relief Is Not Issued**

Odyssey has expended considerable resources in locating, studying and surveying the Defendant Shipwrecked Vessel, in researching its origin, in preserving the historical value of the wreck by photographing and documenting the site, and in developing an archaeological excavation and conservation plan. Odyssey has committed its financial resources, time, manpower, equipment and its vessels to these efforts, as well as to its preparation for the actual recovery operations. To allow others to come in at this time and reap the benefits of Odyssey's labor would constitute irreparable harm and injury to Odyssey for which there would be no adequate remedy at law. *See Treasure Salvors*, 546 F. Supp. at 929; *Deep Sea Research, Inc. v. The Brother Jonathan*, 883 F. Supp. 1343, 1362 (N.D. Cal. 1995), *aff'd*, 102 F.3d 379 (9th Cir. 1997), *aff'd in part, vacated in part and remanded*, 118 S. Ct. 144 (1998).

> As the Fifth Circuit explained in *Treasure Salvors III*:
>
> A salvor. . . has a valuable interest in his salvage operations which the law protects by vesting in the salvor certain rights. Among the most important of these rights are the right to exclude others from participating in the salvage operations, so long as the original salvor appears ready, willing and able to complete the salvage project, and the right to possession of the salved property, a right exclusive even of the owner, until such time as the salvage lien on the property is extinguished or adequate security for this obligation is given.

640 F.2d at 567.

Odyssey risks losing its legal rights and substantial investment to date if the Court does not award preliminary injunctive relief. Consequently, the Court should enter a preliminary injunction protecting Odyssey's continued right to exclusive possession of the Defendant Shipwrecked Vessel, and protecting it from interference from rival salvors.

C.  **Odyssey's Potential Injury Outweighs The Injury Of Any Other Party**

At this time, Odyssey is the only party claiming an interest in the Defendant Shipwrecked Vessel. The wreck is located beyond the territorial waters or contiguous zone of any sovereign nation. No party has a valid claim to the wreck. It is highly unlikely the original owner of the vessel, its successors or assigns, will claim an interest in the wreck. Odyssey is not aware of any other party, including fishermen, salvors, divers or others that may have discovered or recovered parts of the shipwreck since the time of the loss of the vessel, that has sought a salvage claim, or attempted to reduce the shipwreck site to their possession.

Consequently, Odyssey's potential injury outweighs the injury of any other party, since Odyssey will suffer serious irreparable injury if an injunction is not issued, and it is unlikely that any other party will suffer injury if preliminary injunctive relief is awarded to Odyssey.

D.  **An Injunction Will Not Be Adverse To The Public Interest**

Odyssey is committed to recovering the Defendant Shipwrecked Vessel in a manner that benefits the public interest. The recovery operation and artifact preservation will be conducted in accordance with strict archaeological protocols. Furthermore, Odyssey intends to make certain of the recovered artifacts available for public display and educational purposes as well as historic and scientific study. Consequently, the issuance of an injunction will not be adverse to the public interest. To the contrary, the issuance of a preliminary injunction permitting Odyssey to conduct a competent, safe, scientific and successful recovery of the Defendant Shipwrecked Vessel can only benefit the public interest. *See Treasure Salvors*, 546 F. Supp. at 929.

IV. **CONCLUSION**

For the foregoing reasons, Odyssey respectfully requests that the Court grant its motion for entry of an Order granting a preliminary injunction: (1) appointing Odyssey exclusive salvor-in-possession or finder-in-possession of the Defendant Shipwrecked Vessel, its apparel, tackle, appurtenances, and cargo; (2) awarding Odyssey priority salvage status, and sole and exclusive possession of the Defendant Shipwrecked Vessel within the areas described in the Complaint; and (3) temporarily enjoining and restraining any and all interference by any third parties with Odyssey's exclusive rights to salvage the Defendant Shipwrecked Vessel within the areas described in the Complaint.

DATED this 15th day of September, 2006.

Respectfully submitted,

_____
Allen von Spiegelfeld
Florida Bar No. 256803
FOWLER WHITE BOGGS BANKER P.A.
P. O. Box 1438
Tampa, Florida 33601
(813) 228-7411
(813) 229-8313 - Facsimile
avonsp@fowlerwhite.com
Attorneys for Plaintiff