UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ODYSSEY MARINE
EXPLORATION, INC.,

           **Plaintiff,**

v.                                                                    **Case No.  8:06-cv-1685-T-23TBM**

THE UNIDENTIFIED, SHIPWRECKED
VESSEL OR VESSELS,

           **Defendant(s).**
_____/

## REPORT AND RECOMMENDATION

      THIS MATTER is before the court on referral by the Honorable Steven D. Merryday

for a Report and Recommendation on **Plaintiff's Motion for Order Granting Preliminary**

**Injunctive Relief and Incorporated Memorandum of Law** (Doc. 3).[1]  No party or other

claimant has filed a response.  A hearing on the motion was conducted on October 10, 2006.


I.

      Plaintiff, Odyssey Marine Exploration, Inc., (hereinafter "Plaintiff" or "Odyssey"), is

a Nevada corporation with its principle place of business in Tampa, Florida.  It is engaged in

the business of deep ocean exploration and the recovery of shipwrecks around the world.  The

Unidentified, Shipwrecked Vessel or Vessels (hereinafter "Defendant") is believed to be a

_____

      [1]In support of this motion, Plaintiff has also filed the Affidavit of John Morris, the
President and Chief Executive Officer of Odyssey Marine Exploration, Inc.  (Doc. 14-2).

Dockets.Justia.com

17th century merchant ship lying at a depth of approximately 100 meters beyond the territorial waters or contiguous zone of any sovereign nation, approximately 40 miles from Lands End near the English Channel. Upon Plaintiff's information and belief, no extant entity or person presently claims any ownership interest in Defendant, evidence at the site indicates that any efforts by any previous owner to salvage the shipwreck and/or its cargo have long been abandoned, and the value of Defendant cannot be estimated at this time. Plaintiff has maintained actual, continuous, and exclusive possession or constructive occupancy of the wreck site to the extent possible since the time of discovery in the summer of 2006.

Plaintiff filed its Complaint on September 13, 2006, alleging four cause of actions: (1) possessory and ownership claim under Supplemental Admiralty Rule D and general maritime law (Count I); (2) salvage award claim under Supplemental Admiralty Rule C and the general maritime law as salvage services constitutes a preferred maritime lien (Count II); (3) injunctive relief to protect the recovery operation (Count III); and (4) declaratory judgment under 28 U.S.C. § 2201(a) (Count IV). (Doc. 1). On September 15, 2006, the court issued Orders directing the issuance of a warrant of arrest (Doc. 6) and appointing Odyssey as the substitute custodian of the Defendant (Doc. 5). Thereafter, notice of the arrest was published in the Tampa Tribune.

By its instant motion, Plaintiff seeks entry of an Order granting a preliminary injunction: (1) appointing Odyssey exclusive salvor-in-possession or finder-in-possession of the Defendant, its apparel, tackle, appurtenances, and cargo; (2) awarding Odyssey priority salvage status, and sole and exclusive possession of Defendant within the areas described in

2

the Complaint; and (3) temporarily enjoining and restraining any and all interference by any

third parties with Odyssey's exclusive rights to recover the Defendant within the areas

described in the Complaint.  Plaintiff claims that the entry of a preliminary injunction is

warranted because there is a substantial likelihood that it will succeed on the merits of it

claims.  As for the ownership claim under the maritime law of finds, Plaintiff contends there

is a substantial likelihood that it will be able to prove that Defendant has been abandoned by

its original owner.  As for the salvage claim, Plaintiff asserts that success on the merits is

likely as there is evidence on the site that indicates that Defendant has been severely damaged

and thus is in marine peril; it is voluntarily rendering services to rescue the Defendant from

being lost forever and is not under any duty to recover Defendant; and it is likely to recover

the imperiled property and has taken constructive possession of the wreck site.  Plaintiff

contends it will suffer irreparable injury if injunctive relief is not issued because it risks losing

its legal rights and substantial investments to date,[2] and this potential injury outweighs the

injury to any subsequent claimant or salvor who might seek to take advantage of Plaintiff's

substantial efforts at locating the Defendant.  Lastly, Plaintiff contends that the entry of a

preliminary injunction in this instance is not adverse to the public interest because permitting

it to conduct a competent, safe, scientific and successful recovery of Defendant can only

benefit the public interest.  (Doc. 3).

---

[2]Although no owner or other salvor has stepped forward to claim an interest in the Defendant or otherwise interfere in Plaintiff's efforts and there is no known threat of such, Plaintiff maintains that the salvage industry is now on notice of its claim and thus there is a real threat of interference with its salvage operations.

II.

Rule 65 of the Federal Rules of Civil Procedure governs the procedure for the issuance of a preliminary injunction.  The purpose of a preliminary injunction is to maintain the status quo until the court can enter a final decision on the merits of the case.  United States v. DBB, Inc., 180 F.3d 1277, 1282 n. 5 (11th Cir. 1999); see also Canal Auth. of Fla. v. Callaway, 489 F.2d 567, 572 (5th Cir. 1974).[3]  A party seeking entry of a preliminary injunction must establish (1) a substantial likelihood of success on the merits; (2) irreparable injury if the injunction is not granted; (3) the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest.  Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A., 320 F.3d 1205, 1210 (11th Cir. 2003); McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998); Haitian Refugee Ctr., Inc. v. Baker, 949 F. 2d 1109, 1110 (11th Cir. 1991).  A preliminary injunction is an extraordinary and drastic remedy and should not be granted unless the movant clearly establishes all four elements.  Horton v. City of St. Augustine, Fla., 272 F.3d 1318, 1326 (11th Cir. 2001); McDonald's, 147 F.3d at 1306.  A plaintiff may support its motion for a preliminary injunction by setting forth allegations of specific facts in affidavits.  See M.D. Fla. R. 4.05(b)(2), 4.06(b)(3).  In considering a motion for preliminary injunctive relief, a district court may rely on affidavits and hearsay materials that would not be admissible as evidence for entry of a permanent

---

[3]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

4

injunction.  Levi Strauss & Co. v. Sunrise Int'l Trading Inc., 51 F.3d 982, 985 (11th Cir. 1995).

### III.

Regarding the first element, the evidence before the court reveals that there is a substantial likelihood that Plaintiff will ultimately succeed on the merits of one or both claims.  Here, Plaintiff brings admiralty and maritime claims arising under the law of finds and the law of salvage.  To establish a claim (of ownership) under the law of finds, Plaintiff must show (1) intent to reduce property to possession, (2) actual or constructive possession of the property, and (3) that the property is either unowned or abandoned.  See R.M.S. Titanic, Inc. v. The Wrecked & Abandoned Vessel, 435 F.3d 521, 532 n. 3 (4th Cir. 2006).  To establish a claim for salvage, Plaintiff must show (1) a "marine peril," (2) service voluntarily rendered, and (3) success, either wholly or partly, in recovering the imperiled property. Lathrop v. The Unidentified, Wrecked & Abandoned Vessel, 817 F. Supp. 953, 961-62 (M.D. Fla. 1993).  Regarding the claim of ownership, the maritime law of finds vests title to persons who reduce to their possession objects which have been abandoned at sea.  See Treasure Salvors, Inc. v. The Unidentified Wrecked & Abandoned Sailing Vessel, 569 F.2d 330, 337 (5th Cir. 1978).  At present, no other party has stepped forward to claim an ownership interest and none is anticipated.  Thus, Plaintiff's efforts to date reflect that the ship has been

5

abandoned,[4] and pursuant to the maritime law of finds, Plaintiff evidences its intent to reduce

the property to its possession, custody or control.[5]  Even in the event an owner or other

claimant should subsequently appear, Plaintiff is likely to prevail on its claim of salvage.

Evidence to date clearly suggests that the ship is a marine peril, as that term is defined.[6]

Further, Plaintiff has voluntarily rendered service and its efforts to date evidence partial

success in locating, documenting and recovering imperiled property.  Ongoing efforts hold the

promise of further significant recovery of imperiled property.  Thus, even if the claim pursuant

to the law of finds should become disputed, it is likely that the Plaintiff will succeed on the

merits of its claim of salvage.

As to the second element of irreparable harm, the party seeking preliminary injunctive

relief must show either that it will suffer, or faces a substantial likelihood that it will suffer,

irreparable injury in the absence of an injunction.  Siegel v. LePore, 234 F.3d 1163, 1176 n.9

(11th Cir. 2000) (citations omitted).  The asserted irreparable injury "must be neither remote

---

[4]Abandonment occurs "by an express or implied act of leaving or deserting property
without hope of recovering it and without the intention of returning to it."  Columbus-
America Discovery Group, Inc. v. The Unidentified, Wreck and Abandoned Sailing Vessel,
742 F. Supp. 1327, 1335 (E.D. Va. 1990), rev'd on other grounds by Columbus-America
Discovery Group, Inc. v. Atlantic Mut. Ins. Co., 974 F.2d 450 (4th Cir. 1992).  Abandonment
may be inferred from all the relevant facts and circumstances.  Id.

[5]Some recovery has already occurred and the Plaintiff has deposited with this court a
portion of a bottle recovered from the wreckage.

[6]A marine peril "includes more than the threat of storm, fire, or piracy to a vessel in
navigation.  Thus, a marine peril existed in a wrecked and abandoned vessel, which sank in
1622 . . . , and whose location was unknown for over 300 years."  Platoro Ltd., Inc. v.
Unidentified Remains of a Vessel, 614 F.2d 1051, 1055 (5th Cir. 1980) (citing Treasures
Salvors, Inc., 569 F.2d at 337.)

nor speculative, but actual and imminent." Siegel at 1176-77 (quoting Ne. Fla. Chapter of the

Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla., 896 F.2d 1283, 1285 (11th Cir.

1990)). "An injury is 'irreparable' only if it cannot be undone through monetary remedies."

Ne. Fla. Chapter, 896 F.2d at 1285. The possibility that adequate compensatory relief will be

available at a later date, in the ordinary course of litigation, weighs heavily against injunctive

relief. Id.

Here, Plaintiff urges that it has expended considerable resources in locating, studying

and surveying the vessel, and in documenting and developing a plan for an archaeological

excavation and conservation plan. Absent injunctive relief, Plaintiff contends its substantial

investment will be at risk because it may not be able to exclude other salvors from the salvage

operation. Quoting from Treasure Salvors, Inc. v. The Unidentified Wrecked & Abandoned

Sailing Vessel, 640 F.2d 560, 567 (5th Cir. 1981), Plaintiff urges that, "[a] salvor . . . has a

valuable interest in his salvage operations which the law protects by vesting in the salvor

certain rights. . . .[including] the right to exclude others from participating in the salvage

operation . . ." To permit the entry of another salvor onto the site would result in injuries and

harm to its salvage operation for which there would be no adequate remedy at law.

Given that no other salvor has evidenced knowledge of or interest in the site, the

showing here is not particularly strong. However, other considerations lead the court to find

that the potential for irreparable harm is real and needs be addressed now rather than later.

Because of the potential historical significance of this find, Plaintiff contemplates a complete

survey and excavation according to archaeological protocols. The intangible benefits

resulting from such an approach cannot be measured purely in terms of dollars and cents, and in any event, could not be achieved were another salvor able to enter the site and begin harvesting the property.  Publication of notice of the general location of the sight will no doubt attract the immediate attention of other salvors and potential owners.  In the circumstances, Plaintiff's rights as a salvor and its plan for identifying and preserving the historical significance of the find would be irreparably harmed were other salvors or potential claimants not prevented from conducting their own operations on the site.  There is a minimally adequate showing of this second element.

Next, Plaintiff must demonstrate that the threatened injury to itself outweighs any harm an injunction may cause the Defendant or any other party.  In support, Plaintiff urges that no other party has evidenced an interest or claim in the vessel and it is not anticipated that any will.  In the circumstances, it urges that the potential harm to others caused by an injunction granting it exclusive right of salvage to this vessel cannot outweigh the harm it would experience in the loss of its investment and exclusive salvage rights were the injunction denied and other salvors permitted to work at the site.  On the basis of the present circumstances, the court agrees.

Finally, Plaintiffs must demonstrate that the public's interest would be served by an injunction.  Here, it urges that it is committed to a salvage operation that will benefit the public interest.  By its plan, the salvage will proceed according to archaeological protocols to preserve the historical significance of the find.  Certain recovered artifacts will be made available to the public for historical and educational purposes.  In the circumstances, it urges

8

that a safe and successful recovery of the vessel can only benefit the public.  Again, on the

basis of the present circumstances, the court agrees that the public would be served by

allowing the Plaintiff to continue its efforts without the interference of other salvors or

claimants.


IV.

An applicant for a preliminary injunction must provide security against the potential

effects of a wrongly-issued injunction.  BellSouth Telecomms., Inc. v. MCIMetro Access

Transmission Servs., LLC, 425 F.3d 964, 970 -971 (11th Cir. 2005) (quoting Fed. R. Civ. P.

65(c)).  Rule 65(c) states, in pertinent part:

> No restraining order or preliminary injunction shall issue except
> upon the giving of security by the applicant, in such sum as the
> court deems proper, for the payment of such costs and damages
> as may be incurred or suffered by any party who is found to
> have been wrongfully enjoined or restrained.

Fed. R. Civ. P. 65(c).  The amount of any such bond is a matter within the discretion of the

trial court.  Id. at 971 (citing City of Atlanta v. Metro. Atlanta Rapid Transit Auth., 636 F.2d

1084, 1094 (5th Cir. Unit B 1981)).

In this case, there appears a high probability that Plaintiff will succeed on the merits of

one or the other of its claims.  Additionally, there is no indication at present that another party

claims an interest in the vessel such that it will suffer damages as a result of the issuance of a

preliminary injunction.  Nonetheless, the Plaintiff itself concedes that the notice of this find

will likely draw the attention of other salvors and perhaps parties claiming to own the vessel. In the circumstance, while the requirement of security is appropriate, the amount of such security need not be great at this point.

V.

In conclusion, the court finds that Plaintiff has  satisfied the necessary elements for the imposition of preliminary injunctive relief.  Accordingly, it is **RECOMMENDED** that **Plaintiff's Motion for Order Granting Preliminary Injunctive Relief and Incorporated Memorandum of Law** (Doc. 3) be **GRANTED** and that the court enter a preliminary injunction(1) appointing Odyssey Marine Exploration, Inc., exclusive finder/salvor-in-possession of the Defendant shipwrecked vessel, its apparel, tackle, appurtenances, and cargo; (2) awarding it priority salvage rights, and sole and exclusive possession of the Defendant shipwrecked vessel; and(3) temporarily enjoining and restraining any and all interference with its exclusive rights to salvage the Defendant shipwrecked vessel by any third party.  It is **RECOMMENDED** further that the court require the posting of a bond or other security with the Clerk in the amount of $5,000.00.

Respectfully submitted on this
11th day of October 2006.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

**<u>NOTICE TO PARTIES</u>**

Failure to file written objections to the proposed findings and recommendations

contained in this report within ten days from the date of its service shall bar an aggrieved party

from attacking the factual findings on appeal and a *de novo* determination by a district judge.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; <u>see also</u> Fed. R. Civ. P. 6; M.D. Fla. R. 4.20.

Copies to:
The Honorable Steven D. Merryday, United States District Court Judge
Counsel of Record

11