FILED

IN THE UNITED STATES DISTRICT COURT 2007 JUN 15  AM 11: 30
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
IN ADMIRALTY

MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

ODYSSEY MARINE EXPLORATION, INC.,

      Plaintiff,

v.                                                    Case No. 8:06-CV-1685-T23-TBM

THE UNIDENTIFIED, SHIPWRECKED
VESSEL OR VESSELS, their apparel, tackle,
appurtenances and cargo located within center
point coordinates:
49°25'N, 6°00'W; Radius: 5 nautical miles

in rem,

      Defendant(s).
_____/

CLAIMANT KINGDOM OF SPAIN'S
*(1)* UNOPPOSED MOTION FOR AN ORDER VACATING THE DEFAULT
JUDGMENT AND DEEMING THE KINGDOM OF SPAIN'S VERIFIED CLAIM
AS TIMELY SUBMITTED, AND *(2)* OPPOSED MOTION FOR AN ORDER
REQUIRING PLAINTIFF TO PROVIDE A MORE DEFINITE STATEMENT
AND ACCESS TO RELEVANT INFORMATION BEFORE THE KINGDOM OF
SPAIN FILES ITS RESPONSIVE PLEADING

Claimant, the Kingdom of Spain ("Spain"), by its undersigned counsel, hereby

moves for entry of (1) an Order setting aside the default judgment entered May 31, 2007

in this proceeding, pursuant to the Court's authority under Federal Rules of Civil

Procedure 55(c) and 60(b); (2) an Order deeming Spain's Verified Claim entered May 30,

2007 as timely filed in accordance with Supplemental Rule C(6)(a)(i)(B); and (3), subject

to the Court's ruling on the foregoing, an Order instructing Plaintiff Odyssey Marine

Exploration, Inc. ("Odyssey"), in accordance with Supplemental Rules C(2)(b) and

E(2)(a), to provide a more definite statement in an amended complaint and to provide access to information in Odyssey's possession and control so that Spain may frame a responsive pleading in accordance with Supplemental Rule C(6)(a)(iv).

As required by Local Rule 3.01(g), movant Spain, through its undersigned counsel, certifies that it has conferred with Odyssey's counsel concerning these motions. Counsel for Odyssey has advised that Odyssey does not oppose Spain's motion to vacate the default judgment and to deem Spain's Verified Complaint timely. Counsel for Odyssey has advised that Odyssey opposes Spain's motion for a more definite statement and for access to other information.

### MEMORANDUM OF LAW IN SUPPORT OF SPAIN'S MOTIONS

This memorandum is submitted in support of Spain's motions to vacate the default judgment entered May 31, 2007 in this proceeding, and for other relief as necessary to permit due and expeditious consideration of the rights and immunities Spain may have in the res claimed by Odyssey.[*]

## I. BACKGROUND STATEMENT

Odyssey commenced this admiralty action in rem against Defendant Unidentified, Shipwrecked Vessel or Vessels, their apparel, tackle, appurtenances and cargo ("Defendant Unidentified Vessel") on September 19, 2006. In its complaint, Odyssey asked the Court, among other things, to declare Odyssey "the true, sole[,] and exclusive

---

[*] As noted in Spain's Verified Claim dated May 29, 2007 and entered by the Court on May 30, 2007, Spain participates in this in rem proceeding without waiving, and with full reservation of, its sovereign immunity. Spain also does not waive any other potential jurisdictional issue.

owner" of Defendant Unidentified Vessel. Odyssey Complaint ¶ 9. In support of this request, Odyssey described Defendant Unidentified Vessel as an "abandoned shipwreck." Id. ¶ 18. Odyssey further declared that "there is no extant owner of the Defendant [Unidentified] Vessel or its artifacts" and that, accordingly, it was entitled to the res "without the interference of any . . . agency, department[,] or instrumentality of any government, domestic or foreign." Id. ¶ 19. Based on these ex parte allegations, the Court entered a default judgment on May 31, 2007, awarding title over the Defendant Unidentified Vessel to Odyssey.

On May 18, 2007, counsel for Spain requested information from Odyssey's counsel as to the source and identity of large quantities of material reportedly found by Odyssey. See Letter of James A. Goold to Allen von Spiegelfeld, Exhibit A. This request was made immediately after Spain became aware of media reports that Odyssey had recovered and transported to the United States tons of silver and gold from an unidentified sunken vessel. See, e.g., Terry Aguayo, A Bountiful Undersea Find, Sure to Invite Debate, N.Y. Times, May 18, 2007. Odyssey did not supply the information requested. Spain accordingly submitted its Verified Claim dated May 29, 2007 and filed by the Court on May 30, 2007.

In a February 5, 2004 Federal Register notice published by the U.S. Department of State, Spain affirmed its non-abandonment and refusal of salvage of Spanish vessels in accordance with, inter alia, "Spanish laws and policy regarding the remains of sunken vessels that were lost while in the service of the Kingdom of Spain and/or were transporting property of the Kingdom of Spain":

- 3 -

> In accordance with Spanish and international law, Spain has not abandoned or otherwise relinquished its ownership or other interests with respect to such vessels and/or its contents, except by specific action pertaining to particular vessels or property taken by Royal Decree or Act of Parliament in accordance with Spanish law. Many such vessels also are the resting place of military and/or civilian casualties.

Protection of Sunken Warships, Military Aircraft and Other Sunken Government Property, 60 Fed. Reg. 5647 (Feb. 5, 2004). Spain also placed potential salvors on notice that "salvage or other disturbances of sunken vessels or their contents in which Spain has [property or other] interests is not authorized and may not be conducted without express consent by an authorized representative of . . . Spain." Id. at 5647.

Precise information about the source and identity of Defendant Unidentified Vessel is necessary to determine Spain's interests in the res. The five-mile radius of the coordinates provided by Odyssey place Defendant Unidentified Vessel in waters that include the approaches to the English Channel frequently navigated by vessels of Spain throughout the centuries. Thus, the res, said by Odyssey to be part of a sunken vessel from the 17th century, see Odyssey Complaint ¶ 8, may be property of Spain.

Despite repeated requests, Odyssey has not provided further identification of the res. Odyssey has so far refused to clarify even whether the material subject to recent news reports is part of the res in this case or is the res at issue in either of the two other admiralty proceedings it recently filed in this District.[1] Accordingly, in the interests of

---

[1] On April 9, 2007, Odyssey filed two complaints seeking arrests of unidentified shipwrecks in this District. These cases are 8:07-CIV-614-T-24MAP (also identified as 8:07-CV-00614-SCB-MAP) and 8:17-cv-00616-JSM-MSS. For the information of the Court, Spain has filed Verified Claims in both of (continued...)

justice and international comity, further proceedings are necessary and appropriate in this case to determine the identity of the res and Spain's rights over it.

## II. AN ORDER VACATING THE DEFAULT JUDGMENT UNDER RULES 55(c) AND 60(b) IS APPROPRIATE IN THIS CASE TO ENABLE A DETERMINATION OF SPAIN'S RIGHTS IN THE RES

An Order setting aside the default judgment in this case is warranted under relevant Federal Rules of Civil Procedure giving courts broad discretion to set aside default judgments when the interests of justice so require. See, e.g., Seven Elves, Inc. v. Eskenazi, 635 F.2d 396 (5th Cir. 1981). Rule 55(c) states that a federal court "[f]or good cause shown . . . may set aside . . . a judgment by default . . . in accordance with Rule 60(b)." Fed. R. Civ. P. 55(c). Rule 60(b) identifies multiple grounds for vacating a judgment, including, inter alia, voidness of the judgment, that "it is no longer equitable that the judgment should have prospective application," or "any other reason justifying relief . . . ." Id. 60(b). Rule 60(b) is to be given a liberal and remedial construction, see, e.g., Nisson v. Lundy, 975 F.2d 802, 807 (11th Cir. 1992). "[T]he rule is applied most liberally to judgments in default," Seven Elves, supra, at 403, since default judgments are disfavored over resolution of claims on the merits. Id. at 403; Geico Cas. Co. v. Beauford, No. 8:05-cv-697, 2006 WL 3848000, at *2 (M.D. Fla. Nov. 8, 2006).

---

these cases as well. In case 8:17-cv-00616, on April 25, 2007, Odyssey was ordered to publish Notice of Arrest in Spanish and Italian newspapers. Clerk's Minutes (April 25, 2007) (Document 11).

**A. Considerations of Sovereign Immunity and International Comity Justify Setting Aside the Default Judgment Under Rule 60(b)**

As a threshold ground, the default judgment in this case should be set aside because ownership by Spain of the res would deprive the Court of jurisdiction under the Foreign Sovereign Immunities Act. See 28 U.S.C. § 1609 (2000) ("[P]roperty in the United States of a foreign state shall be immune from attachment arrest and execution . . . ."); Fed. R. Civ. P. 60(b)(4); Brazosport Towing Co. v. 3,838 Tons of Sorgum Laden on Board the Barge NL No. 703, Official No. 291237, 607 F. Supp. 11 (S.D. Tex. 1984) (vacating, on sovereign immunity grounds, a default judgment in an admiralty action in rem against cargo owned by Mexico). Absence of jurisdiction based on sovereign immunity would make the default judgment void. Brazosport Towing, supra, at 15-16; see Stephens Boat Co. v. Barge ORR 1, 791 F. Supp. 145, 148 (E.D. La. 1992). "[A] valid judgment cannot be rendered in an in rem proceeding if the court lacks jurisdiction over the res," as is the case when a vessel's cargo is owned by a foreign country and protected by sovereign immunity. Brazosport Towing, supra, at 16. Consequently, the default judgment entered on May 30, 2007 in this case should be vacated to permit a determination of the extent to which Spain possesses a sovereign interest over Defendant Unidentified Vessel or its contents and, thus, whether there is proper jurisdiction over the res.

Since as early as 1812, the Supreme Court has left no doubt that sovereign immunity is a jurisdictional question, particularly where the matter concerns a vessel or other property of a foreign state. Schooner Exchange v. McFaddon, 11 U.S. (7 Cranch) 116 (1812); see also Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428,

438-39 (1989) (concluding that the Foreign Sovereign Immunities Act trumps any general maritime jurisdiction held by federal courts). Moreover, once a question of potential sovereign immunity arises, the "district court must make the 'critical preliminary determination' of its own as early in the litigation as possible; to defer the question is to 'frustrate the significance and benefit of entitlement to immunity from suit.'" Phoenix Consulting, Inc. v. Republic of Angola, 216 F.3d 36, 38 (D.C. Cir. 2000); see also Moran v. Kingdom of Saudi Arabia, 27 F.3d 169 (5th Cir. 1994); Cargill, Inc. v. M/T Pavel Dyyenko, 991 F.2d 1012, 1016 (5th Cir. 1993).

The Foreign Sovereign Immunities Act codifies principles applicable to the sovereign immunity of property of a foreign state subjected to claims in U.S. courts. Under Section 1609 of the Act, immunity specifically applies to any arrest of the property of a foreign state, unless specific and narrow exceptions are present.[2] Section 1609 provides:

> Subject to existing international agreement to which
> the United States is a party at the time of enactment
> of this Act the property in the United States of a
> foreign state shall be immune from attachment
> arrest and execution . . . .[3]

---

[2] Exceptions to this immunity provided in Sections 1610 and 1611 of the Act pertain to: property that is "used for a commercial activity in the United States" (§ 1610(a) and (b)); property as to which the foreign sovereign has "explicitly waived its immunity from attachment" (§ 1610(d)); "foreclosure of preferred mortgage" on a vessel (§ 1610(e)); property with respect to which certain financial transactions are prohibited by U.S. laws (§ 1610(f)); and defined types of Cuban property (§ 1611(e)). Although it need not be decided at this stage, none of these exceptions appears to apply in this case.

[3] By seeking to have the Court apply in rem jurisdiction, and bringing into court an item (a "glass bottle") recovered from the wreck, Odyssey has sought to have the court treat the vessel as if it were in the United States. Odyssey Complaint ¶ 10. Additionally, Odyssey has publicized that it has brought into the United (continued...)

28 U.S.C. § 1609. This Section would cover the res at issue here if this property is in fact property of Spain. Accordingly, further proceedings are appropriate to determine this issue.

Furthermore, under binding international law, Spain's sunken vessels and property at sea are also entitled to the same immunities enjoyed by U.S. sunken vessels and property at sea. See Treaty of Friendship and General Relations, art. X, July 3, 1902, U.S.-Spain, 33 Stat. 2105; Sea Hunt v. Kingdom of Spain, 221 F.3d 634, 643 (4th Cir. 2000). As held in Sea Hunt, any claim in U.S. court of abandonment concerning, inter alia, a Spanish sunken vessel is subject to the "express abandonment" standard also applied to sunken U.S. vessels under U.S. law. 221 F.3d at 644. Thus, only an "express renunciation" of ownership by Spain of its property under its own laws and procedures constitutes abandonment. Id. at 643. U.S. international commitments require a determination of abandonment before title in what may constitute Spain's property is handed over to Odyssey. Because the default judgment granted title in the res to Odyssey, it should be set aside to determine this issue.

Finally, principles of international comity motivating the United States to respect other nations' interests in protecting their sunken vessels from "disturbance and exploitation" warrant due consideration of Spain's potential ownership interests in this case. See Sea Hunt, 221 F.3d at 647; see also Fed. R. Civ. P. 60(b)(6) (allowing the Court to relieve a party from a judgment for "any other reason justifying [such] relief").

---

States a large quantity of material recovered from a shipwreck, while declining to say whether it is part of the res in this case.

In sum, vacation of the default judgment is warranted under Rules 55(c) and 60(b) in

accordance with principles of United States and Spanish law, sovereign immunity,

international law, and international comity.

> **B. Odyssey's Failure to Account for Spain's Potential Interests in the <u>Res</u>**
> **and to Comply with the Supplemental Rules' Description Requirements**
> **Justifies Vacating the Default Judgment Under Rule 60(b)**

The vague and incomplete information provided by Odyssey to date in this case

also constitutes compelling grounds in itself to set aside the default judgment in

accordance with Rule 60(b). In its Verified Complaint, Odyssey did not address the

existence of potential sovereign interests over Defendant Unidentified Vessel. Among

other things, Odyssey alleged in its Verified Complaint that it was "entitled to an

adjudication of title and ownership" in Defendant Unidentified Vessel because "there is

no extant owner" of this property. <u>Odyssey Complaint</u> ¶ 19. Odyssey further alleged that

it had the "right to recover the [<u>res</u>] without the interference of any . . . government." <u>Id.</u>

Accordingly, Odyssey asked the Court to declare that "[n]o government has the authority

to interfere with Odyssey's exploration and/or recovery of Defendant [Unidentified]

Vessel, or to grant, condition or deny the right of Odyssey to do so within the waters of

the Atlantic Ocean . . . ." <u>Id.</u> ¶ 33.

As noted above, long before filing its Complaint in this case, Odyssey was on

notice that Spain has not abandoned its sunken vessels and property, and that it rejects

salvage or other unauthorized disturbance of such vessels and property. 60 Fed. Reg. at

5647; <u>see</u> Attachment to Exhibit A. As the U.S. Department of State summarized the

underlying principle, recovery operations directed at sovereign sunken vessels "should

not occur without the express permission of the sovereign." 60 Fed. Reg. at 5648.
Odyssey's assertions that no foreign sovereign has authority over Defendant Unidentified
Vessel did not take account of the sovereign rights of Spain or other owners which may
exist in the res.

Moreover, under established salvage doctrine, the owner of a sunken vessel or
cargo at sea may refuse salvage. See Int'l Aircraft Recovery, L.L.C. v. Unidentified,
Wrecked & Abandoned Aircraft, 218 F.3d 1255, 1260-62 (11th Cir. 2000); Sea Hunt v.
Kingdom of Spain, 221 F.3d 634, 647 fn.2 (4th Cir. 2000). The Eleventh Circuit has thus
stated, for example, that "[o]nly in a rare case where the government owner gives express
or implied consent to salvage, should an award be given because the government has full
power to reject or prohibit the services." Id. at 1262 fn.16 (quoting Thomas J.
Schoenbaum, Admiralty and Maritime Law § 16-7 (2d ed. 1994)); see also Thomas J.
Schoenbaum, Admiralty and Maritime Law 188 (4th ed. 2004). Indeed, any owner,
whether sovereign or not, has the right to reject salvage. See Thomas J. Schoenbaum,
Admiralty and Maritime Law 167 (4th ed. 2004) ("Salvage cannot be forced upon an
owner . . . of the vessel; a salvor who acts without the express or implied consent of the
owner is a 'gratuitous intermeddler,' who is not entitled to any salvage award.") (internal
citations omitted). Hence, Odyssey's Verified Complaint to the Court inaccurately
represented the facts and the law by declaring that no government could interfere with
Odyssey's retrieval of Defendant Unidentified Vessel.

In addition, vacating the default judgment is consistent with the particularity
requirements of Supplemental Rules C(2)(b) and E(2)(a). Supplemental Rule C(2)(b)

obliges Odyssey to describe Defendant Unidentified Vessel with "reasonable

particularity." Supplemental Rule C(2)(b). Similarly, Supplemental Rule E(2)(a) obliges

Odyssey to "state the circumstances from which the claim arises with such particularity

that the . . . claimant will be able, without moving for a more definite statement, to

commence an investigation of the facts and to frame a responsive pleading."

Supplemental Rule E(2)(a). As the Eleventh Circuit has recognized, this pleading

requirement is "more stringent than [] that of the Federal Rules," United States v.

$38,000.00 in United States Currency, 816 F.2d 1538, 1547 fn.20 (11th Cir. 1987); see

Fathom Exploration, LLC v. Unidentified Shipwrecked Vessel or Vessels, 352 F. Supp.

2d 1218, 1222 (S.D. Ala. 2005). It demands "a meaningful level of detail in describing

the property at issue" so that potential owners of the property can determine whether their

property is at stake and can intervene accordingly. See United States v. One Parcel of

Real Property, 964 F.2d 1244, 1248 (1st. Cir. 1992). The logical and important purpose

of this requirement is to "guard against the improper use of the admiralty arrest and

seizure powers" to deprive others of their ownership interests over property at sea.

United States v. Mondragon, 313 F.3d 862, 864-65 (4th Cir. 2002); Great Lakes

Exploration Group LLC v. The Unidentified, Wrecked & (for Salvage-Right Purposes),

Abandoned Sailing Vessel, No. 1:04-CV-375, 2006 WL 3370878, at *3 (W.D. Mich. No.

20, 2006).

  The information Odyssey has disclosed falls short of the "reasonable

particularity" requirement. The Complaint states only that Defendant Unidentified

Vessel is "believed to be a merchant vessel from the 17th Century." Odyssey Complaint

¶ 8. It provides no information whatsoever as to the identity or the nationality of the vessel or the cargo.[4] As to the items found at the time of filing, the Complaint refers only to "artifacts," "objects," "vessel remains, metal objects[,] and cannons," id. ¶¶ 7, 11, 19, without providing any information as to their characteristics or nationality.

Case law establishes that far more information than that provided by Odyssey here is required under the Supplemental Rules. See Great Lakes Exploration Group, supra, at **3-4; Fathom Exploration, LLC v. Unidentified Shipwrecked Vessel or Vessels, 352 F. Supp. 2d 1218, 1225-27 (S.D. Ala. 2005). In the Great Lakes case, for example, the court concluded that plaintiff's amended complaint did not meet the "reasonable particularity" requirement "because it [did] not disclose a part of Defendant [Vessel's] description that [was] known to Plaintiff and which is important to defining Defendant [Vessel]." 2006 WL 3370878, at *4. Notably, the plaintiff's complaint provided more detail than Odyssey's in this case, with a description of the vessel's precise coordinates, length, approximate weight, name, date of sinking, among others. Id. at **1-2. Nevertheless, the plaintiff's failure to meet the Supplemental Rule's requirements, compounded by its refusal to comply with court orders for more detailed descriptions of the res, led to dismissal of the case. Id. at *8.

In Fathom Exporation, plaintiff's complaint in rem against a sunken vessel was similarly held to be insufficiently detailed to meet Supplemental Rules C(2)(b) and

[4] The published Notice of Arrest provides even less information, referring solely to an "Unidentified, shipwrecked Vessel or Vessels." See Attachment to October 12, 2006 Notice of Filing Affidavit of Publication of Notice of Arrest.

E(2)(a).  352 F. Supp. 2d at 1231.  Like Odyssey's Verified Complaint here, the

complaint in Fathom provided the vessel's general coordinates, declared that the ship had

no owner, and described some "artifacts" recovered from the site.  Id. at 1120.  The court

agreed with intervenor/claimant United States that an amended complaint disclosing the

information held by plaintiffs was required.  Id. at 1231.  Accordingly, the court ordered

plaintiff to "file an Amended Complaint setting forth such additional reasonable details as

it may have concerning the identity, nature, precise location, and embedded status of the

Shipwreck . . . ."  Id.

 Odyssey's ability to provide more information than it has to date is evidenced by

its claimed activities at the site of the res.  In its Complaint, Odyssey represents that it has

surveyed the site and obtained video and photographic images of the vessel using

"appropriate archaeological protocols."  Id. ¶¶ 8-10.  Furthermore, Odyssey alleges that

its personnel, including an "experienced nautical archaeologist," had conducted an

assessment of "the wreck" by the time the complaint was filed.  Id. ¶¶ 5, 10.  The

Complaint also provides clear indications that Odyssey in fact has information

identifying the vessel which it has not disclosed.  Notably, Odyssey's Complaint refers to

"research that has led it to believe that more valuable cargo may be located at or near the

site."  Id. ¶ 7.  This cryptic statement suggests that Odyssey has information that would in

fact identify the vessel, or at least what vessel it is believed to be.  Yet, Odyssey has not

disclosed this information.

 By failing to describe the res with reasonable particularity in this case, Odyssey

has not provided potential claimants with information necessary to determine whether or

- 13 -

to what extent they may have an interest in the arrested res and to prepare an answer to the Complaint pursuant to Supplemental Rule C(6)(a)(iv). Accordingly, in the interests of justice and pursuant to Rules 55(c) and 60(b), the default judgment should be set aside on this additional ground.

## III. AN ORDER DEEMING SPAIN'S VERIFIED CLAIM IN THIS CASE AS TIMELY SUBMITTED MAY BE ISSUED UNDER SUPPLEMENTAL RULE C(6)

Supplemental Rule C(6)(a)(i) allows a person asserting a possessory or ownership right over property in an admiralty action in rem to file a verified statement of interest "within the time that the court allows." Supplemental Rule C(6)(a)(i)(B). For the reasons stated above, Spain respectfully requests that the Court deem May 30, 2007 as within the allowed time for filing its verified claim of interest in this case.

## IV. THE SUPPLEMENTAL RULES REQUIRE ODYSSEY TO PROVIDE A MORE DEFINITE STATEMENT DESCRIBING DEFENDANT UNIDENTIFIED VESSEL WITH REASONABLE PARTICULARITY

For the reasons stated in Section II.B above and in the interests of judicial economy and minimization of motion practice, Spain respectfully requests that Odyssey be ordered, in the event the Court vacates the default judgment, to file an amended complaint setting forth with reasonable particularity the information known to Plaintiff which may identify Defendant Unidentified Vessel, consistent with Supplemental Rules C(2)(b) and E(2) and pursuant to Rule 12(e), and to provide access to Spain to such other information as Odyssey may possess which may identify the vessel and its contents. This information should include at minimum a detailed description and accounting of the

- 14 -

artifacts and objects found and retrieved from the site and the national origin of the vessel and its cargo.

As set forth in Section II.B above, this information is required by the Supplemental Rules and, in the circumstances of this case, is necessary for Spain to frame its responsive pleading. See Supplemental Rules C(2)(b), E(2); Great Lakes Exploration Group LLC v. Unitentified, Wrecked & (for Salvage-Right Purposes), Abandoned Sailing Vessel, No. 1:04-CV-375, 2006 WL 3370878, at \*\*3-4 (W.D. Mich. Nov. 20, 2006); Fathom Exploration, LLC v. Unidentified Shipwrecked Vessel or Vessels, 352 F. Supp. 2d 1218, 1231 (S.D. Ala. 2005). As noted previously, moreover, Odyssey has stated publicly that on or about May 17, 2007 it brought to the United States a large quantity of gold and silver coins without identifying the site or vessel from which they were taken. Odyssey has refused to disclose whether these materials were taken from the res in this case. Furthermore, so far as Spain is aware, Odyssey has not filed any report or other disclosure in this or its other in rem actions in this District.

Subject to such terms as the Court may require and given the extraordinary circumstances presented by this case, Spain, therefore, requests that Odyssey (1) be ordered to file an amended complaint describing the res at issue in this case with reasonable particularity based to the information known to Odyssey, and (2) be further ordered to provide Spain with a reasonable opportunity (i) to inspect and examine photographic and other documentation of the res in Odyssey's possession and (ii) to inspect and examine all objects or artifacts recovered by Odyssey to date. Providing such access would expedite these proceedings, and facilitate the framing of a responsive

pleading by Spain and identification of relevant issues such as sovereign immunity and its jurisdictional implications for this case.

## CONCLUSION

In accordance with the foregoing, Claimant Spain respectfully requests that the Court grant its unopposed motion to vacate the default judgment entered May 31, 2007 and to deem Spain's Verified Claim as timely filed under Supplemental Rule C(6)(b)(i)(B). Spain's time to file a responsive pleading should be deferred accordingly.

Additionally, Spain respectfully requests that the Court grant its opposed motion for a more definite statement in an amended complaint describing with reasonable particularity the res and permit Spain to inspect and examine (1) photographic and other documentation of the res in Odyssey's possession and (2) all objects or artifacts recovered by Odyssey to date, before Spain's Rule C(6)(b)(iv) responsive pleading becomes due.

Dated: 14 June 2007

James A. Goold, Esq.
Covington & Burling LLP
1201 Pennsylvania Ave., NW
Washington, DC 20004
Telephone: (202) 662-5507
Fax: (202) 662-6291
E-mail: jgoold@cov.com

David C. Banker, Esq.
Bush Ross, PA
220 S. Franklin St.
P.O. Box 3913
Tampa, FL 33601-3913
Telephone: (813) 224-9255
Fax: (813) 223-9620
E-mail: dbanker@bushross.com

CERTIFICATE OF SERVICE

I hereby certify that I caused the attached Motions to be served up on the attorney of record for Plaintiff, Allen von Spiegelfeld, by facsimile and by Federal Express delivery to:

> Allen von Spiegelfeld
> Fowler, White, Boggs, Banker, P.A.
> 501 E. Kennedy Blvd. - Ste. 1700
> P.O. Box 1438
> Tampa, FL 33601-1438
> Fax: (813) 229-8313

Dated: 14 June 2007

James A. Goold, Esq.
Covington & Burling LLP
1201 Pennsylvania Ave., NW
Washington, DC 20004
Telephone: (202) 662-5507
Fax: (202) 662-6291
E-mail: jgoold@cov.com