**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
**IN ADMIRALTY**

ODYSSEY MARINE EXPLORATION, INC.

                    Plaintiff,                                    CIVIL ACTION

vs.

                                            Case No. 8:06-CV-01685-SDM-TBM

THE UNIDENTIFIED, SHIPWRECKED
VESSEL, its apparel, tackle,
appurtenances and cargo located within
center point coordinates: 49° 25' N, 6 ° 00' W;
Radius: 5 nautical miles,

                    Defendant;
                    in rem

and

The Kingdom of Spain,

                    Claimant/Defendant.

_____ /

**Motion to Dismiss and for Other Relief**
**of Claimant-Defendant Kingdom of Spain**

    Claimant-Defendant Kingdom of Spain ("Spain"), by its undersigned counsel, hereby

moves pursuant to the Supplemental Rules of Admiralty and Federal Rule of Civil Procedure

12(b) to dismiss Plaintiff Odyssey Marine Exploration, Inc.'s ("Odyssey") Amended Complaint

filed on August 6, 2007 (Dkts. 35, 37), and for other relief as set forth below.

**Memorandum of Law**

    Odyssey's Amended Complaint is subject to dismissal because (1) it once again

fails to describe the Defendant <u>res</u> with reasonable particularity as required by Supplemental

Rules C(2)(b) and E(2)(a), and (2) its new in personam claims, as applied to Spain, were not properly served, are outside this court's jurisdiction, and impermissibly require adjudication of sovereign acts of state.

First, Odyssey's Amended Complaint conspicuously fails to remedy Odyssey's non-compliance with what the Supplemental Rules say that "the complaint must contain," even though Odyssey has specific information about the property and Spain formally requested this information in a Motion for More Definite Statement filed June 15, 2007 (Dkt. 28). Because of Odyssey's persistent and willful disregard for the Supplemental Rules, Spain respectfully moves to dismiss Counts I and II of Odyssey's Amended Complaint (i.e., those directed against the Defendant res), to vacate the arrest of the Defendant res, and to terminate Odyssey's appointment as the res' substitute custodian. As a necessary corollary of dismissal, Spain requests that all artifacts taken from the shipwreck and in Odyssey's custody be returned to the custody of the U.S. Marshal, pending return to their rightful owner.[1]

Second, Spain also moves to dismiss the Amended Complaint's two new counts (Counts IV and V), as well as Count III.[2] These counts seek to bring in personam claims against

---

[1] Spain also requests that Odyssey be ordered to comply with that portion of Spain's June 15, 2007 Motion for More Definite Statement and Other Disclosure which sought inspection of the artifacts by Spain. Spain's Motion to Vacate Default Judgment, to Deem the Kingdom of Spain's Verified Claim as Timely Submitted, and for More Definite Statement and Other Relief, at 15-16 (Dkt. 28). Odyssey did not oppose this relief in any filing made in response to Spain's motion. See Amended Complaint at 1 (Dkts. 35, 37) ("[Odyssey] . . . hereby states that it does not object to Claimant's Motion . . . ."). Accordingly, Spain hereby renews its request as part of the relief sought by this motion.

[2] Count III seeks a declaratory judgment that, inter alia, "[n]o government [i.e., Spain] . . . has the authority to interfere with Odyssey's exploration of the Unidentified Shipwrecked Vessel, or to grant, condition or deny the right of Odyssey to do so within the waters of the Atlantic Ocean . . . ." Amended Complaint ¶ 38 (Dkts. 35, 37). Insofar as this Count may be construed as a claim directed against Spain, it is equally barred as other in personam claims against Spain, as discussed herein.

Spain, and are subject to dismissal for, inter alia, non-compliance with summons and service requirements, sovereign immunity, and the Act of State doctrine.

I.     Odyssey's *In Rem* Claims Are Subject to Dismissal Because They Once Again Fail to Comply with Supplemental Rules C and E.

The requirements of the Supplemental Rules are explicit: in order for a plaintiff to bring a valid in rem claim in admiralty against a defendant property, "the complaint must. . . describe with reasonable particularity the property that is the subject of the action." Supplemental Rule C(2)(b) (emphasis added). More specifically, the complaint must "state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation and to frame a responsive pleading." Supplemental Rule E(2)(a). This heightened pleading requirement is "more stringent than [] that of the Federal Rules." United States v. $38,000.00 in United States Currency, 816 F.2d 1538, 1547 fn.20 (11th Cir. 1987). The purpose of this heightened pleading standard is to "guard against the improper use of the admiralty arrest and seizure powers," United States v. Mondragon, 313 F.2d 862, 864-65 (4th Cir. 2002), by, for example, keeping the owner or others with potential interests in the property in the dark about the property subject to the claim.

When the property claimed is a shipwreck, the plaintiff must disclose information in its possession which would assist in identifying the property at issue because this information is critical for others to evaluate their interests in the property. For example, a description of the artifacts that have been recovered or observed and of the characteristics of the vessel is basic information needed to assess the property's origin and potential ownership. If the plaintiff knows or has reason to know the identity of the vessel, that information must be included above all in the complaint. See Great Lakes Exploration Group LLC v. Unidentified, Wrecked and (for Salvage-Right Purposes), Abandoned Sailing Vessel, No. 04-375, 2006 WL 3370878, at *4

- 3 -

(W.D. Mich. Nov. 20, 2006); <u>Fathom Exploration, LLC v. Unidentified Shipwrecked Vessel or</u>

<u>Vessels</u>, 352 F. Supp. 2d 1218, 1231 (S.D. Ala. 2005).  When a plaintiff is given a second chance

to provide this information in an amended complaint, but fails to provide it, dismissal is

appropriate.  <u>See</u> Fed. R. Civ. P. 41(b) ("For failure of the plaintiff . . . to comply with these rules

. . . , a defendant may move for dismissal of an action . . . .); <u>Great Lakes</u>, 2006 WL 3370878, at

*4.

      The need for strict compliance with the Supplemental Rules' pleading requirements is

obvious and compelling as a matter of fundamental fairness and due process.  The plaintiff in an

<u>in rem</u> case seeks to use the judicial process to obtain rights to the property of another.  Every

step required by the rules must be scrupulously followed to make sure that potential claimants to

rights in that property may determine whether it is theirs and to protect their interests.  Failure to

comply with the disclosure requirements of Supplemental Rules C and E warrants dismissal not

only for failure to state a valid claim, but also as a matter of constitutional due process.  <u>See</u>

<u>Great Lakes</u>, 2006 WL 3370878, at *5.  Moreover, full compliance with Rules C and E is

especially important in a "treasure salvage case" because allowing the plaintiff to proceed while

the property has not been identified "could encourage potential salvors to intentionally remain

ignorant of the ownership of a wrecked vessel in order to maintain salvage rights.  That is

certainly not in harmony with the purposes of salvage law." <u>Sea Hunt, Inc. v. Unidentified</u>

<u>Shipwrecked Vessel or Vessels</u>, No. 98-281, 1999 U.S. Dist Lexis 21752, at *12 (E.D. Va. June

25, 1999), <u>aff'd</u>, <u>Sea Hunt, Inc. v. Unidentified Shipwrecked Vessel or Vessels</u>, 221 F.3d 634,

638 (4th Cir. 2000).  This is precisely what Odyssey has done here.

      In its initial September 13, 2006 Complaint, Odyssey failed to disclose the identity of the

shipwreck it claims in this case and of the artifacts it has taken from the site.  The Complaint

states that the Defendant <u>res</u> is "believed to be a merchant vessel from the 17th Century" which is located "approximately 40 miles from Lands End near the English Channel." <u>See</u> <u>Verified Complaint in Admiralty in Rem</u> ¶¶ 2, 8 (Sept. 13, 2006) (Dkt. 1) [hereinafter "<u>Complaint</u>"].  The wreck site, which was videotaped and photographed by Odyssey, is described as consisting of "vessel remains, metal objects, and cannons." <u>Id.</u> ¶¶ 7, 9.  The Complaint also states that Odyssey "has documented several objects it has found" on the site and that its research "has led it to believe that more valuable cargo may be located aboard the ship." <u>Id.</u> ¶¶ 7, 11.  Yet, the only artifact of those Odyssey took from the site which Odyssey identifies is the "glass bottle" submitted to attain a symbolic arrest of the <u>res</u>. <u>See id.</u> ¶ 10.  These averments strongly suggest that Odyssey knew or had reason to know the identity of the vessel at the time it commenced this action, but deliberately omitted that information from the Complaint.

The Amended Complaint filed on August 6, 2007 again fails to provide identifying information in Odyssey's possession about the property it claims in this case.  Indeed, Odyssey's Amended Complaint contains less information about the property than its original Complaint.[3] Following the filing of Spain's June 15, 2007 Motion for More Definite Statement (Dkt. 28), Odyssey sought an extension of time to respond, with the representation to the court that the amended complaint "may render moot" any need for a more definite statement. <u>Motion for Extension of Time to File Response/Reply</u> at 2 (July 23, 2007) (Dkt. 31).  Odyssey's Amended Complaint does anything but "moot" compliance with the requirements of Supplemental Rules C and E.  The Amended Complaint contains no disclosure of the identity of the ship that Odyssey

---

[3] Specifically, Odyssey omitted averments about the items observed at the wreck site. <u>Compare</u> <u>Complaint</u> ¶ 7, <u>with</u> <u>Amended Complaint</u> ¶ 2, 8, 16, 18.

researched and located, no information about what Odyssey has seen and photographed at the site, and no information about the artifacts that Odyssey has retrieved from the site.

Far from complying with Supplemental Rules C and E, Odyssey's Amended Complaint states that "there is nothing which would require that the Kingdom of Spain or any other third party be given any more specific information other than what is contained in this Amended Complaint and the Exhibits which are part of the public record." Amended Complaint ¶ 19. Odyssey has staked out a position that it simply is not willing to do what the rules require. Accordingly, the admiralty claims in its Amended Complaint should be dismissed. Odyssey ought not be allowed to play "hide and seek" any further.[4]

Relevant case law construing Supplemental Rules C and E in shipwreck cases makes clear that Odyssey has twice failed to meet its pleading requirements. Specifically, courts have held that the Supplemental Rules require full disclosure of the information a plaintiff has about the res in the complaint. In Fathom Exploration v. Unidentified Shipwrecked Vessel or Vessels, 352 F. Supp. 2d 1218 (S.D. Ala. 2005), a plaintiff claimed rights to a shipwreck under the law of finds and salvage, but did not identify the res in its complaint. The United States and the State of Alabama intervened as claimants and moved under Supplemental Rules C and E for a more definite statement identifying the shipwreck and its location. Id. at 1219, 1221. As a threshold matter, the court questioned "the propriety of bringing in rem actions against unidentified vessels in light of the stringent particularity requirements of the Supplemental Rules." Id. at 1224 fn.7.

---

[4] In its Amended Complaint, Odyssey also refers to a "Preliminary Site Assessment Report" and says "it will present that to the Court under seal." Amended Complaint ¶ 19. Spain files herewith its opposition to Odyssey's Motion for a Protective Order Regarding Preliminary Site Assessment and incorporates it by reference. Odyssey's suggestion that it may provide "selected information" from the "Preliminary Site Assessment" to Spain only in a sealed document subject to unworkable and inappropriate restrictions, as discussed in Spain's opposition to that motion, does not bring it into compliance with the Supplemental Rules' specific requirements concerning what "must" be in the Complaint.

The plaintiff was therefore required to file an amended complaint "to bring it into compliance with the Supplemental Rules." Id. at 1225. The court found that the claimant's "preoccupation with seeking further details of the shipwreck is entirely appropriate." Id. at 1226. The court concluded that the plaintiff could not withhold information from its "now months-old research and salvage efforts" which was "likely available to [the plaintiff] at th[at] time and would be of profound assistance to the state in shaping its initial investigation and framing an Answer." Fathom, 352 F. Supp. 2d at 1226. The plaintiff was accordingly ordered "to relate in its complaint reasonably available information concerning the location, nature, and embedded status of the wreck on which salvage operations are being conducted." Id. at 1227 (emphasis added).

Great Lakes Exploration Group LLC v. Unidentified, Wrecked and (for Salvage-Right Purposes), Abandoned Sailing Vessel, No. 04-375, 2006 WL 3370878 (W.D. Mich. Nov. 20, 2006) shows the consequences of a plaintiff's failure to remedy a deficient description of a shipwreck in an amended complaint. In that case, the plaintiff's initial complaint provided far more information than Odyssey has in this case, including the location of the shipwreck within a 3.5 mile area. Great Lakes, 2006 WL 3370878, at *1. The plaintiff also identified the shipwreck as a "vessel [that] was owned by a foreign research expedition operating with the authority of, and possibly under the auspices and/or control of, a foreign sovereign until it became wrecked, lost and abandoned." Id. Nevertheless, the court refused to issue an arrest "because the complaint did not comply with the requirement that the property be described with reasonable particularity." Id. An amended complaint was then filed which included further information on the characteristics of the vessel. Id. State of Michigan agencies then intervened and moved to dismiss for failure to provide the precise location of the vessel, information that was necessary to determine potential ownership rights in the vessel and for a claimant to frame a responsive

pleading. Because plaintiff's amended complaint failed to disclose information known to

plaintiff which was "important to defining Defendant," the court dismissed the case. See Great

Lakes, 2006 WL 3370878, at **4-5. The court reasoned that:

> The second amended complaint does not meet the 'reasonable
> particularity' requirement because it [does] not disclose a part of
> Defendant's description that is known to Plaintiff and which is
> important to defining Defendant.

Id. at 4.

Here, Odyssey has had the opportunity and the ability to bring itself into compliance with

the rules. Odyssey has failed to do so. Consequently, dismissal is appropriate. As a necessary

corollary of its motion to dismiss, Spain also moves for vacation of the arrest issued on April 12,

2007. Vacation of the arrest must follow from failure to comply with the Supplemental Rules.

Supplemental Rule C provides that an arrest may be issued "[i]f the conditions for an in rem

action appear to exist." Supplemental Rule C(a)(i). These conditions exist only when the

plaintiff complies with, inter alia, the pleading requirements for admiralty suits in rem and quasi

in rem. As the court explained in Great Lakes:

> To establish that the conditions for an in rem action have been met,
> Plaintiff must meet the requirements of Supplemental Rules C(2)
> and E(2)(a). The requirements for the issuance of an arrest warrant
> are required by due process. . . . Plaintiff has not complied with
> the requirements of Supplemental Rules C(2) and E(2)(a). . . .
> Until Plaintiff complies with the requirements of Supplemental
> Rules C(2) and E(2)(a), the issuance of an arrest warrant would be
> improper.

Great Lakes, 2006 WL 3370878, at *5 (emphasis added and internal citations omitted).

Accordingly, Claimant Spain respectfully requests dismissal of Odyssey's claims against the res

in this case, vacation of the arrest, and termination of appointment of Odyssey as substitute

custodian.

II.    Plaintiff's *In Personam* Claims Against Spain Are Subject to Dismissal for Improper Service, Lack of Personal Jurisdiction, and Lack of Subject Matter Jurisdiction.

In its Amended Complaint, Odyssey added several <u>in personam</u> claims against Spain which are subject to dismissal under Federal Rule of Civil Procedure 12(b). Specifically, Odyssey's Amended Complaint seeks to bring new claims for quasi-contractual relief aimed at Spain (Count IV) and of damages against Spain (Count V). Additionally, Count III operates <u>in personam</u> as to Spain since it requests this court to declare that "[n]o government [(<u>i.e.</u>, Spain)] . . . has the authority to interfere with Odyssey's exploration and/or recovery of the Unidentified Shipwrecked Vessel, or to grant, condition or deny the right of Odyssey to do so within the waters of the Mediterranean Ocean . . . ." <u>See</u> <u>Amended Complaint</u> ¶ 38; <u>id.</u> at 15. As <u>in personam</u> claims against Spain, these counts are subject to dismissal for lack of service, personal jurisdiction, and subject-matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA").

A. *Odyssey's* In Personam *Claims Against Spain Were Not Properly Served.*

Odyssey's new <u>in personam</u> claims against Spain must comply with special statutory service-of-process requirements applicable to claims against foreign sovereigns. The FSIA requires that service in U.S. courts "shall be made upon a foreign state" in accordance with specific procedures. 28 U.S.C. § 1608(a) (Supp. IV 2005).[5] Those seeking jurisdiction over a foreign state in U.S. court must follow this procedure, as "there is no excuse for departure from

---

[5] Specifically, the FSIA requires that service be made (1) in accordance with special arrangements for service between the plaintiff and the foreign state; (2) by delivery of the summons and complaint in accordance with an applicable international convention on service of judicial documents; or (3) by sending copy of the summons and complaint, and notice of suit, as well as translations of each, by mail requiring a signed receipt sent by the clerk of the court to the head of the ministry of foreign affairs of defendant or to the U.S. Department of State. 28 U.S.C. § 1608.

the dictates of the statute." <u>Harris Corp. v. Nat'l Iranian Radio & Television</u>, 691 F.2d 1344,

1352 (11th Cir. 1982); <u>see</u> <u>Shell Oil Co. v. M/V Itanage</u>, 830 F. Supp. 1423, 1425 (M.D. Fla.

1993) (concluding that the fact that a defendant has notice of the claims against it does not alone

excuse failure to meet FSIA's service-of-process requirements).

Here, even though Odyssey lodges claims against Spain (which, of course, is a sovereign

country), there is no indication that Odyssey has attempted to serve Spain in accordance with the

FSIA.[6]  Consequently, Odyssey's new <u>in personam</u> claims against Spain should be dismissed for

failure to provide service of process. <u>See</u> Fed. R. Civ. P. 12(b)(5).

B. *This Court Lacks Personal Jurisdiction to Hear Odyssey's* In Personam *Claims Against Spain.*

There is no personal jurisdiction over Spain as an <u>in personam</u> defendant in this case

because Spain has not been properly served and because no exception to Spain's sovereign

immunity applies.  The FSIA states that "[p]ersonal jurisdiction over a foreign state shall exist as

to every claim for relief over which the district courts have [subject matter] jurisdiction . . .

where service has been made under section 1608 of this title." 28 U.S.C. § 1330(b).  As

discussed immediately below, Spain is immune from subject matter jurisdiction in this case.  As

discussed immediately above, Odyssey ignored the FSIA's service-of-process requirements

when it decided to file <u>in personam</u> claims against Spain.  Consequently, these claims should be

dismissed for lack of personal jurisdiction over purported defendant Spain.  See Fed. R. Civ. P.

12(b)(2).

---

[6] In addition to the FSIA's statutory mandate, Odyssey also ignores the requirements of the Local Rules of this court. <u>See</u> Local Rule 7.01(h) (requiring issuance of summons and service of process for all <u>in personam</u> claims brought in admiralty cases, unless otherwise ordered by the court).

C. *The Court Lacks Subject Matter Jurisdiction to Hear Odyssey's* In Personam *Claims Against Spain.*

Under the FSIA, a foreign state is immune from the jurisdiction of U.S. courts except as a defendant in a cause of action covered by at least one of the statutory exceptions. 28 U.S.C. §§ 1330(a), 1604. Section 1604 of the Act provides as follows:

> Subject to existing international agreements to which the United States is a party at the time of enactment of this Act a foreign state shall be immune from the jurisdiction of the courts of the United States and the States except as provided in sections 1605 to 1607 of this chapter.

28 U.S.C. § 1604. As the Supreme Court, the Eleventh Circuit, and this court have made clear, the FSIA provides "the sole basis for obtaining jurisdiction over a foreign state in [U.S.] courts." Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 434 (1989); Samco Global Arms, Inc. v. Arita, 395 F.3d 1212, 1214 (11th Cir. 2005); Dominican Energy Ltd. v. Dominican Republic, 903 F. Supp. 1507, 1512 (M.D. Fla. 1995). The Supreme Court has said that:

> Under the Act, a foreign state is presumptively immune from the jurisdiction of United States courts; unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state.

Saudi Arabia v. Nelson, 507 U.S. 349, 355 (1993) (internal citations omitted).

Hence, to establish subject matter jurisdiction to claims against a foreign state, a would-be plaintiff must identify a viable exception to immunity within the four corners of the FSIA and show that the exception covers the sovereign conduct forming the basis for the claims. Dominican Energy, 903 F. Supp. at 1512; see, e.g., Gerding v. Republic of France, 943 F.2d 521, 526 (4th Cir. 1991) (when a claim is filed against a foreign state, "the burden shifts to the opposing party to raise the exceptions to sovereign immunity and assert at least some facts that would establish the exceptions") (emphasis added); Stena Rederi AB v. Comision de Contratos del Comite, 923 F.2d 380, 390 fn.14 (5th Cir. 1991). If no exception applies, the claims against

the sovereign must be dismissed. See Samco Global Arms, 395 F.3d at 1218 (affirming dismissal of claims against Honduras because they were not covered by a FSIA exception).

Here, the FSIA presumptively bars in personam claims against Spain because it is undisputed that Spain is a sovereign state. Accordingly, Odyssey must show that Spain's alleged conduct, which forms a basis for the relief sought, is covered by an exception to sovereign immunity. Odyssey fails to do so. Accordingly, Odyssey's claims against Spain must be dismissed.

First, the Amended Complaint's jurisdictional section fails even to mention the FSIA. See Amended Complaint ¶¶ 4-7. Instead, without citing any authority, Odyssey declares that this court may "exercise [] jurisdiction over Spain" to, among other things, "prevent the destruction of this Court's actual and potential jurisdiction." Id. ¶ 6. Odyssey ignores, however, that the FSIA provides the sole basis for the exercise of jurisdiction over Spain, a foreign sovereign.[7] Amerada Hess., 488 U.S. at 434; Samco Global Arms, 395 F.3d at 1214. Accordingly, all of the claims that operate in personam against Spain must be dismissed for lack of subject matter jurisdiction. See Fed. R. Civ. P. 12(b)(1).

Second, where the Amended Complaint refers to the FSIA, it does so only in passing and perfunctorily. In Count IV (also incorporated in Count V), Odyssey alleges that "insofar as a foreign sovereign may properly appear in this admiralty action as a claimant, as per 28 U.S.C. §§ 1605, 1607, this Court would have jurisdiction to adjudicate this count." Amended Complaint ¶ 40. This oblique reference falls far short of identifying the specific exception Odyssey relies

---

[7] Like the Amended Complaint's jurisdictional section, Count IV fails to refer to the FSIA, even though the broad declaratory judgment sought therein would purportedly restrict any "authority" Spain may have to "interfere" with Odyssey's activities. See Amended Complaint ¶ 38. Accordingly, these Counts, as applied to Spain, operate in personam and should be dismissed for lack of subject matter jurisdiction under the FSIA.

on here, much less showing that an exception actually applies to its claims against Spain. Thus, Counts IV and V should be dismissed for lack of subject matter jurisdiction. See Fed. R. Civ. P. 12(b)(1); Dominican Energy, 903 F. Supp. at 1512.

Third, Odyssey does not identify any exception to Spain's sovereign immunity because it cannot do so with a straight face. The principal exceptions to sovereign immunity under the FSIA consist of: (1) waiver; (2) commercial activity; (3) torts occurring in the United States; and (4) admiralty actions to enforce a maritime lien "based upon a commercial activity of the foreign state." 28 U.S.C. §§ 1605(a)-(b). Nothing in Odyssey's Amended Complaint even hints at the application of any of these exceptions. In addition, Section 1607 provides an exception for counterclaims in certain circumstances when a foreign state sues or makes a claim against a private person in U.S. court. See 28 U.S.C. § 1607. Odyssey has filed no counterclaim in this case since Spain has filed no claim against Odyssey. In short, no exception to FSIA covers Odyssey's claims against Spain.

For example, the "waiver" exception does not apply because Spain has fully reserved its sovereign immunities in this case. Verified Claim of the Kingdom of Spain at 2 (Dkt. 24); see, e.g., Rodriguez v. Transnave Inc., 8 F. 3d 284, 287 (5th Cir. 1993) ("[C]ourts rarely find that a nation has waived its sovereign immunity without strong evidence that this is what the foreign state intended"); Coastal Cargo Co. v. M/V Gustav Sule, 942 F. Supp. 1082, 1087 (E.D. La. 1996). Moreover, Spain has reserved "any other potential jurisdictional issue" in this case. Motion to Vacate Default Judgment, to Deem the Kingdom of Spain's Verified Claim as Timely Submitted, and for More Definite Statement and Other Relief at 2 fn.* (June 15, 2007) (Dkt. 28). Indeed, Spain is solely an in rem Claimant to the Defendant res, appearing specially to protect its sovereign interests in any property of Spain which may be subject to adjudication in this

- 13 -

proceeding. <u>See</u> <u>Verified Claim of the Kingdom of Spain</u>. Nothing in Spain's filing of a claim

in this case removes or limits in any way Spain's immunity from jurisdiction for <u>in personam</u>

claims. <u>Cf.</u> <u>The Sindia Expedition, Inc. v. Wrecked & Abandoned Vessel, Known as "The</u>

<u>Sindia"</u>, 895 F.2d 116, 119 (3d Cir. 1990) ("[A] private party may not bring an <u>in personam</u>

action, even in admiralty, against an unconsenting state.").

     The fact that this <u>in rem</u> case concerns property in which Spain seeks to protect its

interest does not detract in any way from Spain's immunity. If anything, it highlights Spain's

immunity. Indeed, under the FSIA, the property of a foreign state is expressly immune from

"attachment arrest and execution":

> Subject to existing international agreements to which the United States is a party
> at the time of enactment of this Act the property in the United States of a foreign
> state shall be immune from attachment arrest and execution except as provided in
> sections 1610 and 1611 of this chapter.

28 U.S.C. § 1604. Vessels (or other property) of sovereign nations are thus immune from arrest

by or other claims in U.S. courts like sovereigns are immune from <u>in personam</u> claims. <u>See, e.g.,</u>

<u>Mangatto v. M/V Ibn Hayyan</u>, 35 F.3d 205 (5th Cir. 1994); <u>O'Connell Machinery Company v.</u>

<u>M.V. Americana</u>, 734 F.2d 115 (2d Cir. 1984).

     Finally, the Supreme Court has left no doubt that the exercise of police powers by a

foreign sovereign is the classic example of a sovereign act subject to FSIA immunity. In <u>Saudi</u>

<u>Arabia v. Nelson</u>, 507 U.S. 349 (1993), the Supreme Court affirmed the dismissal of tort claims

of wrongful arrest and detention by a U.S. citizen against Saudi Arabia. The claims were based

on the allegations that Saudi security agents mistreated plaintiff. <u>Nelson</u>, 507 U.S. at 352-53.

The Court held that the claims were not excepted from FSIA immunity, explaining that the

claims against Saudi Arabia were "based upon a sovereign activity immune from the subject-

matter jurisdiction of United States courts under the [FSIA]." <u>Id.</u> at 363. The Court explained

- 14 -

that "a foreign state's exercise of the power of its police has long been understood for purposes of the restrictive theory [codified in the FSIA] as peculiarly sovereign in nature." Id. at 361; First Merchants Collection Corp. v. Republic of Argentina, 190 F. Supp. 2d 1336, 1339 (S.D. Fla. 2002 ("[E]ven assuming . . . that Plaintiff's merchandise was unfairly, or even unlawfully, confiscated by Argentine officials, such does not transform a clear exercise of sovereign police power into a commercial activity.").

Similarly, Odyssey's new claims against Spain are premised on unsupported allegations of "illegal," "tortious," or otherwise wrongful conduct by a Spanish court and related authorities engaged in an investigation of Odyssey for possible violations of Spanish criminal laws. See Amended Complaint ¶¶ 23-24, 46. As such, Odyssey's claims against Spain, which are premised on far less serious allegations than those lodged against Saudi Arabia in Nelson, are devoid of a jurisdictional basis and must be dismissed. In short, Spain has sovereign immunity against in personam claims in this case. Accordingly, Counts III, IV, and V must be dismissed in their entirety or as they apply to Spain.

III.    Count IV's "Quantum Meruit" and "Unjust Enrichment" Claims Are
        In Personam and Are thus Barred as to Spain by Sovereign Immunity.

Count IV in Odyssey's Amended Complaint is the kind of in personam claim that is barred by Spain's sovereign immunity. As articulated by Odyssey, Count V is a claim for "unjust enrichment," "quantum meruit," and unidentified "other equitable theories." Amended Complaint ¶ 43. Claims of "unjust enrichment" and "quantum meruit" are inherently in personam in nature because they target persons, not property. As delineated within the Eleventh Circuit, in Florida, a plaintiff presenting unjust enrichment and quantum meruit claims must establish the following elements:

> (1) the plaintiff has conferred a benefit on the Defendant;
> (2) the Defendant has knowledge of the benefit; (3) the
> Defendant has accepted or retained the benefit conferred;
> and (4) the circumstances are such that it would be
> inequitable for the Defendant to retain the benefit without
> paying fair value.

Media Services Group, Inc. v. Bay Cities Communications, Inc., 237 F.3d 1326,

1330 (11th Cir. 2001); Posely v. Eckerd Corp., 433 F. Supp. 2d 1287, 1313-14

(S.D. Fla. 2006).

An inanimate Defendant res such as a shipwreck does not have the

capacity to unjustly enrich itself or to incur quasi-contractual obligations.[8] Thus,

quantum meruit and unjust enrichment are obviously in personam claims.

Consequently, Count V should be dismissed for lack of subject matter jurisdiction

as to Spain pursuant to the FSIA, as discussed in Section II.C above.

IV.    Odyssey's Count V Is a Classic Example of an *In Personam* Claim Against a Foreign
       State Which Is Subject to Dismissal.

Odyssey's new Count V claiming damages against Spain falls squarely within the

restrictions to judicial review set forth by the FSIA and the Act of State doctrine.  In Count V,

Odyssey claims monetary damages against Spain for the existence and conduct of an

investigation of Odyssey by a Spanish court.  Odyssey conclusorily calls the conduct of the

investigation, as Odyssey alleges it, "illegal," "unlawful," and "tortious."[9]  Amended Complaint

---

[8]  Plaintiff's quantum meruit and unjust enrichment claims have apparently been added as Florida-law fallbacks to
its Count II law of salvage claim in admiralty.  However, the Eleventh Circuit has made clear that "[t]he law of
salvage generally governs efforts to save vessels in distress."  Int'l Aircraft Recovery, Inc. v. Unidentified, Wrecked
& Abandoned Aircraft, 218 F.3d 1255, 1258 (11th Cir. 2000).

[9]  Odyssey also implausibly alleges violation by Spain of a "duty" under the ex parte arrest and appointment of
Odyssey as substitute custodian.  Amended Complaint ¶ 47.  Nothing in the symbolic arrest of the res or in the
(continued...)

¶¶ 24, 46, 48. According to Odyssey, Spain may be held liable in a U.S. court for damages arising from the "detention and blockage" of Odyssey's vessels; Odyssey's costs of defense against an order of a Spanish court; the "boarding and seizure" of Odyssey's vessels and items in those vessels; the treatment of "crew and attorneys" during the execution of a court-ordered search; and "loss of reputation" caused by Spanish government authorities.[10] Id. ¶ 48. Odyssey's Count V is thus the classic example of a claim that seeks to have a U.S. court review and second-guess the exercise and discharge by a foreign state of its law-enforcement and public functions.

Taking Odyssey's factual pleadings as true for purposes of a motion to dismiss, Odyssey's Count V flies in the face of the FSIA and the Act of State doctrine. First, as discussed more fully in Section II.C above, Odyssey has not and cannot identify an applicable exception to the FSIA which would support jurisdiction over Count V and other in personam claims against Spain. Second, the Act of State doctrine recognizes that the sovereign acts of foreign nations should not be second-guessed or reviewed by U.S. courts. To "permit the validity of the acts of one sovereign state to be reexamined and perhaps condemned by the courts of another would very certainly imperil the amicable relations between governments and vex the peace of nations."

---

appointment of Odyssey as substitute custodian in this case purports to immunize Odyssey from the criminal laws of other nations or to confer in personam jurisdiction over Spain. Cf. The Sindia Expedition, Inc. v. Wrecked & Abandoned Vessel, Known as "The Sindia", 895 F.2d 116, 120 (3d Cir. 1990) (concluding that state sovereign immunity in the Eleventh-Amendment context bars jurisdiction over "circuitous in personam action[s] to obtain jurisdiction over a State for purposes of money damages").

[10] Odyssey fails to identify with any specificity how damage to its reputation was "caused by Spain's activities and statements made in public by Spanish authorities . . . ." Amended Complaint ¶ 48(f). Nor does it set forth any recognizable legal theory for such a claim. This claim is accordingly subject to dismissal for failure to state a cause of action. See Fed. R. Civ. P. 12(b)(6). But in any event, Count V makes clear that Odyssey seeks to have this court review the public acts of "Spanish authorities," for which there is no jurisdiction even if Odyssey had properly set forth an otherwise viable cause of action for damage to its reputation.

Oetjen v. Cent. Leather Co., 246 U.S. 297, 304 (1918). Yet, Odyssey asks this court to examine the law-enforcement acts of a Spanish tribunal and its officers, and to grant relief for these allegedly "illegal" and "tortious" acts.

The Act of State doctrine requires U.S. courts to accept the sovereign acts of a foreign government, carried out under its laws and procedures, as lawful:

> [The act of state doctrine] requires only that, when it is made to appear that the foreign government has acted in a given way on the subject-matter of the litigation, the details of such action or the merit of the result . . . <u>must be accepted by our courts</u> as a rule for their decision.

Ricaud v. American Metal Co., 246 U.S. 304, 309 (1918) (emphasis added); <u>see also</u> <u>W.S. Kirkpatrick & Co. v. Env'l Tectonics Corp.</u>, 493 U.S. 400 (1990). When allegations made in a case seek to have the court review or adjudicate the acts of a foreign sovereign outside the United States, even if only indirectly, those allegations should be dismissed. <u>See</u> <u>Glen v. Club Mediterranee, S.A.</u>, 450 F.3d 1251, 1253 (11th Cir. 2006); <u>World Wide Minerals, Ltd. v. Republic of Kazakhstan</u>, 296 F.3d 1154, 1165-66 (D.C. Cir. 2002). As the Supreme Court has explained, the Act of State doctrine bars review of public acts of other sovereigns even where a U.S. court may have jurisdiction over some aspect of the matter in controversy:

> Unlike a claim of sovereign immunity, which merely raises a jurisdictional defense, the act-of-state doctrine provides foreign states with a substantive defense on the merits. Under that doctrine, the courts of one state will not question the validity of public acts (acts jure imperii) performed by other sovereigns within their own borders, even when such courts have jurisdiction over a controversy in which one of the litigants has standing to challenge those acts.

Republic of Austria v. Altmann, 541 U.S. 677, 700 (2004).

As noted earlier, the Supreme Court has applied the FSIA to bar claims allegedly arising from the exercise of police power in another nation. <u>See</u> <u>Saudi Arabia v. Nelson</u>, 507 U.S. 349

(1993). Cases dealing with similar claims reach the same result under the Act of the State

doctrine as an alternative and equally settled bar to U.S. review. For example, tort claims against

Argentina for the law-enforcement acts of Argentinean officials have been dismissed under the

Act of State doctrine. First Merchants Collection Corp. v. Republic of Argentina, 190 F. Supp.

2d 1336 (S.D. Fla. 1995). Similarly, claims premised on alleged wrongful detention by Bolivian

authorities have been dismissed under the doctrine. Duchow v. United States, No. 95-2121,

1995 WL 425037, at **3-4 (E.D. La. July 19, 1995). See also Fogade v. ENB Revocable Trust,

263 F.3d 1274, 1293-94 (11th Cir. 2001) (affirming dismissal of counterclaims premised on

Venezuela's alleged intervention in corporate activity and confiscation of corporate property).

Odyssey's Amended Complaint seeks to have this court sit in judgment on the order of a Spanish

court and on how this order was carried out.[11] The Act of State doctrine precludes such

consideration.

      Additionally, even if Spain were not a foreign state and this case concerned activity in the

United States, an admiralty claim by a would-be salvor must yield to the exercise by

governmental authorities of their police, regulatory, and other sovereign powers. This court has

refused to restrict state police powers in admiralty cases in rem, even if the exercise of these

powers may interfere with a private person's salvage operations. See Lathrop v. Unidentified,

---

[11]  Spain does not accept Odyssey's self-serving version of events concerning the criminal investigation. Odyssey's
allegations of wrongdoing by Spanish authorities appear to be principally intended to distract from the original
admiralty issues before this court. Odyssey submits only hearsay, at best, by Mr. Stemm, whose declaration makes
no claim that he was even present when the search of an Odyssey vessel was conducted by Spanish enforcement
officials. See Sworn Statement of Gregory Stemm (July 5, 2007) (Dkt. 37-2). Nor does Odyssey identify the
Spanish or other law that it claims was violated. If Odyssey has any real grounds to challenge the orders of a court
in Spain, or how that order was carried out, Odyssey's filings show that it has engaged counsel in Spain to raise any
such claim with the proper authorities there. See, e.g., Amended Complaint ¶ 24. If there is anything that
Odyssey's motion does show, it is the soundness of the FSIA and Act of State doctrine in prohibiting a U.S. court
from reviewing the legal status or validity of an order issued by a court in Spain, whether that order conformed to
Spanish law, or whether Spanish law-enforcement officials properly carried out that order.

Wrecked and Abandoned Vessel, 817 F. Supp. 953, 964 (M.D. Fla. 1993); see also Great Lakes

Exploration Group LLC v. Unidentified, Wrecked and (for Salvage-Right Purposes), Abandoned

Sailing Vessel, No. 04-375, 2006 WL 3370878 (W.D. Mich. Nov. 20, 2006) (denying claim for

preliminary injunction as to a shipwreck that would, if granted, "limit the ability of" a state to

exercise and enforce its police powers, regulatory responsibilities, and other functions).

　　　　Finally, Odyssey's vague Count V claim that "Spain's activities and statements made in

public by Spanish authorities" caused "loss of reputation" must fare no better.  Amended

Complaint ¶ 48(f).  The FSIA specifically provides that there is no exception to sovereign

immunity for "any claim arising out of . . . libel, slander or interference with contract rights." 28

U.S.C. § 1605(a)(5)(B).  Accordingly, in Leutwyler v. Office of Her Majesty Queen Rania Al

Abdullah, 184 F. Supp. 2d 277, 293-96 (S.D.N.Y. 2001), the court dismissed claims alleging that

Jordanian officials damaged a U.S citizen's reputation and interfered with the plaintiffs

"prospective business advantage."  Likewise, in Bryks v. Canadian Broadcasting Corp., 906 F.

Supp. 204 (S.D.N.Y. 1995), claims of defamation against a Canadian government entity were

dismissed under FSIA because such claims fall within no FSIA exception.  The court held that

the FSIA's "specific exclusion of defamation claims was intended as a general limitation on the

liability of a foreign sovereign under the FSIA."  Odyssey's obscure "loss of reputation" claim

should be similarly dismissed.

　　　　In sum, Odyssey's in personam claims are barred by the FSIA and the Act of State

doctrine because they are based on allegedly wrongful conduct by Spanish judicial and other

authorities engaged in the discharge of sovereign functions and responsibilities.

*　　*　　*

For the reasons stated above Spain respectfully submits that (1) Counts I and II regarding the Defendant <u>res</u> should be dismissed for failure to comply with Supplemental Rules C and E; (2) the arrest of the Defendant Shipwreck should be vacated; (3) the appointment of Odyssey as substitute custodian for the shipwreck and any and all artifacts taken from the shipwreck should be terminated; and (4) the U.S. Marshal should be restored to custodianship of all artifacts taken from the Defendant.[12] Additionally, Counts III, IV, and V against Spain should be dismissed for improper service, lack of personal jurisdiction, and lack of subject matter jurisdiction, and under the Act of State doctrine.

Respectfully submitted,

Dated: <u>September 19, 2007</u>        <u> /s James A. Goold         </u>
James A. Goold
District of Columbia Bar # 430315
Covington & Burling LLP
1201 Pennsylvania Ave., NW
Washington, DC 20004
Telephone: (202) 662-5507
Fax: (202) 662-6291
E-mail: jgoold@cov.com


David C. Banker
Florida Bar # 352977
Bush Ross, PA
220 S. Franklin Street
P.O. Box 3913
Tampa, Florida 33601-3913
Telephone: (813) 224-9255
Fax: (813) 223-9255
E-mail: dbanker@bushross.com

---

[12] If the court were to deny this motion as to Odyssey's claims against the Defendant Shipwreck, Spain respectfully submits that Odyssey should at minimum be ordered to file forthwith a second amended complaint that contains all information in Odyssey's possession relevant to identification of the Defendant Shipwreck, including (i) the vessel identified by Odyssey's research, and (ii) the nature, origin and characteristics (including date(s)) of the artifacts taken from the Defendant Shipwreck.

<u>Certificate of Service</u>

I hereby certify that I caused the attached Motion of the Kingdom of Spain to Dismiss and for Other Relief in Case No. 8:07-cv-01685-SDM to be served via the Court's CM/ECF system this 19th day of September, 2007.

James A. Goold
District of Columbia Bar # 430315
Covington & Burling LLP
1201 Pennsylvania Ave., NW
Washington, DC 20004
Telephone: (202) 662-5507
Fax: (202) 662-6291
E-mail: jgoold@cov.com

DC: 2620994-1