IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
IN ADMIRALTY

ODYSSEY MARINE EXPLORATION, INC.

        Plaintiff,

vs.

THE UNIDENTIFIED, SHIPWRECKED
VESSEL, its apparel, tackle,
appurtenances and cargo located within
center point coordinates: 49° 25' N, 6 ° 00' W;
Radius: 5 nautical miles,

        Defendant;
        in rem

and

The Kingdom of Spain,

        Claimant/Defendant.

CIVIL ACTION

Case No. 8:06-CV-01685-SDM-TBM

_____/

**Opposition by Claimant-Defendant Kingdom of Spain
to Plaintiff's Motion for Protective Order**

Claimant-Defendant Kingdom of Spain ("Spain"), by its undersigned counsel, respectfully submits this opposition to Odyssey Marine Exploration, Inc.'s ("Odyssey") Motion for Protective Order Regarding Preliminary Site Assessment filed on August 6, 2007 (Dkts. 36, 38). Odyssey's motion should be denied for the reasons set forth below.

**Memorandum of Law**

Odyssey's Motion for Protective Order should be dismissed for the following reasons:

1)      Information about the Defendant <u>res</u> in this case which Odyssey seeks to subject to a protective order is information that Odyssey is required by the Supplemental Rules of

Admiralty to disclose in its complaint and may not keep secret. The Supplemental Rules require Odyssey to describe the Defendant res "with reasonable particularity" in its complaint so that claimants, such as Spain, may "commence an investigation of the facts and [] frame a responsive pleading." Supplemental Rules C(2)(b), E(2)(a). Odyssey's motion seeks to prevent claimants from doing what the rules require Odyssey to enable them to do. Information about the res "must" be in Odyssey's complaint, not in a sealed document that potential claimants are not allowed to see, or that Spain can see only on terms that would frustrate its ability to investigate the facts and frame a responsible pleading.

2) Information identifying the shipwreck and its contents which Odyssey seeks to shield is not a trade secret or proprietary information. It consists of observations of a shipwreck on the seabed, examination of artifacts from that shipwreck, and the results of historical research. Neither the shipwreck nor its artifacts is presumptively Odyssey's property. The res in this admiralty suit is the property of others unless and until Odyssey can establish its right to them.[1]

3) The terms of the proposed Protective Order Odyssey seeks are plainly overbroad and unduly restrictive, designed to hamstring investigation of the facts, framing of responsive pleadings, and adjudication of claims to the res. Moreover, the sweeping terms of the proposed order would represent a blatant intrusion on the sovereignty of Spain and on the discharge by Spanish government officials of their duties.

I. The Information Odyssey Seeks to Shelter Must Be Disclosed in Its Complaint.

Odyssey's motion should be denied because it seeks to restrict from disclosure information that would identify the property that is the subject of this in rem case. Rather than

---

[1] Spain has also files herewith and incorporates its Motion to Dismiss and for Other Relief which address in more detail related grounds that also militate against this motion.

being protected under the sweeping order Odyssey seeks, this information must be disclosed in order to allow claimants to investigate the facts and to frame a responsive pleading. See Supplemental Rules C(2)(b), E(2)(a); Great Lakes Exploration Group LLC v. Unidentified, Wrecked and (for Salvage-Right Purposes), Abandoned Sailing Vessel, No. 04-375, 2006 WL 3370878, at *4 (W.D. Mich. Nov. 20, 2006); Fathom Exploration, LLC v. Unidentified Shipwrecked Vessel or Vessels, 352 F. Supp. 2d 1218, 1231 (S.D. Ala. 2005). Yet, from the start of this suit, Odyssey has sought to conceal information about the res. Its Motion for Protective Order is but another step in this pattern.

In its initial September 13, 2006 Complaint, Odyssey failed to disclose the identity of the shipwreck it claims in this case and of the artifacts it has taken from the site. The Complaint states that the Defendant res is "believed to be a merchant vessel from the 17th Century" which is located "approximately 40 miles from Lands End near the English Channel." See Verified Complaint in Admiralty in Rem ¶¶ 2, 8 (Sept. 13, 2006) (Dkt. 1) [hereinafter "Complaint"]. The wreck site, which was videotaped and photographed by Odyssey, is described as consisting of "vessel remains, metal objects, and cannons." Id. ¶¶ 7, 9. The Complaint also states that Odyssey "has documented several objects it has found" on the site and that its research "has led it to believe that more valuable cargo may be located aboard the ship." Id. ¶¶ 7, 11. Yet, the only artifact of those Odyssey took from the site which Odyssey identifies is the "glass bottle" submitted to attain a symbolic arrest of the res. See id. ¶ 10. These averments strongly suggest that Odyssey knew or had reason to know the identity of the vessel at the time it commenced this action, but deliberately omitted that information from the Complaint. Almost a year later, Odyssey's Amended complaint, filed on August 6, 2007, again fails to make more disclosures about the res.

There is nothing proprietary or exempt from disclosure about information such as this, which shows or tends to show the identity of the res. Although the site of the shipwreck may not be in plain view because it lies on the seabed, the information was gathered by examining and photographing the seabed which does not belong to Odyssey. Unless and until Odyssey properly pleads and proves any valid rights to the shipwreck and/or the artifacts, they are presumptively the property of the owner, not of Odyssey. See, e.g., Thomas J. Schoenbaum, Admiralty and Maritime Law 180-81 (4th ed. 2004) (noting that, under the law of salvage, the res subject to the action is "owned by persons other than the salvor" and that, under the law of finds, abandonment of the res by its owner is very difficult to establish).

The information Odyssey possesses is precisely the kind of information the Supplemental Rules say that Odyssey "must" disclose in its Complaint. Odyssey cannot use a protective order to circumvent its pleading obligations, particularly when the effect is to thwart the due-process purpose of these rules. See Great Lakes Exploration Group LLC v. Unidentified, Wrecked and (for Salvage-Right Purposes), Abandoned Sailing Vessel, No. 04-375, 2006 WL 3370878, at *5 (W.D. Mich. Nov. 20, 2006). If Odyssey's concurrent motion to dismiss is denied, any issue about the discoverability of any of Odyssey's reports, including its "Preliminary Site Assessment," should be addressed at a later stage in this proceeding.

Odyssey's memorandum in support of the motion itself undermines the claim that the information about the res should be kept secret. According to Odyssey's motion, "provenance information" identifying a shipwreck and documenting its artifacts is important to "historians, archeologists and anthropologists" (i.e., scholars) and "enhances the resale value" of the artifacts. Plaintiff's Motion for Protective Order Regarding Preliminary Site Assessment at 10 fn.1 (Aug. 6, 2007) (Dkts. 36, 38) [hereinafter Protective Order Motion]. Odyssey thus acknowledges that

the information about the <u>res</u> is of a kind that should be made available to scholars and the public, not kept secret, and that it intends to use the information to market artifacts from the shipwreck; antitheses of reasons meriting a protective order.

The case law Odyssey cites for the proposition that "in salvage cases, especially those involving sunken wrecks, secrecy is often of the utmost importance," <u>Protective Order Motion</u> at 10, provides no support for the proposed protective order. The cases cited show the opposite. Odyssey cites <u>Treasure Salvors, Inc. v. Unidentified, Wrecked and Abandoned Sailing Vessel</u>, 546 F. Supp. 919 (S.D. Fla. 1981). <u>Protective Order Motion</u> at 10. That decision did not consider any question of secrecy or any protective order. The decision makes no mention of any need for secrecy at all. On the contrary, the opinion openly notes the identity and location of the shipwreck, as well as detailed information about the artifacts associated with the wreck. <u>Treasure Salvors</u>, 546 F. Supp. at 919, 923-24. Similarly, <u>Columbus America Discovery Group v. Atlantic Mutual Insurance</u>, 203 F.3d 291 (4th Cir. 2000) concerned the sale of artifacts from a shipwreck that had been divided between insurers and a salvor pursuant a settlement agreement. The Fourth Circuit ruled that the district court had properly ordered <u>unsealing</u> of an inventory of artifacts in the possession of the insurers and that the entire "record of the inventory will have to be made public . . . ." <u>Columbus America</u>, 203 F.3d at 303. The court merely allowed temporary sealing of the salvor's inventory of its share of the artifacts pending finality of the parties' settlement agreement.[2] <u>Id.</u> 303.

---

[2] Spain agrees that the <u>exact</u> location of the shipwreck need not be publicly disclosed, so as to help prevent any potential further disturbance of the site. However, no order is needed to protect the exact location in this case. Spain has a greater interest than Odyssey in protecting the site and would, therefore, agree that the publicly available location may consist of a 5 mile radius of the location, with the exact location filed under seal and provided to Spain on its representation that the exact location will be considered confidential. Notably, in related Case 8:06-cv-01685 Odyssey provided the location within 5 miles of the shipwreck it claims in the caption of that case. Odyssey's (continued...)

II.   The Terms of the Proposed Order Are Unworkable and Overbroad.

Odyssey's proposed order is an unwarranted and improper effort to interfere with the conduct of this case, and the exercise of a foreign nation's governmental functions. Under the protective order envisioned by Odyssey, the Government of Spain would be required to designate some "particular authority" that would be prohibited from sharing the information with (or, apparently, even consulting with) "any other person or authority, even authorities within the Spanish government, without leave of court."[3] Protective Order Motion at 7 (emphasis added).

Odyssey ignores recent and analogous cases establishing that a shipwreck plaintiff's desire for secrecy cannot override or interfere with governmental responsibilities to carry out law enforcement or other functions. In Great Lakes Exploration Group LLC v. Unidentified, Wrecked and (for Salvage-Right Purposes), Abandoned Sailing Vessel, No. 04-375, 2006 WL 3370878 (W.D. Mich. Nov. 20, 2006), the plaintiff sought a preliminary injunction against use of the shipwreck's location information for "any purpose not related to this proceeding" by agencies of the State of Michigan. 2006 WL 3370878, at * 6. The court concluded that this motion was overbroad because it would presumably restrict the use of information by the state even in the exercise of its law-enforcement and other governmental functions. Id. at *7. The proposed overbroad order was therefore denied. Id. at *8; see also Lathrop v. Unidentified,

---

motion for protective order provides no explanation why information filed publicly in the first-filed of its shipwreck cases in this district should be kept secret in this case.

[3] Odyssey's motion also appears to contemplate that even if it were given the order it seeks, it would still withhold information about the res. Odyssey states that "it is willing to provide certain information from the PSA to Spain that is relevant to its claim." Protective Order Motion at 11 (emphasis added). According to Odyssey's Proposed Order, Odyssey would provide only "information within the PSA which is relevant to the claim of Claimant Spain which, if released, will not jeopardize the security of the Unidentified Shipwrecked Vessel . . . ." Proposed Order at 2 (Dkt. 38-2). Odyssey appears to be seeking a judicial imprimatur for continued secrecy, when the Supplemental Rules require the opposite. See Supplemental Rules C(2)(b), E(2)(a).

<u>Wrecked & Abandoned Vessel</u>, 817 F. Supp. 954 (M.D. Fla. 1993) (denying a preliminary injunction that would intrude on the exercise by the State of Florida of its police powers).

Odyssey's proposed order is especially inappropriate here. This case concerns activities by Odyssey near the English channel, far outside U.S. sovereignty. Yet, the protective order Odyssey seeks would subject the internal processes of the sovereign Spanish government to intrusive U.S. court supervision. Odyssey advocates a sweeping protective order without adequately demonstrating that the means to address its concerns are narrowly tailored to address a concomitant high likelihood of damaging disclosures. <u>Cf.</u> <u>Brown v. Advantage Eng'g, Inc.</u>, 960 F.2d 1013, 1016 (11th Cir. 1992) (stating, in the context of keeping court records under seal, that "denial [of disclosure] is necessitated by a compelling . . . interest, and is narrowly tailored to [...] that interest").

To support its motion, Odyssey proffers an affidavit by its Co-Founder and Co-Chairman, Gregory P. Stemm, which makes unsubstantiated claims about a "leak" of a communication between the U.S. Department of State and Spain, but contains nothing to show that the information was in fact prohibited from disclosure under any law. <u>Affidavit of Gregory P. Stemm in Relation to Plaintiff's Motion for Entry of a Protective Order Regarding Preliminary Site Assessment</u> ¶ 10 (Dkt. 39). But Mr. Stemm's affidavit acknowledges that the allegedly leaked information was <u>not</u> confidential, saying that Odyssey voluntarily provided the information to the United States to be "totally transparent to both the U.S. and the Spanish governments." <u>Id.</u> Mr. Stemm's statement describes the information as relating to a promotion agreement between Odyssey and Volvo and makes no claim that it involved anything relating to this case. <u>Id.</u>

As set forth in Spain's Motion to Dismiss and for Other Relief (which is incorporated here by reference), judicial restraint is particularly appropriate when a U.S. court is asked to review or sit in judgment on the acts of a foreign sovereign government. It follows that the Court ought not enter a protective order seeking to restrict or regulate Spain's governmental uses of information, especially when Odyssey's motion is premised on an unsubstantiated and irrelevant claim that an unidentified Spanish government employee released information in Spain that Odyssey itself says it voluntarily disclosed to show "transparency."

The need for denial of the order is further demonstrated by Odyssey's acknowledgement that it is under active criminal investigation in Spain. See Protective Order Motion at 7. As discussed further in Spain's Memorandum in Support of Motion to Dismiss and Other Relief, U.S. courts may not consider claims or enter orders which seek to pass judgment upon the exercise of the police powers of other sovereign nations. The same principle applies when a claimant or intervenor in a shipwreck case seeks an order that would interfere with a governmental discharge of police powers or other public responsibilities. See Lathrop v. Unidentified, Wrecked & Abandoned Vessel, supra, 817 F. Supp. at 963.

The proposed order would also frustrate the very purposes for which Odyssey is required by the Supplemental Rules to disclose information about the res in this case, putting the court and counsel in an inappropriate and unworkable position. The proposed order seeks to prohibit Spanish government interagency consultations which will be necessary for Spain to investigate the facts and frame a responsive pleading in this case. Under Odyssey's proposed order, for example, if Spain's Ministry of Culture is designated as the "particular authority," it would be prohibited from sharing information from Odyssey about the shipwreck with the Royal Navy of Spain unless Spain obtained leave of court. Protective Order Motion at 1-2. This result would

accrue even if the purpose for the inter-agency consultation is to confirm that the res is a vessel of the Spanish Navy or other property of Spain that is immune from arrest under the Foreign Sovereign Immunities Act or is subject to other national or international law. See 28 U.S.C. § 1604 (Supp. IV 2005). And if either the Ministry of Culture or the Spanish Navy is designated as the "particular authority," Spain would need leave of this Court for the designated agency to share the information with the Ministry of Foreign Affairs for consultations on international law and diplomatic questions raised by the information.[4] Likewise, the Ministry of Justice would be prohibited from examining the information to provide advice on Spanish law to Spain's own counsel in this case or to other Spanish government agencies. These restrictions would be plainly contrary to the interests of justice and the effective and fair conduct of this case, as well as the governmental interests implicated by this case. The restrictions would also be patently offensive to notions of sovereign immunity and judicial restraint.

Odyssey's proposed order goes even further by requiring Spain's counsel to obtain leave of court before consulting anyone within the Government of Spain other the one designated "particular authority." See Protective Order Motion at 1-2. This restriction would apply even if consultations are necessary to Spain's legal representation, to investigate the facts, to frame a responsive pleading or to otherwise develop and conduct this case.[5] Moreover, Odyssey's

---

[4] Under Odyssey's proposed order, Spain would be prohibited from giving the United States or any other government access to the information, even if it disclosed a violation of U.S. or other nations' laws. These are far from hypothetical questions. See Sea Hunt v. Kingdom of Spain, 221 F.2d 634 (4th Cir. 2000) (discussing statements by the U.S. Department of State and the United Kingdom in support of Spain's rights to sunken ships).

[5] Odyssey's claim that James A. Goold, lead counsel for Spain, should be required personally to sign the proposed order because he is Board Chairman of RPM Nautical Foundation, which Odyssey claims is "a potential competitor" to Odyssey, need only be briefly addressed. See Protective Order Motion at 9. Mr. Stemm's affidavit in support of Odyssey's motion selectively quotes from that organization's website, but fails to note that the home page identifies RPM Nautical Foundation as "a non-profit organization . . . to advance research in the field of nautical archaeology." RPM Nautical Found., About Us (n.d.), www.rpmnautical.org/aboutrpm.htm. Accordingly, RPM (continued...)

proposed order, if issued, would restrict Spain's and its counsel's ability to consult historians, archaeologists, or other consultants and/or experts who may be needed to assist in framing a responsive pleading, investigating the facts, and/or presenting evidence to the court. In short, Odyssey's motion should be denied because it is overbroad.

* * *

In sum, Spain respectfully submits that Odyssey's Motion for Protective Order should be denied. In the event that Spain's concurrently filed Motion to Dismiss is not granted, the only information Spain would agree to maintain as non-public is the exact location of the shipwreck. This information may be filed with the court under seal and would be maintained as confidential by Spain.

Respectfully submitted,

Dated: September 19, 2007

/s James A. Goold
James A. Goold
District of Columbia Bar # 430315
Covington & Burling LLP
1201 Pennsylvania Ave., NW
Washington, DC 20004
Telephone: (202) 662-5507
Fax: (202) 662-6291
E-mail: jgoold@cov.com

David C. Banker
Florida Bar # 352977
Bush Ross, PA
220 S. Franklin Street
P.O. Box 3913
Tampa, Florida 33601-3913
Telephone: (813) 224-9255
Fax: (813) 223-9255
E-mail: dbanker@bushross.com

---

Nautical Foundation is a nautical archaeology research foundation that works with academic and cultural institutions and authorities, does not engage (like Odyssey does) in commercial operations, makes no claim in salvage or any other law to ownership or other rights in or to artifacts, does not compete with Odyssey, and has no other actual or potential claim to or other interest (or any other involvement of any kind) in the shipwreck at issue in this case.

Certificate of Service

I hereby certify that I caused the attached Opposition of the Kingdom of Spain to Motion for Protective Order in Case No. 8:07-cv-01685-SDM to be served via the Court's CM/ECF system this 19th day of September, 2007.

_____
James A. Goold
District of Columbia Bar # 430315
Covington & Burling LLP
1201 Pennsylvania Ave., NW
Washington, DC 20004
Telephone: (202) 662-5507
Fax: (202) 662-6291
E-mail: jgoold@cov.com

DC: 2621016-1