IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
IN ADMIRALTY

**ODYSSEY MARINE EXPLORATION, INC.**,

      Plaintiff,

vs.

CASE NO.:  8:06-CV-01685-T-23MAP

**THE UNIDENTIFIED SHIPWRECK VESSEL**,
its apparel, tackle, appurtenances and
cargo located within center point
coordinates: 49° 25' N, 6° 00' W;
Radius: 5 nautical miles

      Defendant,
      i*n rem*

and

**THE KINGDOM OF SPAIN**,

      Claimant,

and

**KEITH BRAY**,

      Intervening Plaintiff,

vs.

**ODYSSEY MARINE EXPLORATION, INC**.

      Defendant.
_____/

## INTERVENING COMPLAINT

      COMES NOW the Claimant, KEITH BRAY, by and through the undersigned attorneys, pursuant to the applicable rules of Federal Civil Procedure, and files this

Intervening Complaint against ODYSSEY MARINE EXPLORATION, INC., THE UNIDENTIFIED SHIPWRECK VESSEL, and THE KINGDOM OF SPAIN and states the following:

## GENERAL BACKGROUND

1. The present action before this Court pertains to the disputed ownership and salvage of "an unidentified" shipwrecked vessel and its artifacts, and is therefore maritime in nature. Intervening Petitioner-BRAY is the researcher whose work, information and efforts were used by ODYSSEY MARINE EXPLORATION, INC. (hereinafter "ODYSSEY") to locate the subject shipwreck vessel and artifacts.

2. Petitioner-BRAY has moved to Intervene in the present action, by separate motion filed concurrent with this Intervening Complaint.

3. In the existing civil action, ODYSSEY, admits and Petitioner-BRAY contends, upon information and belief, that the shipwreck is located approximately 40 miles from the English Channel.

4. THE KINGDOM OF SPAIN (hereinafter "SPAIN") has filed a claim asserting rights to both the vessel and the cargo, stating that it has not abandoned its rights to sunken vessels either owned by, or in the service of, SPAIN.

5. The claim of Petitioner is on its face adverse to both ODYSSEY and SPAIN.

## THE PARTIES

6. Petitioner, KEITH BRAY, is at all times material a citizen of the United Kingdom performing research on shipwrecked vessels.

7. Plaintiff, ODYSSEY is upon information and belief and at all times material

hereto a Nevada corporation with its principal place of business located in Tampa, Florida conducting business in the fields of worldwide deep sea exploration and recovery of shipwrecks and its artifacts.

8.  Defendant, THE UNIDENTIFED SHIPWRECK VESSEL, is at all times material and upon information and belief located approximately 100 meters deep, in international waters, approximately 40 miles from Lands End near the English Channel.

## JURISDICTION AND VENUE

9.  This is an Admiralty and Maritime claim within Rule 9(h) of the Federal Rules of Civil Procedure and Supplemental Admiralty Rules C and D. This Court has original exclusive jurisdiction through Article III, Section 2, of the United States Constitution and pursuant to 28 U.S.C. §§ 1331 and 1333.

10. This is a claim involving a maritime salvage and maritime contract, and in which this Court has original jurisdiction pursuant to Art III, section 2 of the U.S. Constitution, and the claim falls with the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. ODYSSEY admits that it is under the jurisdiction of the Court. In addition, SPAIN has submitted itself, and availed itself of the jurisdiction of this honorable Court.

## FACTS

11. At all times material, KEITH BRAY, a citizen of the United Kingdom, invested an appreciable amount of time, effort and finance reviewing records of antiquity, visiting foreign countries, and translating historical works to collect information for analysis to enable him, and only him, to project the location of the shipwreck which is the Defendant-vessel in the instant civil action. BRAY also spent innumerable hours

analyzing and cross-referencing a mass of information, not only to locate the shipwreck but also to project what type of cargo, and what quantity of cargo was aboard the shipwrecked vessel.

12.     The information collected by BRAY was not just important to ODYSSEY in locating the vessel, but was fundamental in ODYSSEY even undertaking such an expansive and expensive search for the vessel.

13.     Based upon information BRAY provided directly to ODYSSEY's co-chairman, Greg P. Stemm, the salvor ODYSSEY located the intended wreck site within the near area advised by BRAY.

14.     Based upon information BRAY provided directly to ODYSSEY's co-chairman, Greg P. Stemm, concerning the likely cargo and quantity of the cargo, the salvor ODYSSEY undertook to search for the wreck using BRAY's information.

15.     Based upon the value and reliability of BRAY's information, at the time he disclosed it to Greg Stemm in a face-to-face meeting in Paris, Greg Stemm, in his capacity as co-chairman of ODYSSEY, agreed on behalf of the company to pay to BRAY seven and one-half (7 ½) percent of any recovery from the wreck—less costs of salvage and legitimate third-party ownership interests, if any--in exchange for the valuable proprietary and confidential information about the wreck.

16.     In the time following the agreement between BRAY and ODYSSEY, Stemm continued to communicate with BRAY, and acknowledge the agreement between the two entities.  BRAY also continued to communicate and provide information to ODYSSEY in good faith performance and assistance to ODYSSEY in locating the shipwreck.

17.    ODYSSEY then went on to use the specific information provided to them by BRAY and located the shipwrecked vessel within the expected area projected by BRAY. In addition, on information and belief, the information provided by BRAY as to the cargo of the vessel was substantially correct.

18.    On information and belief, ODYSSEY has already removed a portion of the cargo.

19.    On information and belief, more valuable cargo remains within the shipwreck site.

20.    Prior to ODYSSEY announcing the find of the shipwreck and cargo, Greg Stemm represented to KEITH BRAY that there was either some legal, institutional, or corporate reason why ODYSSEY must back out of its previous agreement with BRAY which was formed in Paris.

21.    ODYSSEY either knowingly or negligently represented to BRAY that ODYSSEY could not perform under the previous agreement to pay BRAY the agreed share of the find.

22.    Based upon what BRAY believed to be good faith and truthful representations by Greg Stemm, acting co-chairman of ODYSSEY, BRAY accepted a cash payment in lieu of the previous agreement.

23.    Subsequent to the cash payment, ODYSSEY announced it had located a wreck, which by all overwhelming indications, on information and belief, is the wreck for which BRAY provided the historical data to ODYSSEY.

24.    ODYSSEY has not paid any part of the find to BRAY.

## COUNT I:

## FRAUD IN THE INDUCEMENT

25. Claimant, KEITH BRAY, readopts and realleges paragraphs one (1) through twenty-four (24) as if specifically set forth herein, and Claimant, KEITH BRAY, further states:

26. ODYSSEY made a false statement or concealed material facts when it informed BRAY that it could not perform under its original agreement.

27. ODYSSEY knew or should have known that the representation was false or that material facts should have been disclosed to BRAY at the time ODYSSEY indicated it could not perform under the original agreement.

28. ODYSSEY intended that BRAY act in reliance upon the false statements, and/or concealment of material facts, causing BRAY to believe that ODYSSEY could not perform as agreed.

29. BRAY reasonably relied and did act in reliance upon ODYSSEY's false statements and/or concealment of material facts by accepting compensation significantly less than agreed to when ODYSSEY was seeking BRAY's valuable historical information.

30. In relying upon ODYSSEY's false statement, BRAY suffered damages as a result, on information and belief, of a significant value.

WHEREFORE the Claimant, KEITH BRAY, respectfully requests that this Honorable Court enter judgment in his favor, award damages commensurate with Petitioner's share of the wreck and recovered artifacts, and any other relief this Court

deems just and equitable.

## COUNT II:

## RESCISSION

31. Claimant, KEITH BRAY, readopts and realleges paragraphs one (1) through twenty-four (24) as if specifically set forth herein, and Claimant, KEITH BRAY, further states:

32. At the time of ODYSSEY breaking of the Paris agreement, ODYSSEY knowingly or unknowingly made a material misrepresentation to BRAY with the intent that BRAY rely upon that misrepresentation.

33. ODYSSEY's misrepresentation was material to BRAY's decision to accept compensation in lieu of the standing agreement.

34. BRAY relied upon ODYSSEY's material misrepresentation to his detriment. Had BRAY known the truth of the representations, BRAY would have enforced his rights against ODYSSEY and not suffered ODYSSEY to break its agreement with BRAY.

35. BRAY is entitled to rescind the contract based upon the misrepresentation and his reliance thereof.

36. BRAY offers and demands to return the parties to the positions they were in before the second agreement was entered, namely that the terms of the first agreement be observed and enforced.

37. BRAY has no adequate remedy at law other than rescission of the second agreement, for which he was induced to enter.

WHEREFORE Claimant, KEITH BRAY, respectfully requests this Honorable

Court to enter judgment against Plaintiff, ODYSSEY MARINE EXPLORATION, INC., rescinding the second contract, returning the parties to the positions they held before the second agreement was entered into, and that the Court will enforce the original agreement; Petitioner demands a trial by jury of all issues so triable, and such other relief as this Court deems just and appropriate.

## COUNT III:

## MUTUAL MISTAKE

38. Claimant, KEITH BRAY, readopts and realleges paragraphs one (1) through twenty-four (24) as if specifically set forth herein, and Claimant, KEITH BRAY, further states:

39. At the time Greg Stemm, through ODYSSEY, and BRAY formed the second agreement for payment, both Stemm and BRAY acted under the same misconception that ODYSSEY could not perform under the original Paris agreement.

40. This mistaken belief that ODYSSEY could not perform under the Paris agreement formed the basic, underlying assumption for both parties in the formation of the second contract.

41. The mutual mistake that ODYSSEY could not perform under the Paris agreement had a material affect on the second agreement and was the sole purpose for entering into the second agreement.

42. The second agreement is voidable in that both parties agreed to a change in position based upon a fundamental mutual mistake. Therefore, the second agreement should be nullified returning BRAY and ODYSSEY to their original position of the Paris agreement.

WHEREFORE the Claimant, KEITH BRAY, respectfully requests that this Honorable Court enter judgment in his favor, award damages based upon the original Paris agreement, and any other relief this Court deems just and equitable.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 19, 2007, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:   Allen von Spiegelfeld, Fowler White Boggs Banker P.A., P. O. Box 1438, Tampa, FL 33601; James A Goold, Covington & Burling LLP, 1201 Pennsylvania Ave., NW, Washington DC 20004; and David C. Banker, Bush Ross P.A., 220 S. Franklin Street, P.O. Box 3913, Tampa, FL 33601.

Respectfully Submitted,

*/s/Frank D. Butler*
Frank D. Butler, Esquire
Fla. Bar No. 940585
David M. Bulluck, Esquire
Fla. Bar No. 0021476
10550 U.S. Highway 19 North
Pinellas Park, FL 33782
Phone: 727-399-2222
Fax: 727-399-2202
Attorneys for Plaintiff
fdblawfirm@aol.com