UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
IN ADMIRALTY

ODYSSEY MARINE EXPLORATION, INC.

       Plaintiff,                       CIVIL ACTION

       v.                            Case No.:  8:06-CV-1685-SDM-MAP

THE UNIDENTIFIED, SHIPWRECKED
VESSEL OR VESSELS, their apparel, tackle,
appurtenances and cargo located within
center point coordinates: 49° 25' N, 6° 00' W;
Radius: 5 nautical miles, *in rem*

       Defendant(s).

_____/

**PLAINTIFF'S OPPOSITION TO
CLAIMANT KINGDOM OF SPAIN'S MOTION TO DISMISS**

COMES NOW the Plaintiff, Odyssey Marine Exploration, Inc., ("Odyssey"), by and

through its undersigned counsel, and responds in opposition to Claimant Kingdom of Spain's

("Spain") Motion to Dismiss and for Other Relief (Dkt. 46).

**MEMORANDUM OF LAW**

Spain seeks to dismiss Odyssey's five-count Complaint in its entirety.  In support of

its Motion, Spain argues Odyssey failed to describe the defendant *res* with reasonable

particularity and that certain claims against Spain are barred by the doctrine of sovereign

immunity.  To the contrary, Odyssey has met the applicable pleading requirements, and this

Court has jurisdiction to entertain the counts directed against Spain.

I.      **This Court's Arrest of the Vessel Was Proper.**

Although Spain has moved to dismiss the *in rem* claims against the Defendant *res*, its argument and cases cited seem to challenge this Court's issuance of the warrant of arrest.  To the extent Spain seeks to vacate the arrest pursuant to Supplemental Rule E(4) and Local Admiralty Rule 7.03(g), Spain's motion should be denied since it did not follow, or even cite to, the applicable procedures to be followed in the event this is the relief Spain seeks. However, even if Spain is actually seeking to vacate the arrest, Odyssey has clearly pled the required facts to show probable cause to obtain a maritime lien against the Defendant *res*.

Procedurally, the Supplemental Rules provide a Claimant a procedure to challenge the arrest or attachment *in rem*. See Supplemental Rule E(4)(f).  The proper procedure to be followed is for the Claimant to move the Court for an order to show cause why the arrest should be not vacated.  Local Admiralty Rule 7.03(g).  Notably, this motion should be filed "coincident with the filing of a claim."  Local Admiralty Rule 7.03(g).  After such motion, the Claimant is entitled to a prompt hearing.  Id.  Since Spain did not file a motion for an order to show cause why the arrest should not be vacated coincident with its filing of its verified claim, Spain has slept on its rights and should be barred from challenging the sufficiency of the arrest at this stage.

Even if Spain is permitted to challenge the sufficiency of the pleadings at this point, it is equally clear that Odyssey has demonstrated probable cause that a maritime lien exists. The standard for a  Supplemental Rule E(4)(f) hearing is "only to make a preliminary determination whether there were reasonable grounds for issuing the arrest warrant." Salazar v. Atlantic Sun, 881 F.2d 73, 79 (3rd Cir. 1989); Linea Navira De Cabotaje, C.A. v. Mar

Caribe De Navegacion, C.A., 169 F.Supp.2d 1341, 1358 (M.D. Fla. 2001). Here, Odyssey clearly met its burden to establish a maritime lien for salvage in the Complaint. Odyssey alleged the general location of the vessel as being beyond the territorial waters or contiguous zone of any nation, provided this Court with the coordinates within a five mile center point radius, and described an artifact used to arrest the site. (Dkt. 1) Odyssey also alleged that the vessel was in peril and it voluntarily provided salvage services to the vessel. (Dkt. 1) The law is clear that a salvage claim gives rise to a maritime lien that may be enforced through an *in rem* proceeding. See Treasure Salvors, Inc. v. Unidentified Wrecked and Abandoned Sailing Vessel, 640 F.2d 560, 567 (5th Cir. 1981). The Amended Verified Complaint clearly meets the reasonable grounds standard(s) for the issuance of a warrant of arrest for a maritime lien against the Defendant *res*. Therefore, Spain's Motion to Dismiss and/or Vacate Counts I and II of the Amended Verified Complaint should be denied.

II. **Odyssey's Amended Complaint Meets the Pleading Requirements of the Supplemental Rules.**

In addition to showing probable cause to arrest the Defendant Site, Odyssey has properly pled with reasonable particularity its *in rem* claims in the Amended Verified Complaint (Dkt. 37). However, Spain seemingly takes the position that every nugget of information held by Odyssey must be pled in the Complaint to survive a dismissal. This is clearly contrary to the requirements found within the Supplemental Rules for admiralty or maritime claims and applicable case law.

In general, the pleading requirements for federal actions has been described as "notice" pleadings. Conley v. Gibson, 355 U.S. 41, 47 (1957) Under the notice pleading standard, all that is required is that the Defendants be put on notice of the claim. Id. Because

of the unique nature of admiralty *in rem* claims, the notice pleading requirements have been

slightly heightened.  See U.S. v. $38,000.00 Dollars in U.S. Currency, 816 F.2d 1538, 1547

n.20 (11th Cir. 1987).  The heightened pleading requirement is set out within Supplemental

Rule C(2)(b) and Supplemental E(2)(a).  These rules require the following:

> "In an action *in rem*, the Complaint must:
>
> (b)  describe with reasonable particularity the property that is the subject of the action; and
>
> "The Complaint shall state the circumstances from which the claim arises with such particularity that the Defendant or Claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading."

Supplemental Rule E(2)(a).

In this case, Odyssey has clearly met these requirements in its Amended Verified

Complaint.  First, Odyssey has identified the Defendant site as being at a depth of 100 meters

and approximately 40 miles from Land's End near the English Channel, beyond the territorial

waters or contiguous zone of any sovereign nation. (Dkt. 37)   Additionally, Odyssey

identified the unidentified vessel as being within a five mile radius of center point

coordinates.  (Dkt. 1, 37)  In addition to this information, Odyssey has pled that artifacts

recovered included a glass bottle, which was used to arrest the site.  (Amended Verified

Complaint ¶ 8; (Dkt. 37)).  Odyssey also pled that it believes the vessel from which the

artifacts originated was likely a 17th century merchant vessel.  .Odyssey also indicated it was

willing to present Spain with its Preliminary Site Assessment ("PSA"), once certain

protections were granted pursuant to a pending Motion for Protective Order (Dkt 38).[1]  This

information is all that is required in meeting the pleading requirements found within the

Supplemental Rules for certain admiralty claims.

Spain relies on two cases for its contention that Odyssey's Verified Complaint does

not meet admiralty's pleading requirements:   Great Lakes Exploration Group LLC v.

Unidentified, Wrecked and (for Salvage-Right Purposes) Abandoned Sailing Vessel, No. 04-

375, 2006 WL 33707878 (W.D. Mich. Nov. 20, 2006) and Fathom Exploration, LLC v.

Unidentified Shipwrecked Vessel or Vessels, 352 F.Supp.2d 1218, 1231 (S.D. Ala. 2005).

Each of these cases involved the Abandoned Shipwreck Act "ASA," 43 U.S.C. §§ 2101 *et*

*seq* and described the location of the wreckage as being in both state and non-state waters.

Thus, the exact location of the shipwreck was key to each respective states' claim since title

would be vested in the state for any wreckage embedded in the state lands.    43 U.S.C.

§ 2105.   For the reasons set forth below, the pleading requirements in such cases are

distinguishable from those present within this case.

In Great Lakes Exploration[2] Plaintiff salvors sought to have a shipwreck arrested.

Plaintiffs filed a Verified Complaint which included an area in which the vessel was located.

The location provided covered both Michigan State waters and non-state waters.  Because the

Court could not determine if the wreck was located within state waters, the Court found the

Complaint to be deficient and did not issue a warrant for the arrest of the vessel.   Notably,

---

[1] Spain inexplicably has opposed the motion for protective order while still arguing that Odyssey is not willing to do what the Rules require.  Odyssey has simply sought to maintain trade secrets and other confidential information found within the PSA because of Odyssey's desire to protect the site and artifacts from third party interference or pillaging, and to prevent damages to Odyssey, its shareholders and other possible claimants.
[2] Great Lakes Exploration Group LLC has not been published and is currently under appeal.

the warrant for arrest was never issued, and the principal issue was whether the wreckage was embedded in State lands, which would vest title in the State of Michigan. The Court required the precise location of the vessel to be provided to the State of Michigan. The Court ordered Plaintiffs to provide the precise location to the State of Michigan, or the case would be dismissed. When the Plaintiffs failed (after two warnings by the Court) to provide the precise location, the Court exercised its sanctioning power and dismissed the Complaint for a failure to comply with the court order.

The second case cited by Spain actually supports Odyssey's contention that it has complied with Supplemental Rules C and E. Fathom Exploration was another case construing the Supplemental Rule's pleading requirements in an ASA action. In the Complaint, Plaintiff identified the location of the wreckage within two nautical miles and stated that it was located in waters of the State of Alabama and waters seaward thereof. The State of Alabama filed a claim seeking ownership of the vessel since it could have been located within its territorial waters. Alabama moved for a more definite statement and challenged whether the Plaintiff met the pleading requirements found within the Supplemental Rules.

In its decision, the Court recognized that motions for more definite statement were intended to provide a remedy for an "unintelligible pleading, rather than a vehicle for obtaining greater detail," or as a substitute for discovery. 352 F.Supp.2d at 1221-1222 (quoting Aventura Cable Corp. v. Rifkin/Narragansett South Florida CATV Ltd. Partnership, 941 F.Supp. 1189, 1195 (S.D.Fla.1996)). The State contested the particularity requirements found within the Complaint because it allegedly lacked sufficient specificity to enable the

State to determine if title vested in them pursuant to the ASA.  Namely, the location provided to the Court covered an area both within the State waters and outside state waters.  The State argued that a failure to describe and identify the vessels, as well as providing a location covering both State waters and non-State waters required the dismissal of the Complaint.

The Court easily rejected this argument as an "unduly formalistic, draconian construction of the Supplemental Rules that dismissal is mandated if a salvor brings an action for arrest of a shipwreck before it can positively identify the wreckage."  Id. at 1224.  The Court further explained that this was contrary to "time-honored admiralty principles relating to salvage" and would place a salvor in an untenable position if it were unable to identify a sunken vessel as is the case here.  Id. at 1224.  Further, the "Court cannot and will not read the Supplemental Rules in a manner unceremoniously to slam the federal courthouse door on any salvor who has not yet divined the name or an exhaustive description of a sunken vessel he has discovered."  Id. at 1225.  After denying the motion to dismiss, the Court did require Plaintiff to provide a more definite statement, but it was because of the "critical threshold question in this case [is] whether the [s]hipwreck is an abandoned vessel embedded in the submerged lands of the State of Alabama."  Id.  Because of this critical question, the Court required the Plaintiff to amend the Complaint to provide the precise location.  These concerns are clearly not applicable to this case since the Defendant site is located outside of the territorial waters or contiguous zone of any State.

The Court also identified what it construed to be the pleading requirements in an historic salvage case.  The Court stated that Plaintiff-Salvor should provide the location of the site, whether any conclusions about the nature of the vessel can be drawn from the

research and salvage efforts, and (relevant to an ASA claim) whether the wreckage appeared to be embedded within the sea floor.  Id. at 1226.

Here, Plaintiff has already provided the information discussed in Fathom Exploration. Namely, it has provided the Court with the site location within a five mile radius of a center point.   Additionally, Odyssey has identified the type of artifacts recovered from the Defendant site, and has identified a conclusion as to the nature of the artifacts as being from the 17th century merchant vessel.  The Plaintiff respectfully submits that it has complied with the pleading requirements found within the Supplemental Admiralty Rules.  However, if this Court determines otherwise, the proper remedy as identified in Fathom Exploration would be to provide Plaintiff with leave to amend the Complaint.[3]

Not only is Odyssey's Complaint sufficient on its face, but the facts also show that Spain indeed has been provided with sufficient information in order to commence an investigation of the claims.  Despite Spain's representations that it is unable to provide a responsive pleading, it has filed numerous motions of considerable length challenging Odyssey's contentions that it is unable to identify any possible shipwreck.  Notably, Spain attached to its Motion to Dismiss exhibits containing diplomatic notes and export license documents.  Further, in Exhibit A to the Amended Verified Complaint (Dkt. 37), Odyssey's principal Greg Stemm has clearly set forth that Spain has been apprised of the status of Odyssey's operations during the last approximately nine (9) years and that Odyssey had

---

[3] This is the first time this Court has considered the adequacy of the pleadings in this matter.  Although Spain previously filed a motion for more definite statement (Dkt. 28), it withdrew the motion when Odyssey filed its Amended Complaint (Dkt. 37).  Accordingly, this is the first time this Court has reason to consider whether Plaintiff has met the pleading requirements of the Supplemental Rules.

actually invited Spain to participate in Odyssey's explorations on numerous occasions.

Finally, Spain's counsel has made statements that indicate Spain has "strong proof" of the

identity of the *res* in this case.[4] Accordingly, the facts strongly show that Odyssey has met

the requirements providing sufficient information such that Spain not only was able to

commence an investigation of the facts, but has, in fact, commenced an investigation of the

facts of this case.  Accordingly, Spain is merely seeking to obtain more details about the

Defendant wreck and engage in discovery, which is specifically prohibited and not intended

by the Supplemental Rules.  See Fathom Exploration, LLC, 352 F. Supp.2d 1221-1222.

Lastly, it has to be noted that more exploration of the site could assist in determining the

identity of the shipwreck; however, Spain has gone out of its way to keep Odyssey from

conducting further investigation.  During the detention and inspection of Odyssey's recovery

ship the M/V Odyssey Explorer last week in the Port of Algeciras Spain, the Spanish Guardia

Civil (a Spanish Federal Policy Agency under the Spanish Ministry of the Interior) placed

evidence tape on the company's primary work vehicle (the Remotely Operated Vehicle

ZEUS) and advised Odyssey that they are not allowed to use this system, under threat of

Criminal penalties, no matter where the vessel or system is located.  Indeed, Odyssey was

instructed that it could not even move ZEUS from its present location on the deck of the

ODYSSEY EXPLORER, thus precluding the vessel from being used for underwater

exploration of any shipwreck site.  This act effectively prevents Odyssey from conducting

further investigation of the site using the ZEUS system without violating this order.  See the

---

[4] See http://www.tradingmarkets.com/.site/news/Stock%20News/629887/, a copy of which is attached as Exhibit "A."

Affidavit of Marie Rogers, attached hereto as Exhibit "B." Spain's Motion to Dismiss

Counts I and II of the Amended Verified Complaint should be denied.

**III.    This Court Has Personal Jurisdiction Over Spain.**

Despite Spain's contentions to the contrary, this Court has personal jurisdiction over

Spain since Spain filed a general appearance through its Verified Claim. (Dkt. 24)

Following the arrest of the Defendant *res*, Spain filed a Verified Claim pursuant to

Supplemental Admiralty Rule C(6). Pursuant to Supplemental Rule C(6), the Verified Claim

operates as a general appearance unless it has been expressly restricted to the defense of the

*in rem* claim pursuant to Supplemental Rule E(8). U.S. v. Republic Marine, Inc., 829 F.2d

1399, 1402-1403 (7th Cir. 1987). Nowhere in Spain's Verified Claim did it expressly restrict

its appearance to the defense of the *in rem* claims. Accordingly, Spain has entered a general

appearance in this action and is subject to the *in personam* jurisdiction of this Court. To the

extent Spain's Motion to Dismiss is predicated upon this Court's lack of personal

jurisdiction, Spain's Motion to Dismiss should be denied.

If this Court deems Spain's Verified Claim to be a restricted appearance solely to

defend the *in rem* claims, such an appearance would not provide this Court *in personam*

jurisdiction over Spain, but neither would it "shield its interests in the defendant res from

being adjudicated." Cobb Coin Co., Inc. v. Unidentified, Wrecked and Abandoned Sailing

Vessel., 549 F. Supp. 540 (S.D. Fla. 1982). Out of an abundance of caution, Odyssey is

taking steps to serve Spain pursuant to the Foreign Sovereign Immunities Act, and has taken

positive steps in this regard. Notably, this Court has issued a Summons to the Kingdom of

Spain, and process is being effectuated. If this Court deems it does not have personal

jurisdiction, it is respectfully submitted that Spain's Motion to Dismiss should be held in abeyance pending service of process on the Kingdom of Spain.

**IV.    This Court Has Jurisdiction Over Its *In Personam* Claims Against Spain.**

Spain asserts this Court has no jurisdiction over Odysseys claims. To the contrary, this Court has jurisdiction over each Count in the Amended Verified Complaint (Dkt. 37). Each count will be discussed in turn.

The whole crux of this case is an adjudication of property rights in an unidentified shipwreck or cargo located outside the territorial seas and contiguous zone of any sovereign state. Additionally, prior to this Court obtaining constructive *in rem* jurisdiction over the Defendant site, neither the site, nor any vessel, nor cargo thereof was in the actual possession of Spain, nor any other person, entity or sovereign State. Although Spain seems to accept as a foregone conclusion that it is the owner of the Defendant site, not only has this not been established but the identity of the vessel, if any, remains unknown. Accordingly, Counts I, II, and III all either operate directly against the vessel (if any) and cargo or involve a determination of the ownership interest in the property within the jurisdiction of this Court.

It is well settled that a Court sitting in admiralty has jurisdiction to determine ownership interests of salved property that has been reduced to the possession and control of the salvor and is before the Court. R.M.S. Titanic, Inc. v. Haver, 171 F.3d 943, 961 (4th Cir. 1999); Treasure Salvors, Inc. v. Unidentified Wrecked and Abandoned Sailing Vessel, 640 F.2d 560, 566 (5th Cir. 1981). The so-called "constructive *in rem*" jurisdiction permits a United States Court sitting in admiralty to adjudicate rights over the entire wreck or cargo. R.M.S. Titanic, Inc., 171 F.3d at 961. The basis for this power is within the *jus gentium* of

the law of nations to which Spain, and all other persons or entities, are similarly bound. Id. One of the justifications for constructive *in rem* jurisdiction over shipwrecks or cargo beyond the territorial waters or contiguous zone of any nation is to protect such properly from being plundered, to preserve the historic interest, protect the rights of the first salvor, and to return the goods to economic usefulness. Thomas J. Schoenbaum, Admiralty and Maritime Law 179 (4th ed. 2004).

To the extent that Spain claims it is immune from the jurisdiction of this Court to adjudicate rights in the *res*, such argument necessarily fails since it voluntarily intervened and filed a Claim of Owner over the property.  The Supreme Court of the United States has held a party may not intervene in an action asserting a claim of right, then attempt to hide behind alleged immunity if it does not receive a favorable disposition of that right.  See California v. Deep Sea Research, Inc., 523 U.S. 491, 502-503 (1998) (citing U.S. v. Bright, 24 F.Cas. 1232, 1236 (C.C. Pa. 1809)).  Although states have challenged this holding under Eleventh Amendment Sovereign Immunity, sovereign immunity is only implicated if the sovereign has possession of the *res* at the time of the seizure. Id. at 506.  Although Deep Sea Research involved a question of Eleventh Amendment immunity, the Court's holding was based on a long line of precedents that permitted federal courts have *in rem* jurisdiction over property not in possession of a sovereign. Id. at 507 (citing The PESARO, 255 U.S. 216, 219 (1921)).  In light of the Supreme Court's holding in respect to historical shipwrecks, it is clear this Court has subject matter jurisdiction over Odyssey's claims found within Counts I, II, and III of its Amended Verified Complaint (Dkt. 37).  Accordingly, Spain's Motion to Dismiss Counts I through  III of the Amended Verified Complaint should be denied.

**V.    This Court Has Jurisdiction Over Plaintiff's Claim Under Count IV of the Amended Verified Complaint.**

Spain also seeks dismissal of Count IV (quantum meruit/unjust enrichment) of the Amended Verified Complaint as being an *in personam* claim that is barred by Spain's sovereign immunity.  First, Count IV sets forth claims for unjust enrichment and quantum meruit which are equitable theories of recovery often pled in the alternative in salvage actions based on the value of the services provided to a vessel or cargo owner.  See e.g., The Elfrida, 172 U.S. 186, 194 (1898).    Spain argues this Court does not have subject matter jurisdiction over any equitable claim against Spain.  Spain's Motion to Dismiss is premature since the ultimate disposition of Count IV depends on a determination of the ownership of the *res*; this Court, nevertheless, has subject matter jurisdiction to entertain Count IV, even against a sovereign state such as Spain.

The equitable relief sought in Count IV is clearly related to an *in rem* claim for salvage.  It alternatively seeks compensation for services rendered to the Defendant *res* in the event a maritime lien is deemed not to exist.  As such, the equitable relief is sought on the theory of benefit to the owner of the Defendant *res*.  In the event Spain is ultimately determined to have ownership rights in the Defendant *res*, this Court would have subject matter jurisdiction under the Foreign Sovereign Immunities Act, 28 U.S.C § 1607.  Section 1607 provides that, when a foreign State intervenes in an action, the foreign State will not be immune with respect to any counterclaim "arising out of the transaction or occurrence that is the subject matter of the claim of the foreign state."  Id.  Clearly, Spain has made a Claim of Owner in the Defendant *res* currently under the jurisdiction of this Court.  In the event the property is determined to be that of Spain or any other claimant, Count IV of the Complaint

seeks compensation that is clearly related to services provided to the vessel and its owner for the salvage of the property, which arose out of the same subject matter of the claim of the foreign State. Accordingly, Count IV falls squarely within an express waiver of Spain's sovereign immunity found within the Foreign Sovereign Immunity Act. Spain's Motion to Dismiss Count IV of the Amended Verified Complaint should be denied.

**VI.    Spain Has Waived Sovereign Immunity Related to Count V of the Amended Verified Complaint.**

Spain also moves to dismiss Count V (damages against Spain), again attempting to shield itself from liability under the Foreign Sovereign Immunities Act. In Count V of the Amended Verified Complaint, Odyssey alleges that it suffered damages as a result of Spain's tortious conduct in invading its possessory rights to the Defendant *res* and in interfering in its performance of its duties as substitute custodian. Spain alleges it has not waived sovereign immunity for any of these acts. However, as Odyssey has alleged, these acts fall squarely within exceptions to the waiver of sovereign immunity found within the Foreign Sovereign Immunities Act. Mainly, Spain is not immune from the jurisdiction of a court in the United States concerning a suit in admiralty to enforce a maritime lien against a vessel or cargo. See 28 U.S.C. § 1605(b).

If the allegations of the Amended Verified Complaint are taken as true, as they must be for purposes of a Motion to Dismiss, Spain's actions clearly arise out of Odyssey's arrest of the Defendant *res* in this case – Spain has interfered with Odyssey's court-ordered duties as substitute custodian and with its ability to continue to perform its archaeological recovery and salvage operations as permitted by this Court. Since Spain's actions are all related to, and are retaliation for Odyssey's arrest of the Defendant site and cargo properly before this

Court, Spain has waived sovereign immunity and is subject to liability for the acts complained of.

In addition to § 1605(b), Spain has also waived sovereign immunity under § 1607(b). Section 1607(b) waives sovereign immunity with respect to any counterclaim arising out of the same transaction or occurrence as the subject matter of a claim in which a foreign State intervenes. 28 U.S.C. § 1607(b). Here, Spain intervened in the arrest of the Defendant *res* by filing a verified claim. As detailed above and in the Amended Verified Complaint, Spain has taken numerous actions interfering with Odyssey's possessory rights and duties as substitute custodian which all directly relate to the salvage of the Defendant site in this matter. Under 28 U.S.C. § 1607, Spain has therefore waived its sovereign immunity with respect to a counterclaim for damages as a result of Spain's intervention and tortious and illegal conduct arising out of the arrest of the Defendant *res*. Odyssey has therefore overcome the presumption that Spain is immune from suit pursuant to the Foreign Sovereign Immunities Act. Spain's Motion to Dismiss Count V of the Complaint should be denied.

WHEREFORE, Odyssey respectfully requests this Court to enter an Order denying Spain's Motion to Dismiss in its entirety, and any other relief this Court deems just in the premises. As noted in the Motion filed herewith, Odyssey respectfully requests oral argument before this Honorable Court.

Respectfully submitted,


s/ Allen von Spiegelfeld
Allen von Spiegelfeld – FBN 256803
avonsp@fowlerwhite.com
Eric C. Thiel – FBN 016267
ethiel@fowlerwhite.com
FOWLER WHITE BOGGS BANKER P.A.
P.O. Box 1438
Tampa, Florida  33601
(813) 228-7411
Facsimile:  (813) 229-8313
Attorneys for Plaintiff


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 22, 2007, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to James A. Goold, Covington & Burling LLP, 1201 Pennsylvania Ave., NW, Washington, DC  20004; and David C. Banker, Bush Ross P.A., 220 S. Franklin Street, P. O. Box 3913, Tampa, FL  33601, *Attorneys for Claimant, Kingdom of Spain*.


s/ Allen von Spiegelfeld
Allen von Spiegelfeld – FBN 256803
avonsp@fowlerwhite.com
Eric C. Thiel – FBN 016267
ethiel@fowlerwhite.com
FOWLER WHITE BOGGS BANKER P.A.
P.O. Box 1438
Tampa, Florida  33601
(813) 228-7411
Facsimile:  (813) 229-8313
Attorneys for Plaintiff


2408821