IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
IN ADMIRALTY

Odyssey Marine Exploration, Inc.,

    Plaintiff,

v.

Case No. 8:06-CV-01685-SDM-MAP

THE UNIDENTIFIED SHIPWRECKED
VESSEL OR VESSELS, their apparel, tackle,
appurtenances and cargo located within center
point coordinates: 49 25' N, 6 00'W;
Radius: 5 nautical miles

    Defendants,
    <u>in rem</u>

and

THE KINGDOM OF SPAIN,

    Claimant,
_____/

**This motion is an identical filing in Cases
8:07-CV-00614-SDM-MAP and 8:06-CV-01685-SDM-MAP.**

**Kingdom of Spain's Motion to Compel Compliance with
<u>this Court's Disclosure Order and for Other Relief</u>**

Claimant Kingdom of Spain ("Spain") hereby moves for relief and sanctions, pursuant to Federal Rule of Civil Procedure 37 and to Spain's Motion to Dismiss and for Other Relief (Dkt. 46), for failure by Plaintiff Odyssey Marine Exploration ("Odyssey") to comply with this Court's Order of January 10, 2008 ("the Order") in cases 8:07-CV-00614 and 8:06-CV-01685. The Order directed Odyssey to disclose information designated by the Court therein within two weeks of the concurrent entry of the Protective Order Governing Disclosure of Certain

Information. See Order at 1 (Dkt. 81). Counsel certifies that the parties have conferred and were unable to reach agreement. See Local Rule 3.01(g); see also Fed. R. Civ. P. 37(a).

## MEMORANDUM OF LAW

### I.  Background

On January 10, 2008, after months of briefing first on Spain's Motions for More Definite Statement (Dkt. 28) and then on Spain's Motion to Dismiss and for Other Relief (Dkt. 46), after two Initial Pretrial Conferences, and after the entry of a Protective Order designed to facilitate disclosures and to resolve Odyssey's claimed concerns about disclosing confidential information, the Court ordered Odyssey to provide to Spain four specific categories of information, including "any information material to the identity of the vessel or vessels." Order at 1 (Dkt. 81).

On January 24-25, 2008, counsel for Spain, accompanied by a representative of the Embassy of Spain, came to Tampa at Odyssey's request to receive the information required by the Order. Odyssey provided certain of the information required by the Order and/or made arrangements for such information to be provided. Specifically, Odyssey provided the exact location of the vessel or vessels (Category #1); a partial listing and description of the artifacts uncovered to date (Category #3); and photographs and videotapes of the sites or vessels (Category #4). See Order at 1 (Dkt. 81) (listing the categories of information to be provided). Odyssey refused, however, to provide critical information material to the identification of the vessels (Category #2). Id. In addition, Odyssey provided incomplete listings and descriptions of artifacts. Odyssey also demanded unworkable and unreasonable conditions on the inspection of artifacts held by Odyssey in substitute custodianship.

By this motion, Spain seeks an order compelling compliance with the Order and sanctions which Spain believes are appropriate and reasonable under the circumstances, including vacation of the arrests of the vessels in cases 8:07-CV-00614 and 8:06-CV-01685, an

order protecting the status quo of the vessel and artifacts at issue in case 8:07-CV-00614, and such other relief as the court may deem proper.

**II. Discussion**

1. *Odyssey Has Failed to Comply with the Order to Disclose Material Information*

The Order is clear, broad, and direct: "any information material to the identity of the vessel or vessels" must be disclosed. Order at 1 (Dkt. 81). The Order does not allow for Odyssey to refuse to disclose the information until such time as Odyssey wants to do so, or for Odyssey to decide — on a unilateral basis — what it wants to disclose and what it wants to withhold. Nor does the Order allow Odyssey to defer or avoid compliance by saying that it has not "confirmed" the identity of the vessels. See, e.g., Amended Verified Complaint in Admiralty at 6-7 (Dkts. 35, 37) ("Odyssey has found no evidence which would confirm the identity of a ship . . . .").

Notwithstanding the Order's clear mandate, Odyssey has refused to provide any information in its possession relating to, for example, the identity of the vessels obtained by Odyssey prior to searching for and locating the vessels. Odyssey has also refused to disclose any information on how the location of the vessels corresponds to vessels determined by Odyssey, via historical research or other means, to have sunk at the locations at which it found the allegedly "unidentified" shipwrecks. Odyssey also refused to disclose any information on how the artifacts retrieved from the vessels or other characteristics of the shipwreck sites correspond to the vessels it had identified as targets before conducting its search. In short, Odyssey has refused to disclose information that links what it found to what it knows.

Odyssey has made abundantly clear in public statements that it does not search for and locate shipwrecks by happenstance. On its website, Odyssey explains that before it sets out on a

search for a shipwreck, it first assembles "exhaustive detail" about the shipwreck, its contents, and its location. Odyssey, How It's Done at 1 (n.d.), http://shipwreck.net/howitsdone.html (attached as Exhibit 1). According to Odyssey, this information is the "foundation" of the project. Id. Describing on its website "How It's Done," Odyssey states:

> The foundation of any shipwreck search and recovery expedition is research behind the project. Not only is the research necessary to evaluate the potential value, location and viability of finding a shipwreck, but it is also necessary to establish the historical significance and the archaeological requirements of the excavation.
>
> Odyssey hires and maintains relationships with many of the top shipwreck researchers in the world in order to scout out any potentially viable projects. Data from these researchers is brought in and checked against Odyssey's own database and resources, compared with information from other experts, and then reviewed in exhaustive detail before further money is spent on the project.

Id. Odyssey further explains that "[c]ontemporary documents are used to help Odyssey researchers determine whether a project meets Odyssey criteria." Id. Based on this "thorough research," Odyssey selects "the target shipwreck":

> Search areas are laid out after thorough research of historical documents, weather, current and tide patterns, survivors [sic] accounts, and other factors that lay out the possible and probable location of the target shipwreck.

Id.

Odyssey's pleadings in case 8:07-CV-00614 confirm that its claims against the "Black Swan" grow out of this exhaustive research process. Nine months ago, when it moved for an arrest in that case, Odyssey stated that it had "invested substantial, [sic] money and effort in locating, surveying, photographing and <u>researching the history of the Defendant Shipwrecked Vessel(s)</u>." Motion for Order Directing Clerk to Issue Warrant of Arrest In Rem at 3 (Dkt. 3 (8:07-CV-00614)) (emphasis added). In an affidavit filed on April 13, 2007 in support of Odyssey's motion for appointment as substitute custodian, Odyssey's General Counsel, Ms.

Melinda J.MacConnel, described the shipwreck as a "nineteenth century wreck." Affidavit in Support of Motion for Appointment as Substitute Custodian ¶ 3 (Dkt. 7-2 (8:07-cv-00614)). At the Pretrial Conference held on November 26, 2007, Ms. MacConnel confirmed that since April, "we [have been] researching every day, Your Honor, and we have more and more information each day." Transcript of Preliminary Pretrial Conference at 19 (Nov. 26, 2007).[1]

Odyssey's public statements provide additional proof that it possesses far more information about the "Black Swan" than it has been willing to disclose. When it announced in May 2007 that it had located the vessel and had taken hundreds of thousands of artifacts from the site, Odyssey reported that it has "interesting evidence that tends to point to <u>a specific shipwreck</u>." Odyssey, The "Black Swan" Shipwreck: Questions and Answers at 1 (May 2007), http://shipwreck.net/bswfaq.html (attached as Exhibit 2) (emphasis added). Odyssey also stated in a May 2007 press release that "the 'Black Swan' <u>bears characteristics of one shipwreck in particular</u>." Odyssey, Press Release, Odyssey Provides "Black Swan" Shipwreck Information Update at 2 (May 21, 2007), http://shipwreck.net/pr135.html (attached as Exhibit 3) (emphasis added). Yet another statement posted by Odyssey on its website claimed that the site is "believed to have immense historical significance." Odyssey, Black Swan at 1 (n.d.), http://shipwreck.net/blackswan.shtml (attached as Exhibit 4). In light of these statements, it is

---

[1] At this Pretrial Conference, Odyssey's counsel argued that it had not made a definitive determination of the identity of the vessels. Transcript of Preliminary Pretrial Conference at 19 (Nov. 26, 2007). The Court advised thus: "I'm strongly suggesting that [Odyssey] reveal as much information as [it] can to Mr. Goold so that Mr. Goold can make an assessment as to which case he wants to tackle." <u>Id.</u> at 62. Earlier in the conference, Odyssey's counsel assured the Court that it would tell Spain "everything" upon entry of a confidentiality order:

> Your Honor, it's not as if we're saying to Spain, we're not going to tell you; we're not going to give you this information. We haven't said that. We said, we will tell you everything. We will tell you absolutely everything. Just sign here.

<u>Id.</u> at 28.

incredible for Odyssey now to say that it is unwilling or unable to disclose the identity of a shipwreck site that Odyssey itself characterizes as of "immense historical significance," especially after this Court ordered such disclosure and issued a Protective Order to address any confidentiality concerns Odyssey may have.

The picture is no different with respect to the vessel at issue in case 8:06-CV-01685. In September 2006, Odyssey filed its Verified Complaint, claiming that it had located a 17th Century vessel "near the English Channel" and had "invested substantial time, money and effort . . . researching the history of the Defendant Shipwrecked Vessel." Verified Complaint ¶¶ 14 (Dkt. 1 (8:06-CV-01685)). When asked by the Court at the November 26 Pretrial Conference "why can't you identify the ships," Odyssey's counsel acknowledged that "we do have an idea as to which ship that may be and we have found evidence of a shipwreck itself." Transcript of Preliminary Pretrial Conference at 16 (Nov. 26, 2007). Nevertheless, as with Case 8:07-CV-00614, Odyssey now refuses to provide any documents reporting or discussing in any way the identity of the vessel, or otherwise to disclose the basis for its statement to the Court.

Odyssey's posture is particularly puzzling because Odyssey filed, on January 9, 2008 in case 8:06-CV-01685, an agreement with Intervenor Keith Bray dated April 1, 2006 for the purchase of a file of information apparently concerning the vessel at issue in that case. Exhibit Research Agreement, Answer to Intervenor Complaint and Affirmative Defense by Odyssey (Dkt. 79-1 (8:06-CV-01685)). The Bray agreement states on its face that it relates to the "Merchant Royal, a shipwreck lost in the English Channel in 1641."[2] Id. at 1. Nevertheless, Odyssey has refused to disclose the "Bray file" or otherwise reveal whether the "Merchant

---

[2] The agreement also states that "Bray's file . . . includes information which Odyssey has obtained from other sources . . . ." Id.

Royal" is the one its counsel obliquely referred to in court, but did not name. Odyssey also refuses to disclose any information on whether its observations of the site and the artifacts it recovered correspond to the Merchant Royal.

Odyssey well knows that "any information material to the identity of the vessel or vessels" is critical to moving these cases forward. Odyssey also knows that such information must include information in Odyssey's possession that links the location of the sites, photographs of the sites, and artifacts to the vessels Odyssey identified by pre- or post-discovery research and analyses. See Letter by Counsel for Spain to Counsel for Odyssey (Jan. 18, 2008) (attached as Exhibit 5). Nevertheless, Odyssey has taken the position that it considers the identity of the vessels to be "confidential," "proprietary" and/or "privileged," and that this information would therefore not be disclosed. Spain's counsel was advised that, notwithstanding the Order, Odyssey does not intend to disclose the identity of the vessels until such time as it makes a "corporate decision" to do so. Until whenever that may occur, Odyssey's position as presented to Spain's counsel is that Spain must "draw its own conclusions" and that Odyssey has complied with the Order simply by providing location data (Category #1), artifact lists and descriptions (Category #3), and videotapes and photographs (Category #4). In short, Odyssey has refused to provide any document, report, or anything else that attaches a name to the vessels.

Spain respectfully submits that Odyssey has deliberately refused to comply with a specific and clear order of the court, continuing the pattern of concealment and nondisclosure that has plagued these cases from the start.

    2.    *Odyssey Has Failed to Provide a Complete Listing and Description of the Artifacts*

The Order required Odyssey to provide "a listing and description of the artifacts uncovered to date" (Category #3). Order at 1 (Dkt. 81). Yet, the information Odyssey has

provided to counsel for Spain cannot be reconciled with the Order and with its public statements. In May 2007, Odyssey announced with respect to the "Black Swan" that it had recovered "over 500,000 silver coins, weighing more than 17 tons, hundreds of gold coins, worked gold and other artifacts." Odyssey, Press Release, Odyssey's Latest Find Yields Over 500,000 Silver and Gold Coins at 1 (May 18, 2007), http://shipwreck.net/pr134.html (attached as Exhibit 6). Odyssey announced that "all of these artifacts" are "undergoing conservation and documentation." Id. Odyssey further announced, also in May of 2007, that "we have already conserved about 6,000" of the coins. Exhibit 2 at 2.

On January 24-25, Odyssey's counsel provided copies of listings and descriptions of some artifacts, all of which it designated as confidential under the January 10 Protective Order Governing Disclosure of Certain Information.[3] In view of the provisional designation of every scrap of this information as confidential, Spain does not refer to such information in this motion and notes only that the number of artifacts listed and described with respect to Case 8:07-CV-00614 falls far short of the number of artifacts that Odyssey announced publicly that it had retrieved, conserved, and examined by May 2007. Because all of the information that was provided has been designated as confidential (which Spain considers a violation of the Protective Order), this motion does not provide further detail. Counsel for Spain will bring the artifact lists to a hearing on this matter and/or file them under seal pending resolution of the confidentiality question.[4]

---

[3] Concurrently with this motion, Spain is filing a motion seeking appropriate relief for what it believes is systematic misuse of the Protective Order.

[4] Counsel for Spain believes that more extensive listings and descriptions of the artifacts may be located at the facility at which the coins and artifacts are being stored and examined, perhaps by a firm engaged by Odyssey. But Odyssey's disclosure obligations under the Order are not limited only to information kept at Odyssey's offices. See Order at 1 (Dkt. 81).

3. *Inspection of Artifacts*

The Order further directed that "the parties shall arrange an opportunity for the Kingdom of Spain to inspect the artifacts retrieved to date at a mutually agreeable time and place." Order at 1 (Dkt. 81). Counsel for Spain has been advised by Odyssey's counsel that a condition precedent for the inspection is the execution of a "Mutual Nondisclosure Agreement" between Spain's counsel (and anyone who assists counsel) with an entity identified as the "Certified Collectibles Group."[5] See generally Exhibit 7.

The lengthy and overbroad agreement on which Odyssey seeks to condition inspection of the artifacts conflicts in numerous respects with the Protective Order issued by the Court. Among other things, the agreement proffered by Odyssey would:

- allow any or all information to be designated by the "Certified Collectibles Group" as confidential (Paragraph 1);

- prohibit any information to be disclosed to any third party, apparently including experts (Paragraph 2);

- require all notes of other documents growing out of the inspection to be destroyed upon request of the furnishing party (Paragraph 5);

- require signatories to submit to the "laws of the State of Florida exclusive of its choice of law principles" (Paragraph 11); and

- purportedly supersede the Protective Order as applied to information derived from the inspection by requiring signatories to agree that the confidentiality, if any, of such information is governed by the agreement (Paragraph 13).

Id.

In short, the confidentiality agreement demanded by Odyssey is unworkable and at odds with the Court's January 10 Protective Order. Counsel for Odyssey has advised Spain's counsel

---

[5] Counsel for Spain has been told that "Certified Collectibles Group" owns or operates the facility at which the artifacts are located.

that the purpose of the confidentiality agreement is to prevent public disclosure of the location of the facility. Counsel for Spain has advised that it would enter into a letter agreement for this purpose, but that the Protective Order provides the exclusive framework for confidentiality issues in all other respects.[6] Odyssey has rejected this solution.

### III. Relief Requested

Spain respectfully requests a hearing on this motion, and notes that the Court has scheduled a Pretrial Conference for March 5, 2008 to hear matters arising from the Order. At that conference, or on such other date as the Court may determine is appropriate, Spain's counsel would present copies of the documents provided by Odyssey for examination by the Court. Alternatively, as noted earlier, Spain's counsel could file copies of the documents to the Court under seal in advance of a hearing, should the Court so desire. Because some of the documents are oversized charts and similar materials that may require some explanation, counsel believes that examination in court may be the more practical way to proceed.

However the Court may wish to proceed, Odyssey stands in a position of deliberate and calculated refusal to comply in critical respects with an Order of this Court. If the Order is viewed in isolation, Odyssey stands in violation at a minimum of Rule 37 for failure to make disclosures, and is subject to expenses and sanctions. See Fed. R. Civ. P. 37(a)(4) ("[A]n evasive or incomplete disclosure, answer or response is to be treated as a failure to disclose . . . ."); id. 37(a)(5), 37(b)(2)(A), 37(b)(2)(C).

Odyssey's failure to comply with the Order does not stand in isolation, however. Spain believes that the Order was issued as an efficient and pragmatic attempt to remedy Odyssey's

---

[6] Counsel for Spain acknowledges that during the parties' meetings Odyssey arranged to bring a selection of some artifacts to its offices for viewing.

failure to comply with the disclosure requirements of Supplemental Rules C(2)(b) and E(2)(a). Odyssey's failure to comply with these rules prompted Spain's Motion for More Definite Statement (Dkt. 28) and, later, Spain's Motion to Dismiss and for Other Relief (Dkt. 46), which relief included vacation of the arrests in these cases. Spain accordingly incorporates by reference its submissions in these motions and their respective memoranda of law, as well as its submissions in opposition to Odyssey's pending motion for preliminary injunctive relief in case 8:07-CV-00614. See Memorandum in Opposition to Odyssey's Motion for Preliminary Injunction (Dkt. 38 (8:07-CV-00614)). For the reasons and authorities previously submitted in the arduous process that led to the Court's January 10 Order, Spain respectfully submits that Odyssey's refusal to comply with the Order should now be considered "strike three."

In view of Odyssey's failure from the inception of these cases to comply with disclosure requirements, and now its failure to comply in critical respects with the specific, direct, and unambiguous mandate of the Order, Spain respectfully urges that the Court should direct:

> 1) prompt and unconditional compliance with the January 10 Order, and specifically disclosure of all documents or other information relating to or discussing the actual or potential identity of the vessels, including research on the history, location and contents of the vessels, as well as all studies, reports or other information concerning observations of the sites and their artifacts in relation to the actual or potential identity of the vessels;[7]
>
> 2) vacation of the arrests issued in cases 8:07-CV-0614 and 8:06-CV-01685, as well as termination of Odyssey's appointments as substitute

---

[7] At the January 10, 2008 pretrial conference, the Court asked Spain's counsel if depositions of Odyssey representatives would assist to obtain appropriate disclosures by Odyssey. Spain's counsel responded that they were "not high on [his] list." Transcript of Preliminary Pretrial Conference at 58 (Jan. 10, 2008). In view of Odyssey's noncompliance with the Order, Spain's counsel now believes that this question should be revisited.

custodian, including for the reasons also set forth in Spain's Motion to Dismiss and For Other Relief;[8]

3) that all artifacts recovered by Odyssey be maintained in their present condition, pending full compliance with Odyssey's disclosure obligations and further order of the Court;

4) that Odyssey may not engage in any further disturbance of the vessels or sites without prior notice to Spain and approval of the Court (as also requested by Spain in opposition to Odyssey's pending motion for preliminary injunctive relief in Case 8:07-CV-0614);[9] and

5) such other relief and sanctions as the Court may deem proper.

Respectfully submitted,

Dated: February 1, 2008

s/ James A. Goold

| | |
|---|---|
| James A. Goold | David C. Banker |
| District of Columbia Bar # 430315 | Florida Bar # 352977 |
| Covington & Burling LLP | Bush Ross, PA |
| 1201 Pennsylvania Ave., NW | 220 S. Franklin Street |
| Washington, DC 20004 | P.O. Box 3913 |
| Telephone: (202) 662-5507 | Tampa, Florida 33601-3913 |
| Fax: (202) 662-6291 | Telephone: (813) 224-9255 |
| E-mail: jgoold@cov.com | Fax: (813) 223-9255 |
| | E-mail: dbanker@bushross.com |

---

[8] For the reasons also set forth in its Motion to Dismiss and in Great Lakes Exploration, LLC v. Unidentified, Wrecked & (for Salvage-Right Purposes), Abandoned Sailing Vessel, No. 04-375, 2006 WL 3370878, at *3-4 (W.D. Mich. Nov. 20, 2006), Spain submits that an arrest of a vessel may not remain in effect where an in rem plaintiff has failed to comply with the disclosure requirements of Supplemental Rules C and E or (as in this situation) with a court order that sought to remedy a non-disclosure problem.

[9] Spain also seeks to invoke the inherent authority of the Court to fashion any other appropriate relief against Odyssey as a plaintiff in violation of an Order of the Court. See Fed. R. Civ. P. 37(b)(2)(A), 41(b). Spain also incorporates by reference its opposition to Odyssey's pending motion for preliminary injunctive relief in case 8:07-CV-00614 (Dkt. 38). In opposition to that motion, Spain respectfully submitted that the Court should enter an order maintaining the status quo of the shipwreck. In view of Odyssey's persistent pattern of failure to disclose information, now in the face of a direct order of the Court, Spain urges that it is now more important than ever that Odyssey be prohibited from disturbing the site without prior notice to Spain and approval of the Court. Spain also believes that the appropriateness of such an order is reinforced by information Odyssey has disclosed to Spain, but has designated as confidential, and which Spain will seek to present to the Court at the March 5, 2008 pretrial conference or such other hearing as the Court may schedule.

## Certificate of Service

I hereby certify that I caused the foregoing Motion to Compel Compliance with this Court's Order and for Other Relief to be served on Plaintiff's counsel, Allen von Spiegelfeld, Eric C. Thiel, and Melinda J. MacConnel via the Court's CM/ECF system on February 1, 2008.

s/ James A. Goold
James A. Goold
District of Colombia Bar 430315
Covington & Burling LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 662-5507
Fax: (202) 662-6291
E-mail: jgoold@cov.com
