## Goold, James

| | |
|---|---|
| **From:** | Melinda MacConnel [mmacconnel@shipwreck.net] |
| **Sent:** | Thursday, January 17, 2008 1:43 PM |
| **To:** | Goold, James |
| **Subject:** | FW: NDA |
| **Attachments:** | Mutual NDA_05-043-two.doc |

Jim,

This is the language of the NDA. We will also want you and Jorge to sign an agreement that neither of you will disclose the name and location of the facility to anyone including other representatives of Spain.

Of course, we know that you will want to have experts view the coins and artifacts. They will be allowed access after the background checks and upon signing the same NDA.

Let me know if you have any questions.

Thanks.

*Melinda J. MacConnel, Esq.*
mmacconnel@shipwreck.net

General Counsel
Odyssey Marine Exploration, Inc.
5215 West Laurel Street
Tampa, FL 33607

813 789-6575

---

**From:** Alice V. Copeland
**Sent:** Thursday, January 17, 2008 1:37 PM
**To:** Melinda MacConnel
**Subject:** NDA

*Odyssey Marine Exploration, Inc.*
*5215 West Laurel Street*
*Tampa, FL 33607*
*Direct line: (813) 314-2554*
*Direct fax: (813) 830-6609*

EXHIBIT 7

# MUTUAL NONDISCLOSURE AGREEMENT

In consideration for the parties' agreement to participate in the activities described below, the parties agree as follows:

1. Confidential Information. In connection with discussions between Company and Participant concerning a potential business relationship (the "Project"), either party may find it beneficial to disclose to the other certain information that the disclosing party considers to be proprietary and/or confidential (hereinafter referred to as "Confidential Information"), which may include, but is not limited to, trade secrets, discoveries, ideas, concepts, know-how, techniques, designs, specifications, drawings, diagrams, data, computer programs, business activities and operations, reports, studies and other technical and business information. Confidential Information shall also include descriptions of the existence or progress of the above-described Project. Without limitation, the Company's Confidential Information also includes all proprietary and/or confidential information of the other entities comprising the Certified Collectibles Group.

2. Protection of Confidential Information. Each party acknowledges that the other party claims its Confidential Information as a special, valuable and unique asset. For itself and on behalf of its officers, directors, agents, employees, and affiliates, each party agrees that it will keep in confidence all Confidential Information and that it will not directly or indirectly disclose to any third party or use for its own benefit, or use for any purpose other than the Project, any Confidential Information it receives from the other party. Each party agrees to use reasonable care to protect the Confidential Information, and in no event less than the same degree of care to protect the Confidential Information as it would employ with respect to its own information of like importance that it does not desire to have published or disseminated. Any information exchanged by the parties and entitled to protection under this Agreement shall be identified as such by appropriate markings on any documents exchanged, or, if the disclosure has been made orally, then the disclosing party shall identify the information as "confidential" at the time the disclosure is made and, within two (2) weeks of the disclosure, shall confirm in writing the confidential nature of the oral communication.

3. Limitations on Confidential Information. Confidential Information shall not include the disclosing party's information which: (a) the receiving party knows at the time of disclosure, free of any obligation to keep it confidential, as evidenced by written records; (b) is or becomes publicly available through authorized disclosure; (c) is independently developed by the receiving party without the use of any Confidential Information of the disclosing party; or (d) the receiving party rightfully obtains from a third party who has the right to transfer or disclose it. If any portion of any Confidential Information falls within any of these exceptions, the remainder of the Confidential Information shall continue to be subject to the requirements of this Agreement.

4. Compelled Disclosure. Should the receiving party be faced with legal action to disclose Confidential Information received under this Agreement, the receiving party shall promptly notify the furnishing party and, upon the request of the latter, shall cooperate with the furnishing party in contesting such a disclosure. Except in connection with failure to discharge the responsibilities set forth in the preceding sentence, neither party shall be liable in damages for any disclosures pursuant to such legal action.

5. Return of Confidential Information. All information furnished under this Agreement shall remain the property of the furnishing party and shall be returned to it or destroyed promptly at its request together with all copies made of such information by the receiving party. All documents, memoranda, notes and other writings whatsoever prepared by the receiving party based on Confidential Information shall be destroyed upon request of the furnishing party and such destruction shall be certified in writing to the furnishing party by an authorized officer of the receiving party.

6. No License. No license under any patents, copyrights or mask rights is granted or conveyed by one party's transmitting Confidential Information or other information to the other party under this Agreement, nor shall such a transmission constitute any representation, warranty, assurance, guaranty or inducement by the transmitting party to the other party with respect to infringement of patent or other rights of others.

7. No Warranty. Each party acknowledges that the disclosing party has not made and will not make any representation or warranty as to the accuracy or completeness of its Confidential Information or of any other information provided in connection with the Project, and each agrees that the disclosing party shall have no liability resulting from the use of the Confidential Information or such other information.

8. No Commitment. Confidential Information provided by one party to the other does not, and is not intended to represent a commitment by either party to enter into any business relationship with the receiving party or with any other entity. If the parties desire to pursue business

opportunities, the parties will execute a separate written agreement to govern such business relationship.

9. Independent Development. Each party understands that the receiving party may currently or in the future be developing information internally, or receiving information from other parties that maybe similar to the furnishing party's information. Accordingly, nothing in this Agreement will be construed as a representation or inference that the receiving party will not develop products, or have products developed for it, that, without violation of this Agreement, compete with the products or systems contemplated by the furnishing party's Confidential Information.

10. Equitable Relief. Each party acknowledges that its breach of this Agreement may result in immediate and irreparable harm to the disclosing party, for which there will be no adequate remedy at law, and the disclosing party shall be entitled to equitable relief to compel the receiving party to cease and desist all unauthorized use and disclosure of the disclosing party's Confidential Information.

11. Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Florida exclusive of its choice of law principles.

12. Term and Termination. This Agreement shall commence on the Effective Date and shall continue until terminated by either party in writing. The parties' respective obligations of non-disclosure and non-use under Section 2 shall commence with respect to each item of Confidential Information on the date of disclosure of such item, and shall continue for a period of three (3) years thereafter, notwithstanding the earlier termination of this Agreement.

13. Miscellaneous. This Agreement embodies the entire understanding and agreement between the parties respecting the subject matter of this Agreement and supersedes any and all prior understandings and agreements between the parties respecting such subject matter. This Agreement shall not be amended or modified except by a writing duly executed by both parties. All notices under this Agreement shall be deemed to have been duly given upon actual receipt by the person executing this Agreement for the party entitled to such notice, at the address set forth below. Neither party may assign this Agreement without the other party's prior written consent, and any assignment in violation of this Agreement shall be void. The language of this Agreement shall not be construed for or against either party. The headings are not part of this Agreement. This Agreement may be executed in counterparts, each of which shall be an original and all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties have caused their respective duly authorized representatives to execute and deliver this Agreement.

COMPANY

By: _____

Title: _____

Date: _____

Name: _____

PARTICIPANT

By: _____

Title: _____

Date: _____

Name: _____