IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
Tampa Division
In Admiralty

ODYSSEY MARINE EXPLORATION, INC.      :
                                      :
            Plaintiff,                :                    CIVIL ACTION
                                      :
    v.                                :
                                      Case No: 8:06-CV-01685-SMD-MAP
                                      :
THE UNIDENTIFIED SHIPWRECKED VESSEL   :
its apparel, tackle, appurtenances and :
cargo located within center           :
point coordinates: 49° 25' N, 6° 00' W; :
Radius: 5 nautical miles,             :
                                      :
            Defendant.                :
            *in rem*                  :
                                      :
and                                   :
                                      :
The Kingdom of Spain,                 :
                                      :
            Claimant.                 :
_____/ :

**PLAINTIFF, ODYSSEY MARINE EXPLORATION, INC.'S RESPONSE TO
CLAIMANT KINGDOM OF SPAIN'S MOTION TO COMPEL COMPLIANCE
WITH COURT'S DISCLOSURE ORDER AND FOR OTHER RELIEF**

This Response is a similar but not identical filing being made in cases 8:07-CV-0614-SDM-MAP, and 8:06-CV-1685-SDM-MAP. **Language unique to this case has been bolded. Language unique to Case 8:07-CV-00614-SMD-MAP has been omitted from this Response.**

COMES NOW the Plaintiff, Odyssey Marine Exploration, Inc, ("Odyssey") and files this, its Response to Claimant Kingdom of Spain's ("Spain's") Motion to Compel

Dockets.Justia.com

Compliance with Court's Disclosure Order and for Other Relief (Dkt. **84**) and states as follows:

1. The facts as stated in Spain's Motion are inaccurate and misleading.

2. Odyssey had complied fully with this Court's Order (Dkt. **81**) and Protective Order Governing Disclosure Of Certain Information (Dkt. **82**).

3. In its Motion, Spain alleges that "counsel for Spain, accompanied by a representative of the Embassy of Spain, came to Tampa at Odyssey's request." (Dkt. **84** "Background".)

4. In fact, the gentlemen came to Odyssey's office at Odyssey's *invitation,* not at its request. Although Odyssey would have clearly complied with the Protective Order by simply copying and producing documentation regarding the Defendant Site, after this Court granted Odyssey's Motion for Protective Order, Odyssey offered to present the documentation in person to Spain at its offices. The offer was made in good faith and served to allow Spain the opportunity to see the photomosaic which represented images of the complete site, and for Greg Stemm to provide a detailed explanation of the methodology utilized to create the photodocumentation of the entire site. Mr. Stemm also provided an explanation of the various artifacts seen on the site and answered questions about the site characteristics and make-up. Since this photomosaic represented **many individual images**, Odyssey offered to place a grid over the photomosaic in order to allow counsel for Spain to choose areas which he found to be of particular interest. Odyssey then offered to reproduce the source photos in the highest possible resolution so that the images could be carefully evaluated. Odyssey also produced large copies of the photomosaic and other items in the size and format specifically requested by Spain in

short order so that they could be hand carried by Spain's counsel. This was all done in a spirit of cooperation, and at the time Spain's representatives expressed appreciation for the accommodations which were made in order to facilitate the transfer of this large amount of information.

5.      In its Motion, Spain alleges that "Odyssey has failed to provide a complete listing and description of the artifacts." (Dkt. **84** "Background".)

6.      **In fact, Odyssey did provide a complete listing of the artifacts recovered from the site which are within Odyssey's possession.  Odyssey's artifact list included a description of all artifacts recovered along with a photograph of each.**

7.      In its Motion, Spain alleges that "Odyssey also demanded unworkable and unreasonable conditions on the inspection of artifacts held by Odyssey in substitute custodianship." (Dkt. **84** "Background".)

8.      **In fact, this allegation is not relevant to this case.  Odyssey has offered to show Spain any and all artifacts from this site which are in its possession.  This allegation although completely false, is relevant only to artifacts in Case No. 8:07-CV-00614-SDM-MAP.**

9.      Odyssey has complied with this Court's Order of January 10, 2008. Odyssey has provided and/or offered to Spain the factual photographic and video evidence representing a complete image of the entire Defendant Site.  Specifically, during the time Odyssey hosted counsel for Spain and Spain's representative at its offices for two full days, Spain was provided the following in compliance with the Court's Order:

        a.  The exact coordinates of the Defendant Site

b. A large (3ft. x 3ft.) geo-spatially accurate photomosaic depicting the Defendant Site created by Odyssey and comprised of **many individual** photographic images

c. **Two Site Maps depicting the vessel remains and artifacts on the Site.**

d. A detailed artifact list including color photographs of all artifacts recovered

e. The opportunity to view **an hour** of video tape footage of the wreck site. This footage represented a sample of the total video taken and the balance of the footage was offered subject to determination of the most efficient method for viewing.

f. Technical assistance for viewing, stopping and forwarding the video

g. The opportunity to discuss with Greg Stemm, Odyssey's Cofounder and CEO, Odyssey's impressions of the site and the process for compilation and maintenance of site documentation

10. In addition, and subsequent to the meetings at Odyssey's offices, Odyssey agreed to the following:

a. to produce hard copy images **as requested** by Spain

b. to produce copies of a Preliminary Site Assessment prepared by Odyssey (this was shown to Spain at the meetings and was comprised mostly of materials Spain had already been given).

c. to produce a copy of the video footage shown to Spain at the meetings

These items will be provided to Spain in the coming days.

11.    In its Motion, Spain alleges that <u>Odyssey has not fully disclosed all that is necessary under the Court's Order</u>.  Spain does not state with specificity, however, what documentation or information has allegedly not been disclosed.

12.    In fact, the only documentation requested by Spain which has not been produced by Odyssey is "<u>research regarding the potential identity of a vessel or vessel.</u>"(Dkt. **81** "Category #2".)  Any research which may have been conducted by Odyssey as to any vessel which may have been the origin of the artifacts discovered would have been prepared in anticipation of litigation, and thus would be privileged.  Odyssey submits the attached Memorandum of Law regarding this sole legal issue presented by Spain's Motion.

## **MEMORANDUM OF LAW**

Based on the foregoing statement of facts, it is clear that Odyssey has complied with this Court's Order of January 10, 2008.  As stated, Odyssey has provided Claimant, Spain, with all of the relevant factual evidence it has requested regarding the Defendant Site.

Spain has not stated with specificity the basis for its Motion to Compel Compliance with Court's Disclosure Order and for Other Relief other than to allege that despite two full days of disclosure and production, Odyssey has failed to comply with the Court's Order.  The Motion requests this Court to direct "disclosure of all documents or other information relating to or discussing the actual or potential identity of the vessels, including research on the history, location and contents of the vessels, as well as all studies, reports or other information concerning observations of the sites and their artifacts in relation to the actual or potential identity of the vessels."

Odyssey has produced or offered all factual evidence it has regarding the Defendant Site in response to this Court's Order. Pursuant to the Federal Rules of Civil Procedure, "a party must provide…a copy of, or description by category and location of, all documents, data compilations, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claim or defenses, unless solely for impeachment." Fed. R. Civ. Pro. R. 26(a)(1)(B).

Odyssey has done so in good faith and without any Rule 26 disclosures being made by Spain. The sole legal issue which is raised by Spain's Motion is whether any research Odyssey has prepared, in anticipation and for the purpose of litigation, concerning **the** potential **identity** of the **vessel** must be produced subject to the Order. Odyssey should not be required to produce such research for the following reasons:

A.    The Order is intended to cover Rule 26 disclosures by Odyssey and provide Spain with proper notice to validate its claim, if possible.

B.    The Order does not require Odyssey to produce research, speculative conclusions or opinions.

C.    Odyssey's research prepared in anticipation and for the purpose of litigation is privileged.

D.    Such research may or may not prove to be relevant as to the potential identity of **the** vessel.

\* \* \* \* \*

A.    The Order is intended to cover Rule 26 disclosures by Odyssey and provide Spain with proper notice to validate its claim, if possible.

This Court's Order was intended to expedite Rule 26 disclosures by Odyssey. Rule 26 states as follows:

"...parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter." Fed. R. Civ. Pro. R. 26(b)(1).

On January 10, 2008, this Court held a Preliminary Pretrial Conference at which the Court stated that the Protective Order would help further along the Rule 26(a) discovery process and help Spain determine if it will still be interested in litigating the matter for all three cases. (Transcript 43-44.)

Rule 26 disclosures are intended to provide a party with initial notice of evidence to be presented at trial. In good faith and in an effort to expedite the discovery process, Odyssey has gone beyond the requirements of Rule 26 in providing Spain with evidence regarding the Defendant Site. Spain's request for Odyssey's privileged work product and/or speculation relating to the site is merely a "fishing expedition" made in an effort to gain some kind of strategic advantage in this litigation or, more ominously, in subverting Odyssey operations in regard to other sites. Odyssey has provided Spain with all of the same information to which it has had access relevant to the Defendant Site. It is now incumbent upon Spain to make its own Rule 26 disclosures and state the basis for its claim in this action.

B.  The Order does not require Odyssey to produce research, speculative conclusions or opinions.

The Order stated that Odyssey must provide Spain with (1) the exact location of the vessel or vessels; (2) any information material to the identification of the vessel or vessels; (3) a listing and description of the artifacts uncovered to date; and (4) any

photographs or videotapes of the site or vessel.  Order (Dkt. 81).  This does not cover

privileged, proprietary research conducted by Odyssey, or contracted by Odyssey, in

anticipation of litigation.  Fed. R. Civ. Pro. R. 26(b)(1); Also see, Fed. R. Civ. P.

26(b)(3).

Any and all background sources used in Odyssey's research are available to the

public.  Any speculation or conclusions reached as a result of that research are

discoverable only to the extent that those conclusions and the experts who developed

them are to be called to testify at trial.  (See "C" below.)  As Odyssey has informed

Spain, it has not made a determination of experts, if any, who may be called at trial.

Expert conclusions are certainly not encompassed by Rule 26.

This Court's Order does not require Odyssey to produce research it has developed

for the purpose of litigation.  Odyssey has thus fully complied with all requirements of

the Order.

C.    Odyssey's research prepared in anticipation and for the purpose of
       litigation is privileged.

Even if research or speculations drawn from research were contemplated by the

Order, all of the research that Odyssey has done regarding a potential vessel identity has

been prepared in anticipation of and for the purpose of litigation and is therefore,

privileged and not subject to discovery.  An exception to this, as stated, would be if

Odyssey intends to call experts to testify at trial who have relied upon that research.

Again, Odyssey has not made a determination regarding whether it will retain experts or

present experts at trial.

Rule 26(b)(3) of the Federal Rules of Civil Procedure states the grounds that entitle a party to work product immunity. Fed. R. Civ. P. 26. The pertinent part of this rule provides:

> "A party may obtain discovery of documents and tangible things otherwise discoverable ... and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation. Fed. R. Civ. P. 26(b)(3).

It is well established that, absent a required showing of need and undue hardship to obtain the substantial equivalent of another party's work product by other means, a party's work product will remain immune from discovery. Also well established is the principle that the unsworn analysis of a party's attorney and/or a bare assertion of need and undue hardship to obtain the substantial equivalent are insufficient to satisfy this showing. Id. It also has been indicated that the showing of need encompasses a showing of diligence by the party seeking discovery of another party's work product. *AARP v. Kramer Lead Mktg. Group*, 2005 U.S. Dist. LEXIS 36970 (D. Fla. 2005); Also see,

*Hodges, Grant & Kaufmann v. United States Government, Dep't of Treasury*, IRS, 768
F.2d 719, 721 (5th Cir. 1985).

Federal Courts in Florida and Florida State Courts interpreting similar discovery
rules have held that to show need, a party must present testimony or evidence
demonstrating the material requested is critical to the theory of the requestor's case, or to
some significant aspect of the case. *Procter & Gamble Co.*, 462 So. 2d 1188. Once the
trial court knows the requestor's theory as to why the items are needed and how the
material could potentially help the requesting party's case, the trial court should then
conduct an in camera review. Id. During this review, the trial court can evaluate whether
the contested materials provide the requisite evidentiary value alleged by the requesting
party, and determine whether the requested materials are substantially similar to materials
already available. Id. In most situations, mere inconsistency alone does not establish the
requisite need. Id. A trial court would usually order a protective order on outside
research, as opposed to research done in-counsel, to minimize the harm to the producing
party, and a protective order is sufficient to satisfy the "protective measures"
requirement. An in camera proceeding is necessary before a court orders that a trade
secret be revealed or described with reasonable particularity. *Del Monte Fresh Produce
Co. v. Dole Food Co.*, 148 F. Supp. 2d 1322, 1323, 1323-24 (D. Fla. 2001)

Clearly, there has been no showing on the part of Spain, or even a statement that
Spain would suffer undue hardship by having to do its own research. The factual
information regarding this site which has been provided or is otherwise available to Spain
is no more or less than the information that has been available to Odyssey in its efforts to

determine the identity of the site, and Spain should be able to draw its own conclusions based on these facts and the research which it undertakes.

Odyssey has provided Spain with more than enough information and documentation to form an opinion as to whether there could be a valid basis for its claim.

D.    <u>Research may or may not prove to be relevant as to the potential identity of a vessel which may have been the origin of the coins and artifacts discovered at the Defendant Site.</u>

Finally, just because Odyssey may have researched potential targets for its search project or potential vessels that **could be the vessel discovered at this site**, that research is not necessarily related in any way to the actual Defendant Site. Even if the research requested were not privileged, Odyssey's research would not necessarily fall under the description of documents to be produced as enumerated in the Court's Order. Certainly, if Odyssey were to uncover evidence which confirmed a particular vessel as being related to the Defendant Site, Odyssey would produce such evidence. In this case, no such evidence exists. Spain may be disappointed that Odyssey's disclosures did not reveal some supposed "smoking gun" of irrefutable evidence in favor of a Spanish claim in this case. But Spain's disappointment – or its desire to seek some strategic advantage in this case, unrelated to the requirements of Rule 26 disclosure – are not good and sufficient reason to require Odyssey to produce that which does not exist.

Odyssey has fully complied with the Court's Order of January 10, 2008 and respectfully requests this Court to deny Spain's Motion to Compel Compliance.

Respectfully submitted,

Dated:  February 8, 2008

s/ Allen von Spiegelfeld
Allen von Spiegelfeld – FBN 256803
avonsp@fowlerwhite.com
Eric C. Thiel – FBN 016267
ethiel@fowlerwhite.com
FOWLER WHITE BOGGS BANKER P.A.
P.O. Box 1438
Tampa, Florida  33601
(813) 228-7411
Facsimile:  (813) 229-8313

s/ Melinda J. MacConnel
Melinda J. MacConnel – FBN 871151
Odyssey Marine Exploration, Inc.
5215 West Laurel Street
Tampa, FL  33607
(813) 876-1776, ext. 2240
Fax:  (813) 830-6609
E-mail:  mmacconnel@shipwreck.net

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 8, 2008, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to James A. Goold, Covington & Burling LLP, 1201 Pennsylvania Ave., NW, Washington, DC 20004; and David C. Banker, Bush Ross P.A., 220 S. Franklin Street, P. O. Box 3913, Tampa, FL 33601, *Attorneys for Claimant, Kingdom of Spain*; and Frank D. Butler, Law Offices of Frank D. Butler, P.A., 10550 US Hwy 19 North, Pinellas Park, FL 33782, *Attorneys for Intervenor Plaintiff.*

s/ Allen von Spiegelfeld
Allen von Spiegelfeld – FBN 256803
avonsp@fowlerwhite.com
Eric C. Thiel – FBN 016267
ethiel@fowlerwhite.com
FOWLER WHITE BOGGS BANKER P.A.
P.O. Box 1438
Tampa, Florida 33601
(813) 228-7411
Facsimile: (813) 229-8313


s/ Melinda J. MacConnel
Melinda J. MacConnel – FBN 871151
Odyssey Marine Exploration, Inc.
5215 West Laurel Street
Tampa, FL 33607
(813) 876-1776, ext. 2240
Fax: (813) 830-6609
E-mail: mmacconnel@shipwreck.net


Attorneys for Plaintiff