UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN ADMIRALTY

ODYSSEY MARINE EXPLORATION, INC.

    Plaintiff,                          CIVIL ACTION

    v.

                                                     Case No: 8:06-CV-01685-SDM-MAP

THE UNIDENTIFIED SHIPWRECKED
VESSEL, its apparel, tackle, appurtenances
And cargo located within center point
Coordinates:     49° 25' N, 6º 00' W;
Radius: 5 nautical miles

    Defendant.
    *in rem*

THE KINGDOM OF SPAIN,

    Claimant.
_____/

KEITH BRAY,

    Intervening Plaintiff/Claimant,
    v.

ODYSSEY MARINE EXPLORATION, INC.,

    Defendant.
_____/

**MOTION FOR RECONSIDERATION OF ORDER GRANTING MOTION TO COMPEL AND SANCTIONS.**

{W0054217.PDF}

Comes now Odyssey Marine, by and through its undersigned counsel, and respectfully requests this Honorable Court to reconsider its Order compelling the production of documents and granting sanctions entered on October 31, 2008, as well as the motion to compel granted on October 16, 2008.

It is apparent from the tone of this Honorable Court's orders that the impression of the Court is that Odyssey in some way is trying to avoid legitimate discovery and/or disregard the Court's rules and instructions. Nothing could be further from the truth. Odyssey has been attempting to resolve this case amicably and, at least as it relates to Spain, without the need of a trial. This effort has been made pursuant to the Court's instruction in open court. On page 27 of the June 9, 2008, hearing transcript, the Court stated:

"Isn't it more appropriate for a resolution between Spain and Odyssey as to the recovery of these items in an out-of-court settlement? I mean isn't that the wisest course and the most efficient course to, to…..take."

On the same page, even Mr. Goold agreed that an out-of-court settlement would be the wisest resolution. Attached hereto are a series of emails which show why Odyssey did not file responses to the request for production as would normally be required by the Rules of Civil Procedure, Rule 34. The failure to respond was not in any way a slight of the Court's authority or the rules of the Court, but, in fact, was due to Odyssey's good faith efforts to resolve this matter without the need for further discovery and the associated costs to both parties. In hindsight, it is obvious that undersigned counsel erred in not notifying the Court of the ongoing efforts to reach a settlement and requesting the Court for more time to respond to the discovery requests while the settlement negotiations were ongoing. This, however, was not the fault of Odyssey, but of undersigned counsel. In the time undersigned counsel has practiced in the Middle District of Florida, he has never experienced a situation in which good faith negotiations to resolve the case and to stay discovery pending a determination if a resolution

{W0054217.PDF}

is possible resulted in opposing counsel simply moving to compel responses without warning. It is all the more surprising when opposing counsel asserts that the other side had ignored the Federal Rules and the time limitations set forth therein. As previously stated, that is not an excuse since it is apparent now that undersigned counsel should have kept the Court more fully advised of what was transpiring, but Odyssey and its shareholders should not be penalized for the action or inaction of the undersigned.

Attached hereto as Exhibit A is a letter from Mr. Goold to the undersigned stating that delaying discovery could not be continued unless the undersigned could confirm the position being taken by Odyssey regarding the trial involving the title to artifacts. Immediately thereafter, undersigned responded in Exhibit B with a statement that the only artifacts that Odyssey was attempting to obtain title to were those that had been presented to Mr. Goold of which he had full knowledge. None of these artifacts involved coins or any artifact in any way related to Spain. Within two days of confirming that Odyssey was not trying to obtain title to anything other than the artifacts that are within the Middle District of Florida, which do not include any Spanish coins, Mr. Goold sent the undersigned a letter on October 1, 2008, the day the undersigned left for Newport, Rhode Island. Mr. Goold was clearly aware that the undersigned was not going to be available, as he states in his letter. Before Odyssey could respond to Mr. Goold's demand, the Motion to Compel was filed. Mr. Goold never called the undersigned nor in any way attempted to obtain a response from the undersigned, regarding his letter of October 1, 2008 (or, knowing the undersigned was on vacation, from Odyssey's General Counsel).

Opposing counsel understood at the time he filed his motion to compel that Odyssey objected to certain portions of his request for production. That is evidenced by Exhibit 3, the October 1, 2008, letter wherein he warns that he will file a motion to compel and notes that Odyssey has raised objections. At the time the undersigned received the motion to compel, he had just completed a joint motion for a preliminary pre-trial conference in order to discuss the settlement proposals and to try to

provide the Court with a simplified roadmap for the trial. Neither Mr. Goold nor Mr. Butler ultimately agreed to the joint motion, and Judge Merryday rejected our motion for the preliminary pre-trial conference. However, this action was taken again to try to comply with the Court's clear instructions to try to reach a settlement.

There is no reason at this time for there to be a dispute between Spain and Odyssey as to the Defendant Site in this case. Not one Spanish coin or artifact with any connection to Spain has been recovered, so Spain has no interest in the artifacts that are in the Middle District of Florida. Mr. Goold has acknowledged in open court that their only interest is in the cargo of silver coins that was carried on the MERCHANT ROYAL. Whether the this site is or is not the MECHANT ROYAL is irrelevant as to the artifacts that are presently in the Middle District and which are the only items for which Odyssey can claim title at this time. Odyssey has even offered Spain the right to withdraw from the case at this time with an open invitation to reenter the case if additional artifacts are found with assurances that they will be notified immediately if there are anything other artifacts found. See Exhibit 4.

This Honorable Court's Orders of October 16, 2008, and October 31, 2008, would require Odyssey to produced research and data which they have spent millions of dollars to acquire. Moreover, any party receiving that research will learn information about the site which is the valuable property of the shareholders of Odyssey Marine Exploration. Once certain pieces of information concerning the location of a shipwreck are learned through reviewing these documents, it is impossible to "unlearn" them, or not take them into account when discussing the search for this shipwreck with others. Odyssey has spent millions of dollars in developing this research and Odyssey's management has a fiduciary responsibility to Odyssey's shareholders to protect this information. The harm that could be done to Odyssey's shareholders, with no reasonable recourse against entities that might benefit from Odyssey's

research, makes it incumbent upon Odyssey's management to take every possible precaution to protect the assets of the company.

The cases cited by the Kingdom of Spain to support the argument that Odyssey waived its right to object due to late filing of their response to the request for production do not support that position. Odyssey did not wait months after the response to the request for production was due as was the case in Third Party Verification, Inc. v. Signature Link, Inc., 2007 W.L. 1288361 (Middle District of Florida 2007), but was in the midst of trying to negotiate a settlement whereby discovery would not be necessary when the motion to compel was filed. Odyssey did not disregard the rules of discovery; they were working to resolve the case without the need for further Court intervention. Odyssey had previously produced to the Kingdom of Spain photographs of the wreck site, photo-mosaics of the wreck site, an artifact list with photographs and a videotape of the site. It is respectfully submitted that to take Odyssey's right to object to the production of research that has cost them millions of dollars and is the backbone of their company's proprietary assets due to undersigned counsel's failure to notify the Court of the ongoing settlement negotiations and to try to obtain a court-ordered extension as opposed to the informal extensions that had been obtained, has the potential to harm the company in a manner which far outweighs any detriment that may have accrued to Spain or Spain's counsel.

In the case of Dow Chemical v. Allen, 672 F2d. 262, 278 (7th Cir. 1982), the court was faced with a similar situation where a demand had been made for research. The district court ruled that production of such research would be irreversibly harmful to the owner of the research and therefore would not be permitted. The Seventh Circuit pointed out that a protective order might reduce the likelihood of public disclosure, "but it could not have eliminated that risk," Perhaps the most important aspect of the Dow Chemical case as it relates to the present case is the lack of relevance of the research to the issues before the Court. If Odyssey had buckets of silver coins and the Kingdom of Spain could

argue that the coins were their silver coins, there may be relevance to the research. However, there is nothing in the Middle District that the Kingdom of Spain can argue belongs to them if, in fact, the vessel that was found was the MERCHANT ROYAL, which is the very research they are looking for.

Lastly, if the Court refuses to reconsider the orders, it respectfully submitted that the time frame that has been set forth is impossible to meet. The research consists of many pages of documentation that need to be copied, organized and collated in a reasonable manner. The said research is not all centrally located and would have to be accumulated from many different files, both physical and on computers. Additionally, any other documents that have been requested, which it is respectfully submitted are also irrelevant, would have to be accumulated. Odyssey has produced almost all of the documents in its possession except for the research. However, to ensure that Odyssey is in compliance with the Court's order, it would require a minimum of two additional weeks to accumulate the documentation.

Respectfully submitted,

s/_____
Allen von Spiegelfeld – FBN 256803
avonsp@bankerlopez.com
Eric C. Thiel – FBN 016267
ethiel@bankerlopez.com
BANKER LOPEZ GASSLER P.A.
501 E. KENNEDY BLVD.
SUITE 1500
(813) 221-1500
Facsimile: (813) 222-3066
s/ Melinda J. MacConnel
Melinda J. MacConnel – FBN 871151
Odyssey Marine Exploration, Inc.
5215 West Laurel Street
Tampa, FL 33607
(813) 876-1776, ext. 2240
Fax: (813) 830-6609
E-mail: mmacconnel@shipwreck.net

Attorneys for Plaintiff

{W0054217.PDF}

**CERTIFICATE OF SERVICE**

       I HEREBY CERTIFY that on November 4, 2008, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to James A. Goold, Covington & Burling LLP, 1201 Pennsylvania Ave., NW, Washington, DC  20004; and David C. Banker, Bush Ross P.A., 220 S. Franklin Street, P. O. Box 3913, Tampa, FL  33601, *Attorneys for Claimant, Kingdom of Spain,* and Frank D. Butler, Law Offices of Frank D. Butler, P.A., 10550 US Hwy 19 North, Pinellas Park, FL  33782, *Attorneys for Intervenor Plaintiff.*

 

Allen von Spiegelfeld – FBN 256803
avonsp@bankerlopez.com
Eric C. Thiel – FBN 016267
ethiel@bankerlopez.com
BANKER LOPEZ GASSLER P.A.
501 E. KENNEDY BLVD.
SUITE 1500
(813) 221-1500
Facsimile:  (813) 222-3066


s/ Melinda J. MacConnel
Melinda J. MacConnel – FBN 871151
Odyssey Marine Exploration, Inc.
5215 West Laurel Street
Tampa, FL  33607
(813) 876-1776, ext. 2240
Fax:  (813) 830-6609
E-mail:  mmacconnel@shipwreck.net

Attorneys for Plaintiff