IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
IN ADMIRALTY

**ODYSSEY MARINE EXPLORATION, INC.**,

        Plaintiff,

vs.

        CASE NO.: 8:06-CV-01685-T-23MAP

**THE UNIDENTIFIED SHIPWRECK VESSEL**,
its apparel, tackle, appurtenances and
cargo located within center point
coordinates: 49° 25' N, 6° 00' W;
Radius: 5 nautical miles

        Defendant,
        i*n rem*

and

**THE KINGDOM OF SPAIN**,

        Claimant,

and

**KEITH BRAY**,

        Intervening Plaintiff,

vs.

**ODYSSEY MARINE EXPLORATION, INC**.

        Defendant.
_____/

**INTERVENOR, KEITH BRAY'S, RESPONSE
TO ODYSSEY MARINE'S MOTION TO BIFURCATE**

COMES NOW the Intervening Plaintiff, Keith Bray, by and through the

1

undersigned attorney, and files the following Response To Odyssey Marine's Motion To Bifurcate this case, and Intervenor Bray states as follows:

1. Intervenor-Bray filed this action against Defendant-Odyssey for fraudulent inducement, rescission and mutual mistake after Odyssey induced Bray to change his position with regard to payment from the recovery of artifacts from the instant wreck site.

2. The Court is aware of the procedural history of this case. Intervenor will not repeat it here. Suffice it to say that the majority of time spent by the parties in this case has not been spent in conducting discovery. Intervenor-Bray's observations of the case has been that Odyssey Marine's candor—or perhaps full disclosure—to the Court has appeared to be less than admirable. This pattern by which Odyssey has handled its affairs is not lost on Bray. It is notable that one of Bray's claims against Odyssey Marine is that it fraudulently induced Bray to sell out his claims to Odyssey Marine when Odyssey represented they had found nothing using Bray's maritime research.[1]

3. Odyssey Marine now comes to the Court, seeking to have the case bifurcated.

4. At the same time Odyssey Marine seeks bifurcation, Odyssey Marine has repeatedly told this Court that it does not know the identity of the vessel that is the subject of this civil action. Odyssey also represents, and would have Bray believe: that there is no timetable for return to the site, and that the

---

[1] "Bray in no way impugns the veracity of Odyssey counsel, and of course has no way to know of what Odyssey's counsel is informed."

only artifacts which have been located from the site are a couple of bottles that are apparently here in the Tampa area. (This is a different prospect from the idea that this is all of the artifacts of which Odyssey is *aware* from the site.) Odyssey would also, by implication, be asking Bray to believe that Odyssey had no knowledge of the wreck site, or that discovery of it was imminent, at the time Odyssey sought to "buyout" Bray's position.

5. That at all times Odyssey Marine in Court and to Bray individually, has continued to discuss the case (i.e., the wreck site) as though it has little to no value at all. However, if this was the case, it would be simple enough for Odyssey Marine to merely re-instate Bray's (7 ½) percentage and inform him that 7 ½ percent of nothing, is nothing.

6. Furthermore, it would be easy enough for Odyssey Marine to falsify information, and to attribute artifacts to another wreck, or to hide artifacts, until it was more propitious for Odyssey Marine to announce discovery of artifacts and bring them to market. This is not an unknown phenomenon in the salvage and antiquities industry. Bray does not speak out of school in this context, and expects to bring out evidence that this is not the first occasion Odyssey has sought to buyout a researcher.

7. Because of the foregoing information and because of Odyssey's course of conduct—in this Court and outside of it--Bray must proceed with great caution.

8. Bray is uncertain how the case can possibly be resolved unless it is established: what is the identity of the vessel at the site, when did Odyssey

discover the site, what information was used to discover the site, and what artifacts are at the site. It is very difficult indeed to believe that Odyssey continues to litigate this matter with Bray <u>and</u> the Kingdom of Spain over a couple of glass bottles.

9. It appears Odyssey wants to limit the proceedings to whether Odyssey and Bray signed a contract to "buyout" Bray's position. That part of the inquiry is not so much in question. The question is at the time of the "buyout" what was known to Odyssey and what did Odyssey represent to Bray. Did Odyssey know or have reason to believe it had found the Merchant Royall?

10. The progression of events appears to be that Odyssey informed Bray that Odyssey had located nothing of value using Bray's research, and had not located the Merchant Royall. Most certainly Odyssey Marine conveyed to Bray that Odyssey had dim prospects of finding anything using Bray's research. Shortly after representing this information to Bray—and convincing Bray to sell his percentage—Odyssey announced the find which it stated on its website to possibly be the Merchant Royall.

11. It is for these reasons that Bray approaches Odyssey's bifurcation discussion with real reservations.

12. Perhaps the last question (what artifacts are at, or believed to be at, the site) could be considered a bit more secondary than the other questions; however, only slightly more secondary. Intervenor-Bray envisions that in practicality discovery will necessarily turn to: "At the time of the *buyout* what artifacts did Odyssey know to be present, or believe to be present?" The issue is

4

intractably intertwined with the circumstances surrounding the purported buyout of Bray's position. Bray has pled in his Intervening Complaint (paras. 11-24) that Odyssey fraudulently induced him to sell his position to Odyssey. Bray further alleges that the reason Odyssey induced him to sell was because Odyssey either had evidence of artifacts or believed artifacts to be at the wreck site.

13. In this respect it is difficult to see how the case can be bifurcated. Odyssey's conduct and representations with Bray are tied to what information Odyssey actually had at the time they were deal-making with Bray. This is more than whether Odyssey can produce a paper with Bray's name on it; and, if this were the end of the inquiry, the case would be done already. But, Odyssey cannot rule out or exclude its conduct and knowledge as it related to its dealings with Bray.

14. Perhaps Odyssey is correct in one respect. The case *may* be bifurcated as between Bray and Odyssey's standing and that of Spain. In other words, if Spain is entitled to any and all cargo located—a proposition which does not seem likely to happen based upon what is known historically about the Merchant Royall—then both Bray and Odyssey stand to lose equally. (If Spain prevailed to entitlement on the cargo, Bray would still claim entitlement to a salvage award under maritime law.) Bluntly, if Spain wins, both Odyssey and Bray lose. But even this outcome would seem to be hinged upon ultimately demonstrating the identity of the vessel and/or its cargo.

15. Even in this respect it seems very difficult to bifurcate anything without ultimately learning what it is Odyssey knows about the site. It is really

this proposition—<u>what does Odyssey know about the site</u>—that has been at the foundation of most questions, issues, and legal maneuverings in this case. At one point, this Court sent special Interrogatories to Odyssey designed to determine that very question: what does Odyssey know about the site. Bray's interpretation was that those answers were less than clear or informative.

16. However, Bray is also confident that with the right Request For Production, Request For Admissions, Interrogatories, and depositions, that Bray can determine what Odyssey knows about the site. Under the Federal Rules of Civil Procedure, as applicable to all civil cases,--and subject to the Middle District's standing confidentiality strictures—Intervenor-Bray is confident he will "discover" what Odyssey knew and when they knew it.

17. For this reason Bray is opposed to bifurcation as outlined by Odyssey Marine in its Motion.

WHEREFORE, the Intervenor-KEITH BRAY, requests that if the Court bifurcates this case, that It not limit Bray's rights to discovery, and that in any event the Court allow Bray and this civil action to proceed whether bifurcated or not, and for any other relief deemed appropriate by the Court.

## **MEMORANDUM OF LAW**

Fundamentally the Court has the ability to govern and control its docket. Bray contends that bifurcation of the case, as proposed by Odyssey, will provide little benefit. Instead, the case should proceed forward with discovery, without delay.

## CONCLUSION

For the foregoing reasoning, the Court should deny the requested relief by Odyssey Marine.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 4, 2009, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: **Allen von Spiegelfeld, Esq.,** Fowler White Boggs Banker P.A., P. O. Box 1438, Tampa, FL 33601; **Melinda J. MacConnell, Esq.**, 5215 West Laurel Street, Tampa, FL 33607; **James A Goold, Esq.**, Covington & Burling LLP, 1201 Pennsylvania Ave., NW, Washington DC 20004; and **David C. Banker, Esq.**, **J. Carter Andersen, Esq.**, **Keith D. Skorewicz, Esq.**, Bush Ross P.A., 220 S. Franklin Street, P.O. Box 3913, Tampa, FL 33601.

Respectfully Submitted,

/s/Frank D. Butler
Frank D. Butler, Esquire
Fla. Bar No. 940585
10550 U.S. Highway 19 North
Pinellas Park, FL 33782
Phone: 727-399-2222
Fax: 727-399-2202
Attorney for Intervening Plaintiff
fdblawfirm@aol.com