IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
IN ADMIRALTY

ODYSSEY MARINE EXPLORATION, INC. :
:
    Plaintiff, : CIVIL ACTION
v. :
: Case No: 8:06-CV-01685-SDM-MAP
:
THE UNIDENTIFIED SHIPWRECKED VESSEL :
its apparel, tackle, appurtenances and :
cargo located within center :
point coordinates: 49° 25' N, 6° 00' W; :
Radius: 5 nautical miles, :
:
    Defendant. :
    *in rem* :
and :
:
The Kingdom of Spain, :
:
    Claimant. :
_____/ :
:
KEITH BRAY, :
:
    Intervening Plaintiff/Claimant, :
v. :
:
ODYSSEY MARINE EXPLORATION, INC., :
:
    Defendant. :
_____/

**PLAINTIFF ODYSSEY MARINE EXPLORATION, INC.'S MOTION
FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Odyssey Marine Exploration, Inc. ("Odyssey"), by and through its undersigned counsel, hereby moves this Court to grant partial summary judgment in favor of Odyssey pursuant to Federal Rule of Civil Procedure 56(a), as to Odyssey's claim for title to the items recovered from the Defendant site. The Defendant in this case is an unidentified shipwreck together with its apparel, tackle, appurtenances and cargo which lies in the Atlantic Ocean outside the jurisdiction of any state. The *res* currently subject to the jurisdiction of this Court consists solely of the objects recovered from the site thus far by Odyssey, to which Odyssey has been granted title and ownership by the United Kingdom Receiver of Wrecks. Odyssey now seeks acknowledgment by this Court of the U.K. award and a consistent judgment awarding title to the subject artifacts.

This Motion and the issues raised herein are the topic for discussion at the Status Conference scheduled for November 9, 2009, and Odyssey welcomes the opportunity to provide supporting oral arguments at that time.

## **PROCEDURAL HISTORY AND BACKGROUND**

Odyssey's Verified Complaint (Doc. 1) was filed on September 13, 2006. Odyssey was appointed Substitute Custodian of the artifacts from the Defendant Shipwrecked Vessel on September 15, 2006 (Doc. 5). The arrest warrant was served by the U.S. Marshal on September 18, 2006 (Doc. 8). On October 30, 2006, a preliminary injunction (Doc. 19) was issued in which the Court preliminarily appointed Odyssey "as the exclusive finder in possession of the shipwrecked vessel . . . ." (Doc. 19 at 1.)

On May 30, 2007, the Court granted final judgment awarding Odyssey "title to the unidentified shipwrecked vessel, its apparel, tackle, appurtenances and cargo . . . ." (Doc.

23.) The same date, the Kingdom of Spain ("Spain") filed a verified claim (Doc. 24). Pursuant to Spain's unopposed motion to vacate judgment filed on June 15, 2007 (Doc. 28), the Court vacated the default judgment on August 17, 2007 (Doc. 43). Odyssey filed an amended complaint on the same date (Doc. 37).

Intervening plaintiff Keith Bray ("Bray") moved to intervene on October 19, 2007 (Doc. 58), and the motion was granted on December 3, 2007 (Doc. 72). The intervenor complaint (Doc. 74) was filed on December 20, 2007.

Discovery closed on October 23, 2008. *See* Scheduling Order ¶ 1 (Doc. 118); Order on Motion (Doc. 135). Odyssey produced over 1200 documents during the discovery period, as well as videos and photographs of the site and artifacts.

A status conference was held on January 8, 2009, wherein the adjudication of ownership rights to the recovered *res* was discussed at length (Status Conference Transcript, January 8, 2009 ("January 2009 Transcript") at 12 ff.), with Spain asserting that such adjudication was "premature" as there was no evidence as to "whose they are." (January 2009 Transcript at 23:9.) *See also* Clerk's Minutes (Doc. 144) ("Odyssey asks the Court to adjudicate its rights to the *res* already salvaged.")

Counsel for Odyssey also informed the Court that Odyssey did go back to the site in 2008, but "did not find anything that is determinative . . . of the identity of the vessel." (January 2009 Transcript at 28:8.)

As part of the 2008 expedition, the site was re-mapped to measure how it was changing due to natural forces and human activity. Artifacts discovered were examined, photographed and measured *in situ*. No diagnostic artifacts were discovered and only an

elephant tusk was brought to the surface in order to examine and document it thoroughly.. This tusk was returned to its position on the site.

During the most recent case status conference, held on June 23, 2009, Odyssey's counsel noted that Odyssey returned to the site in late May, 2009 (Status Conference Transcript, June 23, 2009 ("June 2009 Transcript") at 4:17), with the objective of locating and possibly recovering further diagnostic artifacts, including a cannon, that may assist with the identification of the vessel at the site. Technical issues prevented recovering any cannon at that time, however, and there were tentative plans to return to the site once the appropriate equipment was operational. Also at the May, 2009 status conference, Odyssey presented argument in support of its motion to bifurcate the contract claim of Keith Bray. That motion was denied. (Doc 152.)

The Court ordered a report to be filed by November 6, 2009 (Clerk's Minutes, Doc. 150), regarding activities at the site. The report is attached hereto as Exhibit A. During the May 2009 expedition, Odyssey used a new technology to locate additional artifacts, including nine additional cannon; however none of these artifacts could be dated *in situ* or were otherwise diagnostic. These items were carefully examined, measured and photographed *in situ* for further analysis. No artifacts were retrieved during this expedition.

Following careful analysis of the various data gathered during the expedition, it was determined that recovery of a cannon would not provide reliable evidence regarding the identity of a vessel, beyond evidence already obtained through other recovered artifacts. It was determined that the cannon on the site would not have been identifiably unique, they were very poorly preserved, and some of the cannon appear to have been carried as cargo.

Furthermore, the fragility of the cannon is demonstrated by at least one cannon being broken *in situ* by apparent fishing activity since Odyssey's previous expedition to the site in 2008.

The attached report demonstrates that the identity and origin of the vessel associated with the Defendant Site cannot be confirmed at this time.

## MEMORANDUM OF LAW

There are two claimants in this case: the Kingdom of Spain and Keith Bray. Bray has not entered any claim at all as to the Defendant site, and Spain has not entered any claim to the artifacts recovered from the site. Both Spain and Bray have failed to demonstrate the basis for a claim to the Defendant, in general, much less the subject *res*, despite Odyssey's production of over 1200 pages of documents as well as video and photographs. Regardless of the validity of these parties' speculative claims, both hinge on the identification of the Defendant vessel as the *Merchant Royal* and neither pertain to the *res* at issue.

Odyssey acknowledges that the *Merchant Royal* was believed to be in the general area where the subject site was found.[1] The identity of the vessel at the subject site, however, remains elusive, and may never be confirmed, given the destructive natural and human forces at work on the sea floor. Regardless of the identity of the vessel, no party to this case has entered a claim as to the *res* actually before the Court, described in the Archaeological Finds Sheets attached hereto as Exhibit B.

**A.** **Salvage vs. Finds.** United States maritime law has developed two distinct doctrines to deal with the ownership and disposition of sunken shipwrecks (or, for that

---

[1] Odyssey's general business practice in searching for shipwrecks is to define a search area based on known sinkings and established sailing routes, with the highest probability of finding a wreck.

matter, any property lost at sea). The first is *salvage*. A claim under salvage proceeds on the assumption that the property lost at sea has an identifiable owner, and that the property has not, in fact, been abandoned by that owner. A salvor recovers property in marine peril, with the intent of returning it to the original owner. The salvor then receives an award based upon its risk and efforts. Such an award may either be (1) negotiated by agreement with the original owner (as in any salvage contract) or (2) determined by a salvor placing an *in rem* lien against recovered property and seeking an equitable award from an admiralty court. Salvors of historic shipwrecks, especially those that were difficult to locate, have received very generous rewards from the admiralty courts, often times in excess of 90% of the value of the property. *See, e.g., Columbus-America Discovery Group v. Atlantic Mutual Ins. Co.*, 974 F.2d 450 (4th Cir. 1992), *cert. denied*, 113 S.Ct. 1625 (1993). *See also The Blackwall*, 77 U.S. (10 Wall.) 1, 13-14 (1869) (establishing six factors to determine size of salvage award).

Admiralty's law of *finds* proceeds under a different set of assumptions: that the property lost at sea has been abandoned by its original owner, and/or has no owner at all. A finder receives title to property lost at sea by proving it has been abandoned and by reducing the property to its possession and control. Admiralty courts will, under such circumstances, award title and ownership of the property to the finder, title which is good as against any other claimant in the world. *See, e.g., State ex rel. Bruton v. Flying "W's" Enterprs.*, 160 S.E.2d 482, 488 (N.C. 1968).

**B.     Odyssey's Claim Under Law of Finds.** Count I of Odyssey's Amended Complaint (Doc. 35), arises from Supplementary Admiralty Rule D and general maritime

law. The general maritime law of finds gives title to a person who has reduced to possession an object which has been abandoned at sea. Courts in this country have given consistent recognition to the doctrine, and have awarded title to a finder in admiralty when warranted by the facts. *See, e.g., Treasure Salvors, Inc. v. Unidentified Wrecked & Abandoned Sailing Vessel*, 569 F.2d 330, 337 (5th Cir. 1978);[2] *Indian River Recovery Co. v. The CHINA*, 645 F. Supp. 141 (D. Del. 1986); *Rickard v. Pringle*, 293 F. Supp. 981 (E.D.N.Y. 1968). It is the law in the United States that someone who comes to possess an object abandoned at sea thereby becomes its owner. *See Martha's Vineyard Scuba Headquarters, Inc. v. The Unidentified, Wrecked, and Abandoned Steam Vessel*, 833 F.2d 1059, 1065 (1st Cir. 1987). Furthermore, the fact that a wreck has not been identified will not prevent a salvor from obtaining title to artifacts recovered. (*See Fathom Exploration, LLC v. The Unidentified Shipwrecked Vessel or Vessels*, 352 F Supp. 2d 1218 (D. Ala. 2005).)

The recovered artifacts in this case were landed in the United Kingdom, Odyssey's base of operations for the project and pursuant to section 236 of the United Kingdom Merchant Shipping Act 1995. Odyssey registered the artifacts with the U.K. Receiver of Wreck on October 26, 2006. On February 5, 2008, the U.K. Receiver of Wreck notified Odyssey that they had been unable to establish an owner, that the statutory period for an owner to present a claim had expired and that "Odyssey Marine Exploration has been awarded legal title to these items in lieu of a salvage award." The Receiver of Wreck

---

[2] The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

specifically notes that "this letter constitutes Odyssey Marine Exploration's proof of ownership for these items." The letter is attached hereto as Exhibit C.

Given the findings of abandonment by the U.K. Receiver of Wreck and the subsequent award of title as to these artifacts, as well as the fact that no claimant in this case has presented a claim specific to these artifacts, Odyssey now requests this Court to acknowledge and accept the U.K. award and similarly grant title of the artifacts to Odyssey.[3]

Odyssey has clearly taken the action necessary to constitute continued possession, dominion and control of the recovered artifacts, the *res* at issue, and despite adequate legal notice, three years of litigation, and the parallel process of the United Kingdom Receiver of Wreck, no party has come forward to present an ownership interest in the items recovered for which Odyssey now seeks title. Therefore, based on the facts and binding precedent, Odyssey is entitled to the grant by this Court of title and ownership in the recovered artifacts under the law of finds.

    **C.**     <u>**Odyssey's Claim Under Law of Salvage**</u>. In the alternative, and in spite of the fact that no party has claimed an ownership interest in the recovered artifacts, if the Court somehow determines that the recovered artifacts have not been abandoned and have an identifiable owner, Odyssey has alternatively pled in its Verified Complaint (Doc. 35), an analytically distinct ground for recovery (in Count II) – that it is a salvor and entitled to a liberal salvage award under maritime law. "Salvage is the compensation allowed to persons by whose voluntary assistance of a ship at sea or her cargo or both have been saved in whole

---

[3] The award of title to the artifacts by the U.K. Receiver of Wreck is the statutory result of Odyssey's compliance with U.K. law, not a separate action.

or in part from impending sea peril, or in recovering such property from actual peril or loss, as in cases of shipwreck, derelict, or recapture." *The SABINE*, 101 U.S. 384, 384 (1879).

There are three essential elements of a claim to a salvage reward. As noted by the Supreme Court in 1879, they are:

 (1) a marine peril from which the property could not have been rescued without the assistance of the salvor;

 (2) service voluntarily rendered when not required as an existing duty; and

 (3) success in whole or in part, or that the service rendered contributed to such success.

*See The SABINE*, 101 U.S. at 384.

Clearly Odyssey has been successful in voluntarily rescuing the recovered artifacts from obvious and well-documented marine peril. That fact has not been disputed.

The factors to be taken into account by an American admiralty court in making a salvage award were enunciated by the Supreme Court in 1869. *See The BLACKWALL*, 77 U.S. 1 (1869). They include:

 (1) the labor expended by the salvors;

 (2) the skill and energy displayed;

 (3) the value of the property employed by the salvors;

 (4) the risks incurred by the salvors;

 (5) the value of the property salved; and

 (6) the degree of danger from which the property was rescued.

*See id.* at 14.

U.S. courts have also made express that the potential salvor's fidelity to archaeological values is among the elements to be considered in granting a salvage award

9

associated with long lost shipwrecks. *See Columbus-America Discovery Group v. Atlantic Mutual Ins. Co.*, 974 F.2d 450, 468 (4th Cir. 1992), cert. denied, 113 S.Ct. 1625 (1993); *Deep Sea Research, Inc. v. The BROTHER JONATHAN*, 883 F. Supp. 1343, 1362 (N.D. Cal. 1995), aff'd, 102 F.3d 379 (9th Cir. 1996), aff'd, 118 S.Ct. 1464 (1998). Odyssey's general commitment to the highest standards of archaeologically-sound recovery and conservation has not been questioned. The attached report demonstrates Odyssey's professionalism and thorough approach to shipwreck archaeological recovery, analysis and conservation.

Once a salvage award is assessed by a court, it could be satisfied as a cash tender, payable by the true owner, or, instead, as a grant in kind of the artifacts to Odyssey. Such a grant is called an *in specie* salvage award. *See Cobb Coin Company, Inc., v. Unidentified, Wrecked and Abandoned Sailing Vessel*, 525 F. Supp. 186, 208 (S.D. Fla. 1981); *Cobb Coin Co., Inc. v. Unidentified Wrecked and Abandoned Sailing Vessel*, 549 F. Supp. 540, 557-61 (S.D. Fla. 1982); *Treasure Salvors, Inc. v. Unidentified Wrecked & Abandoned Vessel*, 640 F.2d 560, 567 (5th Cir. 1981); *Treasure Salvors, Inc v. Unidentified Wrecked & Abandoned Sailing Vessel*, 569 F.2d 330, 336 (5th Cir. 1978).

*In specie* salvage awards appear to be a preferred method of satisfying salvage awards related to shipwrecks. *See R.M.S. Titanic, Inc. v. Haver*, 171 F.3d 943, 966 (4th Cir. 1999) ("the court can execute on RMST's lien and sell the property, or if the sale of the property would prove insufficient to compensate RMST fairly, the court can award title in the property to RMST."); *R.M.S. Titanic, Inc. v. Wrecked & Abandoned Vessel*, 286 F.3d 194, 204 (4th Cir. Va. 2002). In a more recent ruling, the Fourth Circuit again indicated that an *in specie* salvage award may be the preferred modality for satisfying R.M.S. Titanic, Inc.'s

salvage award. *See R.M.S. Titanic, Inc. v. Wrecked & Abandoned Vessel,* 435 F.3d 521, 534 (4th Cir. Va. 2006) ("if the value of property salvaged were insufficient to cover an appropriate salvage award, then the court could, after making appropriate findings, even grant an *in specie* salvage award to the salvor.") (citing 286 F.3d at 204).

Based on the small quantity and prospective monetary value of the artifacts recovered, as well as the *in custodia legis* conservation expenses, should the Court determine that there is indeed an identifiable owner, and that the law of finds does not apply, Odyssey respectfully suggests that a 100% *in specie* salvage award is appropriate.

**D.     Ongoing Operations and Case Management.** While Odyssey has maintained constructive possession of the site in the past, due to the inconclusive results of Odyssey's efforts thus far, as to either the identity or value of the Defendant site, as well as commitments regarding other projects, Odyssey has no immediate plans to return to the site and cannot estimate when or if it may do so. Odyssey has produced all evidence regarding the Defendant site as well as all evidence regarding the Merchant Royal. Unless the Claimants can prove that the subject site is that of the Merchant Royal, neither has a claim to maintain in this case.

Odyssey previously agreed with Claimant, Bray, to bifurcate the matter and try Bray's contract claim to determine Bray's rights, if any, as to Odyssey regardless of the identity of this particular site, but the Court denied the Motion to Bifurcate. The parties have since agreed that despite the inability to confirm the identity of the subject site at this time, they would like to try the contract claim and the allegations of Bray. They have discussed a potential amendment of the pleadings to include a motion for declaratory relief as to the Bray

claim which may then allow a bifurcation of the claims herein. Amendments, bifurcation and other procedural issues will be discussed at the November 9, 2009, status conference. As to the artifacts thus far recovered from the site, since no claim has been made as to those artifacts and no evidence presented that either Claimant has a colorable claim to them, Odyssey respectfully requests this Court to grant its Motion for Partial Summary Judgment.

### PRAYER FOR RELIEF

WHEREFORE, Odyssey prays for relief as follows:

(a) that an Order issue that grants Odyssey title to the recovered artifacts under the law of finds, or, in the alternative, grants Odyssey an *in specie* salvage reward of 100% of the artifacts recovered; and

(b) that Odyssey may have such other and further relief as the justice of this cause may require.

Date: Nov. 6, 2009

Respectfully submitted,

Allen von Spiegelfeld – FBN 256803
avonsp@bankerlopez.com
Eric C. Thiel – FBN 016267
ethiel@@bankerlop.com
BANKER LOPEZ GASSLER P.A.
501 E. KENNEDY BLVD.
SUITE 1500
(813) 221-1500
Facsimile: (813) 222-3066


s/ Melinda J. MacConnel
Melinda J. MacConnel – FBN 871151

12

Odyssey Marine Exploration, Inc.
5215 West Laurel Street
Tampa, FL 33607
(813) 876-1776, ext. 2240
Fax: (813) 830-6609
E-mail: mmacconnel@shipwreck.net

Attorneys for Plaintiff

## LOCAL RULE 3.01(G) CERTIFICATION

Counsel for Odyssey has conferred with counsel for Spain and Bray regarding the relief requested in this Motion. Counsel for Bray has not responded as to whether Bray objects. Counsel for Spain does not object to the filing of the Motion and will provide his position at the November 9, 2009, status conference.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 6, 2009, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to James A. Goold, Covington & Burling LLP, 1201 Pennsylvania Ave., NW, Washington, DC 20004; and David C. Banker, Bush Ross P.A., 220 S. Franklin Street, P. O. Box 3913, Tampa, FL 33601, *Attorneys for Claimant, Kingdom of Spain,* and Frank D. Butler, Law Offices of Frank D. Butler, P.A., 10550 US Hwy 19 North, Pinellas Park, FL 33782, *Attorneys for Intervenor Plaintiff.*

Allen von Spiegelfeld – FBN 256803
avonsp@bankerlopez.com
Eric C. Thiel – FBN 016267
ethiel@@bankerlop.com
BANKER LOPEZ GASSLER P.A.
501 E. KENNEDY BLVD.
SUITE 1500
(813) 221-1500
Facsimile: (813) 222-3066


s/ Melinda J. MacConnel
Melinda J. MacConnel – FBN 871151
Odyssey Marine Exploration, Inc.
5215 West Laurel Street
Tampa, FL 33607
(813) 876-1776, ext. 2240
Fax: (813) 830-6609
E-mail: mmacconnel@shipwreck.net

Attorneys for Plaintiff