IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
IN ADMIRALTY

CASE NO.:  8:06-CV-01685-T-23MAP

**ODYSSEY MARINE EXPLORATION, INC.**,

        Plaintiff,

vs.

**THE UNIDENTIFIED SHIPWRECK VESSEL**,
its apparel, tackle, appurtenances and
cargo located within center point
coordinates: 49° 25' N, 6° 00' W;
Radius: 5 nautical miles

        Defendant,
        i*n rem*

and

**THE KINGDOM OF SPAIN**,

        Claimant,

and

**KEITH BRAY**,

        Intervening Plaintiff,

vs.

**ODYSSEY MARINE EXPLORATION, INC**.

        Defendant.
_____/

# RESPONSE TO PLAINTIFF-ODYSSEY'S
# MOTION FOR PARTIAL SUMMARY JUDGMENT

COMES NOW the Intervening-Plaintiff, KEITH BRAY, by and through the undersigned attorney, and files the following response to Plaintiff, ODYSSEY MARINE EXPLORATION, INC.'s, Motion For Partial Summary Judgment, and Intervenor, KEITH BRAY, states as follows:

KEITH BRAY had a maritime contract with "ODYSSEY" wherein he provided valuable research and information concerning an historical wreck known as the *Merchant Royall*, and in fact, the information and research provided to ODYSSEY by BRAY put ODYSSEY "on the trail of" the *Merchant Royall*. ODYSSEY has not demonstrated yet that it had any information or knowledge of this 17th century vessel. The monetary consideration for the information and knowledge of KEITH BRAY was that ODYSSEY agreed to pay BRAY 7 ½ percent of any recovery from the wreck—less costs of salvage and legitimate third-party ownership interests.

ODYSSEY's representative later came to BRAY—after taking possession of BRAY's information and apprised BRAY that ODYSSEY had not located any wreck which might be the *Merchant Royall*, and also represented to BRAY that U.S. law forbade BRAY and ODYSSEY from being in such an agreement. Based upon these representations and others made by the principals of ODYSSEY, BRAY agreed for ODYSSEY to buy out the original agreement.

A contract drafted by ODYSSEY, dated April 1, 2006 made certain recitations which corroborate the existence of the previous agreement between BRAY and ODYSSEY. In certain allegations since the pendency of the present

case, ODYSSEY had denied that *any* agreement existed prior to ODYSSEY preparing the April 2006 "buy out". ODYSSEY's written April 2006 agreement was signed separately by ODYSSEY and BRAY. As a caution, or perhaps, better stated, a "notation" to the Court, ODYSSEY's just filed archeological study (attached to ODYSSEY's Motion For Partial Summary Judgment) denotes on page 1 that the present site of the wreck at issue in this case was located in *2005*. "In 2005, shipwreck site [number omitted] was identified in about [number omitted] meters of water . . ." (Identifying numbers omitted by Bray.) This is in contradiction to the representations made by ODYSSEY to BRAY when ODYSSEY was asking BRAY to sell his interest in April *2006*.

Furthermore, the next logical question is, if ODYSSEY contends that it does not presently know the identity of the wreck at the stated site, how did ODYSSEY know in April 2006 whether it had found the *Merchant Royall* or not. This is a contradiction which supports BRAY's claim that ODYSSEY made false representations to him in luring him to sign the April 1, 2006 "buy out". ODYSSEY represented that they had found nothing. The documentary evidence demonstrates that this was and is false.[1]

ODYSSEY now seeks to have the Court determine title to artifacts over which ODYSSEY claims it cannot identify the identity of the wreck from which they were taken. While there is certainly some precedence in the law of finds and salvage for the proposition that not all wrecks are identified, the Court here

---

[1] It is notable in ODYSSEY's Motion For Partial Summary Judgment that it gratuitously admits "Odyssey acknowledges that the *Merchant Royal* was believed to be in the general area where the subject site was found.") (Odyssey Motion for Partial Summary Judgment, page 5, paragraph 3)

should be reserved in its ruling on ODYSSEY's recent Motion For Partial Summary Judgment. The credibility of the Plaintiff is certainly in question.

It would be very easy for ODYSSEY, as the possessor of all original information on a wreck, to hold pertinent information, or to leave pertinent information at the wreck site, until after the Court awards "title" to the site in ODYSSEY's name. In other words, in this case ODYSSEY comes forward in its Motion For Partial Summary Judgment essentially claiming that neither SPAIN nor BRAY should have any entitlement to any of the artifacts retrieved. ODYSSEY's argument is almost exclusively hinged on the premise that neither BRAY nor SPAIN can identify the wreck.

This is infirm ground. Exceptionally little discovery has been taken on this case. The Court may recall for instance that almost an entire year of the life of this case was spent with ODYSSEY objecting to the production of virtually any information of value. Primarily Claimant-SPAIN requested documents, writings, drawings, graphs, photographs, etc. under Rule 34 of the Federal Rules of Civil Procedure, from ODYSSEY. ODYSSEY objected and requested the Court to adopt its, ODYSSEY's, confidentiality agreement over that of the one formulated and used by the Middle District. This part of the civil action took months to unsort. It was eventually determined that while ODYSSEY asked for protection from disclosure of discovery—except under ODYSSEY's stringent confidentiality agreement—that much of the information ODYSSEY sought to protect was either available on ODYSSEY's own website or through various media outlets, or both.

The Court may also recall that a status conference was held in January

2009, in June 2009, and then in November 2009 where the case was in stasis, pending ODYSSEY's report(s) back to the Court as to whether ODYSSEY would return to the subject site, and secondly, to report on its findings.

The point for purposes of this Motion For Partial Summary Judgment is that not one single deposition has been taken in this case. As far as BRAY knows, ODYSSEY has never produced the names of any crewmen who were aboard the search and salvage vessel(s) at the time this site was examined. BRAY has never examined the information used by ODYSSEY to come to this site. BRAY has not had opportunity to establish why ODYSSEY made representations to him, upon which he relied, in order to "buy out" the previous agreement between BRAY and ODYSSEY.

The Court has only recently instructed BRAY and ODYSSEY to submit a Case Management Report to establish timelines as to the claim between BRAY and ODYSSEY, and BRAY is working on the same.

BRAY does not object to the Court awarding title to the specific limited artifacts cited by ODYSSEY, but this is with the understanding that BRAY does not waive any rights to any claims he has against ODYSSEY. Furthermore, this reservation remains: whether this wreck site is that of the *Merchant Royall*, whether ODYSSEY has located the *Merchant Royall* at another site, or whether ODYSSEY will locate the *Merchant Royall* in the future at a different site. In short, BRAY does not take any action or acquiesce herein in any manner which would be contrary to reinstatement of BRAY's original percentage.

BRAY also points out a subject which was brought out by the Court at the

last status conference, namely, that if the Court awards title of the few artifacts to ODYSSEY per ODYSSEY's Motion For Partial Summary Judgment, that this is not the equivalent of awarding ownership of the site, the wreck or even of other artifacts to ODYSSEY. BRAY is not convinced as to whether this site is or is not the *Merchant Royall*, but intends to determine through discovery more information than has been made available to date.

Though BRAY waives any right, title or interest in the named specific artifacts, he points out that such does not change his claim at all if ODYSSEY has located the *Merchant Royall* or if it locates the *Merchant Royall* in the future. In a certain sense, BRAY and ODYSSEY have similar interests in the *Merchant Royall* as against all other claimants.

BRAY also commits to having a Case Management Report in the Court's hands within the first week of December 2009.

WHEREFORE, Intervenor KEITH BRAY, does not object to the Court awarding ODYSSEY possession and title of the specific limited items recovered by ODYSSEY which are: within the jurisdiction of this Court, identified specifically and disclosed by ODYSSEY in this Motion For Summary Judgment, and identified as having very limited monetary value; and KEITH BRAY specifically makes no other concessions nor waives any rights nor claims he has against Plaintiff-ODYSSEY MARINE EXPLORATION, INC., nor artifact not specifically identified.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 24, 2009, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: **Allen von Spiegelfeld, Esq.,** Fowler White Boggs Banker P.A., P. O. Box 1438, Tampa, FL 33601; **Melinda J. MacConnell, Esq.**, 5215 West Laurel Street, Tampa, FL 33607; **James A Goold, Esq.**, Covington & Burling LLP, 1201 Pennsylvania Ave., NW, Washington DC 20004; and **David C. Banker, Esq.**, **J. Carter Andersen, Esq.**, **Keith D. Skorewicz, Esq.**, Bush Ross P.A., 220 S. Franklin Street, P.O. Box 3913, Tampa, FL 33601.

Respectfully Submitted,

/s/Frank D. Butler
Frank D. Butler, Esquire
Fla. Bar No. 940585
10550 U.S. Highway 19 North
Pinellas Park, FL 33782
Phone: 727-399-2222
Fax: 727-399-2202
Attorney for Plaintiff
fdblawfirm@aol.com