UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ODYSSEY MARINE
EXPLORATION, INC.,

    Plaintiff,

v.　　　　　　　　　　　　　　　　　　CASE NO: 8:06-cv-1685-T-23MAP

THE UNIDENTIFIED, SHIPWRECKED
VESSEL, its apparel, tackle,
appurtenances and cargo located within
center point coordinates 49', 25' N, 6',
00' W; Radius: 5 nautical miles,

    Defendant,
    <u>in</u> <u>rem</u>

and

THE KINGDOM OF SPAIN,

    Claimant.
_____/

KEITH BRAY,

    Intervening Plaintiff/Claimant,

v.

ODYSSEY MARINE EXPLORATION,
INC.,

    Defendant.
_____/

**ORDER**

A February 1, 2010, order (Doc. 166) adopts a report and recommendation by Magistrate Judge Mark A. Pizzo and (1) grants a motion for partial summary judgment (Doc. 156) by the plaintiff Odyssey Marine Exploration, Inc., ("Odyssey"); (2) vacates the warrant of arrest; (3) confirms that Odyssey possesses title under the law of finds to the objects listed in each exhibit to Odyssey's motion; and (4) closes the in rem action. On July 20, 2010, Judge Pizzo ordered (Doc. 178) the intervenor plaintiff Keith Bray to show cause within ten days why this action should not be dismissed for lack of subject matter jurisdiction. Bray responds (Doc. 181) and argues that subject matter jurisdiction exists (1) under 28 U.S.C. § 1332 and (2) under 28 U.S.C. § 1333. Odyssey replies (Doc. 182) in opposition.

Background

A citizen of the United Kingdom, Bray is "a researcher of sunken vessels and other losses of antiquity." For several years Bray researched the Merchant Royal, a British ship that foundered in 1641 while purportedly transporting a cargo worth $500 million.[1] Odyssey is a Nevada corporation engaged in deep-ocean shipwreck exploration and recovery.[2] In this action, Bray alleges that in 2001 Odyssey (through Odyssey's chief executive officer, Gregory Stemm) "agreed on behalf of the company to pay Bray seven and one-half . . . percent of any recovery from the wreck [of the Merchant Royal] . . . in exchange for the valuable proprietary and confidential

---

[1] (Doc. 181); See also Mitch Stacy, Rumors, Possible Disney Deal Follow Historic Treasure Find, ASSOCIATED PRESS WORLDSTREAM, May 21, 2007.

[2] See Odyssey Marine Exploration, Inc. v. Unidentified, Shipwrecked Vessel, 675 F. Supp. 2d 1126, 1130 (M.D. Fla. 2009).

- 2 -

information about the wreck" gathered by Bray.  Bray agreed and provided Odyssey with Bray's research on the Merchant Royal.[3]

Following the alleged oral agreement with Stemm, Bray "repeatedly inquired as to Odyssey's efforts and progress with the location of the Merchant Royal."  (Doc. 181)  Bray alleges that Odyssey "either knowingly or negligently represented to Bray that Odyssey could not perform under the . . . agreement to pay Bray the agreed share of the find."  (Doc. 74)  In April, 2006, Odyssey sought a "release" from Bray on the basis that Odyssey lacked the ability to perform under the oral agreement, because Odyssey possessed no immediate plan to search for the Merchant Royal.  (Doc. 181)  Believing that Odyssey had no plan to search for the Merchant Royal,[4] Bray entered a "research agreement" (Doc. 182-1), in which Bray accepted "as payment in full" for Bray's research file on the Merchant Royal a cash payment in lieu of a contingent payment under the alleged oral agreement.

Bray alleges that, contrary to Odyssey's assertion, Odyssey actively searched for the Merchant Royal "in the area recommended by [Bray's] research" contemporaneous with Odyssey's procuring a new agreement with Bray.  (Doc. 181-1)  On September 13, 2006, Odyssey sued (Doc. 1) in rem and sought a warrant of arrest for a shipwrecked vessel, certain characteristics of which "including the location, the size, cargo, number of cannon[,] and the rough correspondence of the dates of various artifacts appear[ed]

---

[3] Odyssey argues that "[t]he alleged . . . oral contract presented by Bray never existed, but even if it had existed, it was voided by the terms and conditions of the written contract."  Additionally, Odyssey argues that "there certainly was no 'meeting of the minds' sufficient to create a legally binding oral contract."  (Doc. 182, at 3)

[4] In an affidavit, Bray states that "[a]t no time prior to Odyssey's arrest of the subject wreck in this case on September 13, 2006, was I aware that Odyssey was using my research as a basis to conduct their own research on the Merchant Royal."  (Doc. 181-1)

- 3 -

to correspond positively with the loss of the Merchant Royal[] . . . ." (Doc. 111)  Bray intervened (Doc. 74) and alleged (1) fraud in the inducement, (2) rescission, and (3) mutual mistake.[5]  After analyzing artifacts recovered from the shipwreck site, Odyssey could not determine the identity of the vessel.  Thus, the Merchant Royal remains undiscovered.

<u>Discussion</u>

*1. Jurisdiction Under 28 U.S.C. § 1332 ("Section 1332")*

Asserting jurisdiction under Section 1332, Bray argues that his claim "is worth more than $75,000.00" (1) because "[i]t is understood amongst antiquities researchers and salvors of antiquities and wrecks that the value of the cargo aboard the Merchant Royal was approximately $500,000,000.00" and (2) because reinstating the alleged oral agreement would render Bray's claim (seven and one half percent of the potential

---

[5] Neither "rescission" nor "mutual mistake" constitute a "claim" upon which a plaintiff may sue.  However, "Florida's courts have muddied the waters by confusing the law of remedies with underlying causes of action, a claim for 'rescission' is well-recognized under Florida law."  <u>Ahern v. Fidelity Nat. Title Ins. Co.</u>, 664 F. Supp. 2d 1224, 1229 (M.D. Fla. 2009) (Presnell, J.).  To state a claim for rescission of a contract, a plaintiff must allege:

> (1) The character or relationship of the parties;
>
> (2) The making of the contract;
>
> (3) The existence of fraud, mutual mistake, false representations, impossibility of performance, or other ground for rescission or cancellation;
>
> (4) That the party seeking rescission has rescinded the contract and notified the other party to the contract of such rescission.
>
> (5) If the moving party has received benefits from the contract, he should further allege an offer to restore these benefits to the party furnishing them, if restoration is possible.
>
> (6) Lastly, that the moving party has no adequate remedy at law.

664 F. Supp. 2d at 1229 (quoting <u>Crown Ice Mach. Leasing Co. v. Sam Senter Farms, Inc.</u>, 174 So. 2d 614, 617 (Fla. 2nd DCA 1965)).

recovery of $500 million) worth $37.5 million dollars.  Odyssey argues (1) that the intervenor complaint (Doc. 74) contains no demand for damages in excess of $75,000.00 and (2) that, even if the Merchant Royal contains $500 million in cargo (which Odyssey disputes), jurisdiction cannot rest on the presumption that Odyssey will overcome each obstacle to recovering the $500 million (i.e., locating the Merchant Royal, recovering the Merchant Royal's cargo, overcoming each legal claim to the cargo, successfully conserving and marketing the cargo, and "monetiz[ing]" the cargo).

"The burden of establishing subject matter jurisdiction . . . rests on the party seeking [a federal forum]." St. Paul Reinsurance Co., Ltd. v. Greenberg, 134 F.3d 1250, 1253 (5th Cir. 1998); Underwriters at Lloyd's, London v. Osting-Schwinn, __ F.3d __, 2010 WL 3056606 (11th Cir. 2010) ("The party commencing suit in federal court . . . has the burden of establishing, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction.").

> Although a diversity suit should not be dismissed unless 'it is apparent, to a legal certainty, that the plaintiff cannot recover [the requisite amount in controversy],' this liberal standard for jurisdictional pleading is not a license for conjecture. In light of the federalism and separation of powers concerns implicated by diversity jurisdiction, federal courts are obligated to strictly construe the statutory grant of diversity jurisdiction, or as the Supreme Court has put it, to 'scrupulously confine their own jurisdiction to the precise limits which the statute has defined.'

Morrison v. Allstate Indem. Co., 228 F.3d 1255, 1268 (11th Cir. 2000) (Carnes, J.) (citation omitted); see also Ericsson GE Mobile Commc'n v. Motorola Commc'n & Elec., Inc., 120 F.3d 216, 221-22 (11th Cir. 1997) (Kravitch, J.).  Jurisdiction rests "on actuality, not prophecy, the pressure of a grievance immediately felt and presently measureable in money of the jurisdictional amount.  Speculative anticipation that

conditions, from which present ills, not now sufficient in amount to give jurisdiction, flow, may in time aggregate the necessary amount, will not support jurisdiction." Vicksburg, S. & P. Ry. Co. v. Nattin, 58 F.2d 979, 980 (5th Cir. 1932).[6]

In Morrison, a class of insureds sued and claimed the right to insurance coverage for "the diminished value of a vehicle a after [the vehicle] sustains physical damage and is repaired." The insureds alleged diversity jurisdiction under Section 1332 and sought to satisfy the amount in controversy, in part, with the value of the requested injunction. Morrison finds that the value of the injunction as to each class member, which injunction requires the insurer to compensate each class member for "diminished value on any future damaged vehicle claim[]," is too speculative to satisfy the amount in controversy requirement. Specifically, Morrison finds (1) that the extent of the monetary benefit to each class member is "mere speculation" and (2) that the amount of a "potential diminished value claim[]" is "equally uncertain," because "[a]n accident may be so minor as to result in virtually no diminished value or so severe that the vehicle is totaled and the insured is paid the full pre-accident market value."

In Ericsson, the plaintiff sued to enjoin the execution of a contract between a telecommunications company ("Motorola") and the City of Birmingham (the "City"), which contract both the plaintiff and Motorola sought in a competitive bidding process. The plaintiff alleged diversity jurisdiction under Section 1332. Ericsson applies the "legal certainty" test and finds that the benefit of the requested injunction—the chance for the plaintiff to bid again on the contract—is too speculative to satisfy the amount in controversy requirement. Nothing required the City to "re-bid" the contract and the

---

[6] Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (rendering binding precedent each decision of the former Fifth Circuit decided before September 30, 1981).

- 6 -

plaintiff could not "reduce the speculative benefit resulting from a re[-]bid 'to a monetary standard . . . .'" 120 F.3d at 222.

In this action, Bray seeks both rescission of the research agreement[7] and restoration of the parties' alleged oral agreement, which would purportedly result in Bray's holding at least a seven and one half percent interest in a recovery from the Merchant Royal. The intervenor complaint (Doc. 74) contains no allegation as to either the potential value of the Merchant Royal's cargo or Bray's alleged damages. Bray states in an affidavit (Doc. 181-1) that "[t]he generally accepted valuation of the cargo of the Merchant Royal, in the industry of marine researchers, is $500,000,000.00," but aside from Bray's assertion, Bray presents no other evidence of the value of the Merchant Royal's cargo.[8] Nonetheless, even if Bray presented either research or other support for the assertion, Bray still would fail to establish the amount in controversy. The benefit to Bray of rescinding the research agreement and restoring the alleged oral agreement is purely speculative, because the value of Bray's claim depends entirely upon (1) a determination that an oral agreement between Bray and Odyssey actually existed; (2) Odyssey's planning to search for the Merchant Royal; (2) Odyssey's searching for the Merchant Royal; (3) Odyssey's finding the Merchant Royal, known as the "Eldorado of the Seas,"[9] which shipwreck remains undiscovered despite both the

---

[7] Bray fails to allege sufficiently a claim for rescission, because Bray alleges no offer to return to Odyssey the benefit Bray received under the research agreement.

[8] Although Bray in his response (Doc. 181) to the order to show cause cites Stemm's deposition in support of the $500 million estimate, no part of the deposition excerpt (Doc. 181-1) support's Bray's assertion.

[9] See Tom Leonard, Hoard of treasure 'found on wreck off Cornwall, THE DAILY TELEGRAPH, March 19, 2007; Willie Drye, El Dorado Legend Snared Sir Walter Raleigh, NATIONAL GEOGRAPHIC, available at http://www.nationalgeographic.com/history/ancient/el-dorado.html.

- 7 -

passage of three hundred and fifty years and the efforts of many salvors; and

(4) Odyssey's actually finding, recovering, and obtaining title to more than a million dollars' worth of cargo on the Merchant Royal. Therefore, although Bray's claim may someday exceed the jurisdictional threshold, the value of the claim at present rests on prophecy and "[s]peculative anticipation that conditions, from which present ills, not now sufficient in amount to give jurisdiction, flow, may in time aggregate the necessary amount, will not support jurisdiction." Nattin, 58 F.2d at 980.

*2. Jurisdiction Under 28 U.S.C. § 1333 ("Section 1333")*

Section 1333 of Title 28, United States Code, grants original, exclusive federal jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." Accordingly, Section 1333 permits the exercise of jurisdiction over a maritime contract. Norfolk Southern Ry. Co. v. Kirby, 543 U.S. 14, 23-24 (2004).

> A contract is not considered maritime merely because the services to be performed under the contract have reference to a ship or to its business, or because the ship is the object of such services or that it has reference to navigable waters. In order to be considered maritime, there must be a direct and substantial link between the contract and the operation of the ship, its navigation, or its management afloat, taking into account the needs of the shipping industry, for the very basis of the constitutional grant of admiralty jurisdiction was to ensure a national uniformity of approach to world shipping.

1-XII BENEDICT ON ADMIRALTY §§ 182, 185 (providing an example of a non-maritime contract, such as a contract for the building or sale of a vessel; services in purchasing a vessel; storage of cargo discharged from a vessel; the carrying, selling, and accounting for proceeds of cargo; and the settlement of a claim for a seaman's death); see also Kirby, 543 U.S. at 23-24; Inbesa Am. v. M/V Anglia, 134 F.3d 1035, 1036 (11th Cir.

- 8 -

1998). "[T]he primary focus of admiralty jurisdiction is unquestionably the protection of maritime commerce." Foremost Ins. Co. v. Richardson, 457 U.S. 668, 674 (1982); Kirby, 543 U.S. at 25.

In this action, Bray seeks rescission of a research agreement, in which Odyssey paid Bray in exchange for information as to the purported location of the Merchant Royal. Although both Bray's research and Odyssey's obligation to pay pertain to the location of a ship, neither the research agreement nor the purported oral agreement amount to a maritime contract. Neither contract possesses a "direct and substantial link" to a ship's operation, navigation, or "management afloat." Rather, each contract consists simply of an obligation to pay money in exchange for research, which obligation relies on the existence and discovery of a legendary shipwreck. Bray cannot establish jurisdiction under Section 1333, because neither contract involves maritime commerce.

## Conclusion

Accordingly, pursuant to Rule 12(h)(3), Federal Rules of Civil Procedure, the intervenor complaint (Doc. 74) is **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction. The Clerk is directed to (1) terminate any pending motion and (2) close the case.

ORDERED in Tampa, Florida, on August 18, 2010.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE